United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.H., et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF ALAMEDA, et al., <br><br> Defendants. | Case No. 11-cv-02868 JST <br><br> **ORDER REGARDING MOTION TO DISMISS** <br><br> Re: ECF Nos. 50, 63 |

Before the Court is the Motion to Dismiss Plaintiffs' Second Amended Complaint filed by Defendants Corizon Health, Sancho, and Orr. ECF No. 46.

I.  **FACTS**

The Court accepts the following allegations as true for the purpose of resolving this motion. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

This case arises from the death of Plaintiffs' decedent, Martin Harrison, while he was in the custody of the Alameda County Sheriffs' Department. On August 13, 2010, Mr. Harrison was arrested on a warrant for failure to appear and taken to Santa Rita Jail, in Alameda County. ECF No. 46 ¶ 25. While he was being admitted, Mr. Harrison told the jail nursing staff, including Defendant Zelda Sancho, L.V.N., that he drank alcohol every day, that his last drink had been that day, and that he had a history of alcohol withdrawal. ¶ 27. Nurse Sancho wrote in her assessment note that Mr. Harrison had a history of alcohol withdrawal and further noted the acronym "CIWA," which stands for Clinical Institute Withdrawal Assessment, a standard protocol for identifying people at risk for severe alcohol withdrawal. CIWA includes a treatment protocol for the safe detoxification of alcoholics. *Id.* Jail staff never implemented the protocol for Mr. Harrison. ¶ 28.

Defendant Corizon Health, Inc. ("Corizon"), formerly known as Prison Health Services,

1  Inc., provides the healthcare services at Santa Rita Jail. ¶ 15. The County of Alameda contracted
2  with Corizon to provide healthcare services in all its jails. *Id.* Defendant Dr. Harold Orr, M.D., is
3  Corizon's medical director. He is responsible for overseeing the provision of medical care in
4  Alameda County jail facilities. *Id.*

5      Neither Nurse Sancho nor anyone else completed a CIWA screening questionnaire for
6  Mr. Harrison, checked his blood alcohol levels, performed lab tests on him, or administered
7  medication to him. ¶ 28. The completion of a CIWA questionnaire was required by Corizon
8  policy, procedure, and training. *Id.*

9      Left untreated, severe alcohol withdrawal can become a life-threatening medical
10 emergency. *Id.* On August 15, 2013, two days after his arrest, Mr. Harrison issued a "sick call"
11 slip requesting medical care, but no one came. ¶ 29. By sometime before dawn the next morning,
12 Mr. Harrison was suffering from severe alcohol withdrawal — also known as delirium tremens —
13 a life-threatening medical emergency. ¶ 30. Outwardly, he exhibited bizarre behavior and
14 incoherent mumbling, and he suffered from hallucinations, severe anxiety, and disorientation to
15 time and place. *Id.*

16     Around 3:30 a.m., after observing this behavior, Defendant and Alameda County Sheriff's
17 Deputy Matthew Ahlf moved Mr. Harrison to an isolation cell in Housing Unit 33 of the Santa
18 Rita Jail. *Id.* Deputy Ahlf did not request mental health or medical care for Mr. Harrison, in
19 contravention of jail policies, procedure, and training.

20     Mr. Harrison stayed in that cell for twelve hours, until 3:30 p.m., before anyone requested
21 medical care. *Id.* At that time, a sheriff's deputy left a message for the jail's mental health workers
22 stating that Mr. Harrison was exhibiting "bizarre behavior and statements, not oriented to place,
23 believed he was in his apartment and women there . . . mumbling incoherently . . . . Saw a nurse
24 but not receiving any meds." ¶ 31.

25     Defendant and Alameda County social worker Megan Hast, A.S.W., picked up the
26 message half an hour later. She reviewed Mr. Harrison's chart, saw that he had a history of
27 alcohol withdrawal, and saw the CIWA indication. ¶32. By 4:30 p.m., another half hour later,
28 Ms. Hast called Housing Unit 33 and learned that the deputy would be leaving at 5:00 p.m. By the

time she arrived, the deputy had gone. She glanced inside Mr. Harrison's cell, saw him standing at the toilet, and left without speaking to him. ¶ 34.

An hour later, at 6:00 p.m., Ms. Hast again called Housing Unit 33 and spoke with Deputy Ahlf. He told her that he moved Mr. Harrison to an isolation cell that morning because of his bizarre behavior, which Ms. Hast recognized as consistent with symptoms of severe alcohol withdrawal. ¶ 35.

Shortly after 6:00 p.m., Mr. Harrison broke a food tray in his cell, blocked his toilet, and made a mess of his cell. ¶ 37. Deputy Ahlf responded first. He entered the cell alone, taser in one hand and handcuffs in the other. ¶ 38. According to Deputy Ahlf, as he was cuffing Mr. Harrison, Mr. Harrison "tensed," causing the deputy to push Mr. Harrison to the back of the cell. ¶ 38–39. From the back of the cell, Deputy Ahlf says Mr. Harrison turned and slowly began to walk toward him. The deputy tased him for two cycles, or ten seconds, causing Mr. Harrison to run for the door, slip on the wet floor (he was in his socks), and fall. ¶¶ 37, 39. Deputy Ahlf pounced on Harrison. Deputy Ahlf and at least nine other sheriff's deputies[1] then severely beat, punched, kicked, stomped, tased, and brutalized Mr. Harrison. ¶ 39–40. The deputies tased Mr. Harrison for at least twenty-seven more seconds over five separate sessions. ¶ 40. Mr. Harrison never struck or kicked any of his attackers. Id. He was transferred to the jail infirmary, and then to the Valley Care Medical Center, by which time he had suffered anoxic brain damage, severe acidosis, several cardiac arrests, and respiratory failure. ¶¶ 41, 49. He died two days later. ¶ 41. Prior to these events, Mr. Harrison had been a healthy man of fifty, despite his history of alcohol abuse. ¶ 41.

The Alameda County Sheriff's Department Coroner's Bureau performed an autopsy the next day. The Bureau determined that Mr. Harrison died from anoxic encephalopathy due to

/ / /

/ / /

---

[1] The nine sheriff's deputies are Defendants Alejandro Valverde, Joshua Swetnam, Roberto Martinez, Zachary Litvinchuk, Ryan Madigan, Michael Bareno, Fernando Rojas-Castaneda, Shawn Sobrero, and Solomon Unubun.

cardiac arrest following excessive physical exertion, multiple blunt injuries, and tasering. ¶ 50. The coroner's investigator's report found that the manner of death "could not be determined." ¶ 51.

## II. PROCEDURAL HISTORY

Mr. Harrison's minor son, M.H., filed suit on June 10, 2011. Through amendment to the original and first amended complaints, M.H. added two sons and two daughters of Mr. Harrison's as Plaintiffs and Corizon, Dr. Orr, and Nurse Sancho, as Defendants.

Plaintiffs filed their Second Amended Complaint on November 19, 2012. ECF No. 46. They allege, as Mr. Harrison's children and co-successors-in-interest, claims against Alameda County, Sheriff Gregory Ahern, the ten sheriff's deputies, Ms. Hast, Corizon, Dr. Orr, and Nurse Sancho for assault and battery, negligence, and violation of Mr. Harrison's civil rights pursuant to 42 U.S.C. § 1983, California's Bane Act, and California Government Code Section 845.6.

The Alameda County Defendants, including Ms. Hast, who is employed by the County, answered on December 4, 2012. ECF No. 46. Defendants Orr and Corizon moved to dismiss the Second Amended Complaint on December 18, 2012. ECF No. 50.

Plaintiffs responded to the first motion to dismiss by the deadline set by stipulation between the parties, on January 31, 2013. ECF No. 60. By stipulation, the reply brief was due February 14, 2013. On February 12, 2012, this case was reassigned to this Court. The reassignment order vacated all hearing dates and trial dates set before January 1, 2014, but did not affect any briefing deadlines or other case deadlines. ECF No. 62. That order required moving parties to re-notice their motions for hearing.

Defendants Orr and Corizon Health did not file a reply on February 14, nor did they re-notice their first motion to dismiss for hearing. Instead, they filed a second motion to dismiss on February 21, 2013, joined by Defendant Sancho, who thereby made her first appearance in the case. ECF No. 63. Plaintiffs served Defendant Sancho on November 28, 2011. ECF No. 49.

Plaintiffs responded to the second motion to dismiss on March 7, 2013, ECF No. 67, and Defendants Orr, Sancho, and Corizon replied on March 14, 2013, ECF No. 68.

## III. ANALYSIS

### A. Legal Standards on Motions to Dismiss

On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S., at 678. In the Ninth Circuit, "[i]f there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *im*plausible." *Starr*, 652 F.3d at 1216 (original emphasis).

### B. Defendants' Unauthorized Filing of a Second Motion to Dismiss

The Corizon Defendants filed a second motion to dismiss Plaintiffs' Second Amended Complaint after failing to file a reply brief in support of their first, and Defendant Sancho joined in the second motion to dismiss even though she was not on the first. Defendants claim Sancho had not been served by the time the first motion was filed even though Plaintiffs filed a certificate of service establishing that she was served on November 28, 2012, three weeks before the first motion to dismiss was filed. *See* ECF No. 49-3.

In their response to the second motion, Plaintiffs "object to Defendants' second motion to dismiss to the extent that it seeks to dismiss Plaintiffs' claims on new grounds not previously raised" and request that the Court find any new arguments waived. ECF No. 67 (*citing Dorger v. City of Napa*, No. 12-cv-440-YGR, 2012 WL 3791447, at *7 (N.D. Cal. Aug. 31, 2012) ("[T]he

5

1  motion here does not appear to be on a sound footing . . . . [T]he defense or objection was not
2  raised in Defendants' previous motion.")).

3  Defendants do not offer an explanation for their conduct. Instead, they argue in their reply
4  brief that "this motion is not actually a subsequent motion to dismiss because the Court never
5  considered Dr. Orr and Corizon's prior motion." ECF No. 68, at 7. They also argue that Ms.
6  Sancho did not waive her challenges to Plaintiffs' Second Amended Complaint because she was
7  not a party to the first motion and, erroneously, because she had not been served by the time that
8  motion was filed. Finally, Defendants argue that Plaintiffs' objection "is untenable given the
9  Federal Rules' overarching aim of securing 'the just, speedy and inexpensive determination of
10 every action' because finding waiver would only necessitate a functionally identical and
11 duplicative motion for judgment on the pleadings." *Id.* (*quoting* Fed. R. Civ. P. 1).

12 None of these arguments is meritorious. Defendants had the opportunity to withdraw their
13 motion, if they so chose, but they did not. Civil Local Rule 7-7(e) provides:

> **Withdrawal.** Within the time for filing and serving a reply, the moving party may file and serve a notice of withdrawal of the motion. Upon the filing of a timely withdrawal, the motion will be taken off-calendar. Otherwise, the Court may proceed to decide the motion.

17 Thus, at the time Defendants filed their subsequent motion to dismiss, their first motion was still
18 pending.

19 Defendants also argue that a waiver finding as to Defendant Sancho would be futile
20 because she could simply file a "functionally identical and duplicative motion for judgment on the
21 pleadings." That argument is incorrect. Defendant Sancho does not claim she was improperly
22 served, and so unless the Court considers Defendants' second motion to dismiss, Defendant
23 Sancho is in default and not entitled to file a motion for judgment on the pleadings. Even if this
24 were not the case, the Court is not persuaded that it should violate its own rules for the sake of
25 expediency.

26 Notwithstanding the foregoing, the Court will consider and decide Defendants' second
27 motion to dismiss because there will be no prejudice to Plaintiffs from the Court doing so. First,
28 Plaintiffs have fully responded to Defendants' second motion. Second, the motions are not very

different from each other (although Defendants improperly made new arguments in their reply brief, as discussed below). Defendants are cautioned that future violations of the Court's rules may not be treated as flexibly.

### C. Defendants' Request for Judicial Notice

Defendants accompanied their reply brief with a request for judicial notice of the complaint in *Baker v. County of Sonoma*, No. 08-cv-03433-EDL (N.D. Cal. July 16, 2008). ECF No. 69. Defendants' unopposed request is GRANTED.

### D. Motion to Dismiss Plaintiffs' Bane Act Claim, California Civil Code § 52.1

California's Bane Act, codified at Civil Code sections 52.1(a) and (b), provides a private right of action for damages against any person, whether acting under color of law or not, who interferes or attempts to interfere "by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws" of California.

The Corizon Defendants move to dismiss Plaintiffs' Bane Act claim against them on the grounds that the Act "provides remedies for certain misconduct only if the putative misconduct was 'accompanied by threats, intimidation, or coercion,'" ECF No. 63 at 4 (*quoting Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004)), and Plaintiffs fail to adequately allege this element in their complaint.

#### i. Deliberate Indifference to Medical Needs

Plaintiffs' Bane Act claim alleges that the Corizon Defendants' acts, omissions, customs, and policies violated Mr. Harrison's right to adequate medical care. Plaintiffs further allege that these acts and omissions constituted deliberate indifference to Mr. Harrison's medical needs as secured by the Eighth and Fourteenth Amendment and the analogous prohibition against cruel and unusual punishment found in Article 1, Section 17 of the California Constitution. *See Estelle v. Gamble*, 429 U.S. 97, 101 (1976); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

In order to state a deliberate indifference claim, Plaintiffs must first show a "serious medical need" such that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Id.* (quotations and citations omitted).

7

1  Next, Plaintiffs must show that Defendants' response to the serious medical need was deliberately
2  indifferent. *Id.* The second prong may be established by allegations of "(a) a purposeful act or
3  failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the
4  indifference." *Id.* Deliberate indifference may be shown where prison officials or practitioners
5  "deny, delay or intentionally interfere with medical treatment." *Hutchinson v. United States*, 838
6  F.2d 390, 394 (9th Cir. 1988). In contrast, "mere negligence in diagnosing or treating a medical
7  condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.*

       Plaintiffs here allege: (1) Corizon is responsible for the medical care at the Santa Rita jail;
(2) Nurse Sancho completed the intake for Mr. Harrison and recognized Mr. Harrison required a
Clinical Institute Withdrawal Assessment based on his risk for severe alcohol withdrawal
symptoms; (3) Nurse Sancho and other Corizon employees failed to follow through with this
assessment, which resulted in the events leading up to his altercation with prison officers. In
particular, Corizon failed to check Mr. Harrison's blood alcohol levels, perform laboratory tests,
administer medication, or do anything else to prevent or treat Mr. Harrison's alcohol withdrawal
for three days; (4) Health failed to respond to Mr. Harrison's pleas for medical attention, including
his issuance of a "sick call" slip requesting medical care the day before the incident that gave rise
to this action; (5) Mr. Harrison ultimately succumbed to severe alcohol withdrawal and delirium
tremens, a life-threatening condition; (6) prison officials moved Mr. Harrison to an isolation cell
after they realized something was wrong, only to leave Mr. Harrison in the cell for twelve hours
before a prison social worker, Defendant Megan Hast, was alerted to his condition; and (7) in
addition to the deliberate indifference of Corizon's employees, Corizon's failure adequately to train
its employees and its customs, policies, and practices caused Mr. Harrison's suffering.

       Plaintiffs' allegations here, if true, establish that Corizon and Nurse Sancho knew that Mr.
Harrison was at risk of a serious medical condition, that they violated prison and County
procedure in failing to attend to his medical needs, and that they failed to satisfy the medical
standard of care, which resulted in substantial harm. Viewed in the light most favorable to
Plaintiffs, the allegations in the Second Amended Complaint sufficiently state a claim that Nurse
Sancho was deliberately indifferent to Mr. Harrison's medical needs. *See Hunt v. Dental Dept.*,

1  865 F.2d 198, 200 (9th Cir. 1989) (prisoner's deliberate indifference allegations were sufficient
2  where he alleged "prison officials were aware of his bleeding gums, breaking teeth, and his
3  inability to eat properly, yet failed to take any action to relieve his pain or to prescribe a soft food
4  diet until new dentures could be fitted."); *Baker v. County of Sonoma*, 08-cv-03433-EDL, 2009
5  WL 330937, at *4 (N.D. Cal. Feb. 10, 2009) (allegations of prison officials denying prisoner his
6  pain medication were sufficient to state deliberate indifference claim).

Because Plaintiffs adequately state a Bane Act claim with respect to Defendant Sancho, her liability also gives rise to respondeat superior liability with respect to Defendant Corizon Health under traditional California common law principles. *See Perreault v. Cty. of Westminister*, 12-cv-2767-CAS, 2013 WL 864783, at *7 (C.D. Cal. Mar. 7, 2013) (recognizing availability of respondeat superior liability for violations of Bane Act).

Finally, Plaintiffs adequately allege an independent claim against Dr. Orr and Corizon for failure to train their employees and for the implementation of customs, policies, or practices that caused Mr. Harrison's suffering, as discussed in more detail below. *See infra* Part III.G.

### ii. Threats, Intimidation, or Coercion

Bane Act liability extends only to rights violations accompanied by "threats, intimidation, or coercion." *See* Cal. Civ. Code § 52.1; *Venegas*, 32 Cal. 4th at 843, 850–51 (Baxter, J. concurring) (characterizing burden of showing "threats, intimidation, or coercion" as minimal: "it should not prove difficult to frame many, if not most, asserted violations of any state or federal statutory or constitutional right, including mere technical statutory violations, as incorporating a threatening, coercive, or intimidating verbal or written component").

Defendants here argue that, to adequately allege a Bane Act violation, Plaintiffs must allege "threats, intimidation or coercion" separate and independent from the wrongful conduct constituting the rights violation, citing *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 961 (Cal. Ct. App. 2012), *reh'g den'd* (Mar. 13, 2012), *rev. den'd* (May 9, 2012). In *Shoyoye,* a computer error resulted in the unlawful detention of a prisoner that had been ordered released. The *Shoyoye* court held that "the statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." That court made clear that the basis of its

9

holding was that plaintiff's evidence

> showed only that County employees were negligent in assigning to Shoyoye a parole hold in the computer system, and in failing to detect the error during the subsequent quality control procedure . . . . Any intimidation or coercion that occurred was simply that which is reasonable and incident to maintaining a jail.

*Id.* Distinguishing *Venegas*, the *Shoyoye* court observed that, in the former case, probable cause "eroded at some point, such that the officers' conduct became intentionally coercive and wrongful, i.e., a knowing and blameworthy interference with the plaintiffs' constitutional rights," whereas in the latter, "[t]he coercion was not carried out in order to effect a knowing interference with Shoyoye's constitutional rights." *Id.* Defendants read *Shoyoye* to create a requirement in all Bane Act cases that constitutional interference must be accompanied by "threats, intimidation, or coercion" separate and apart from the rights violation. Although "federal district courts interpreting *Shoyoye* continue to disagree about its significance," *Cardoso v. Cnty. of San Mateo*, 2013 WL 900816 (N.D. Cal. Jan. 11, 2013), this Court agrees with other courts holding that, at the pleading stage, the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct, and that *Shoyoye* applies only when the conduct is unintentional. *See, e.g., Bass v. City of Fremont*, 12-cv-4943-TEH, 2013 WL 891090 (N.D. Cal. Mar. 8, 2013).

In *Bass*, the court sustained a Bane Act claim where the plaintiff's allegedly unconstitutional "detention and arrest resulted from the officers' action, rather than their inaction." The court concluded that "*Shoyoye* is best viewed as a carve-out from the general rule stated in *Venegas*. In *Shoyoye*, the plaintiff's overdetention resulted from the negligent inaction of administrators, whereas in *Venegas*, the defendant officer engaged in a series of actions involving 'threats, intimidation, or coercion' that resulted in the plaintiff's unreasonable seizure and wrongful arrest." *Id.* at \*6–7. *See also Holland v. City of San Francisco*, 10-cv-2603-TEH, 2013 WL 968295 (N.D. Cal. Mar. 12, 2013) (rejecting Defendants' *Shoyoye* argument because plaintiff alleged intentional, not unintentional, interference with constitutional rights); *Skeels v. Pilegaard*, 12-cv-2175-TEH, 2013 WL 970974, at \*4 (N.D. Cal. Mar. 12, 2013) (distinguishing *Shoyoye* because plaintiff's alleged harms "were not brought about by human error, but rather by intentional conduct, conduct which could be reasonably perceived as threatening, intimidating, or coercive").

*See also Cardoso*, 2013 WL 900816, at *1 (N.D. Cal. Jan. 11, 2013) (denying motion to dismiss based on *Shoyoye* because plaintiff's Bane Act claim "may turn on details about the alleged application of excessive force — details which are unavailable at this early stage in the litigation").

### iii. Application to Plaintiffs' Deliberate Indifference Claim

Because the relevant distinction under the Bane Act is between intentional and unintentional conduct, the next question is whether an allegation of "deliberate indifference" is adequate to place the case outside the holding of *Shoyoye*. For the reasons that follow, the Court concludes that deliberate indifference is closer to intentional conduct, and should be judged accordingly.

From its inception, "deliberate indifference" has been a substantially higher standard than negligence, and has been associated with affirmatively culpable conduct. *Estelle v. Gamble*, 429 U.S. at 104 (*quoting Gregg v. Georgia*, 428 U.S. 153, 169–173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). "Inadvertent failure" to provide medical care, "a complaint that a physician has been negligent in diagnosing or treating a medical condition," and medical malpractice claims do not qualify as deliberate indifference claims. *Id.* at 105 (quotations omitted). Prison officials must have "a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825 (1994). Liability will not lie unless the official knows of and disregards a substantial risk to inmate health or safety. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The Ninth Circuit has consistently applied the *Farmer* test by requiring that prisoners alleging deliberate indifference to medical needs allege "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096. *See also*, *Hunt*, 865 F.2d at 200.

Because deliberate indifference claims necessarily require more than "mere negligence," a prisoner who successfully proves that prison officials acted or failed to act with deliberate indifference to his medical needs in violation of his constitutional rights presents a case far more like *Venegas* than *Shoyoye* and adequately states a claim for relief under the Bane Act.

11

1 Accordingly, the Court rejects Defendants' argument that Plaintiffs here have failed adequately to
2 allege a violation of the Bane Act and DENIES Defendants' Motion to Dismiss Plaintiffs' Bane
3 Act claim against Corizon Health, Dr. Orr, and Nurse Sancho.

### E. California Government Code § 845.6

Corizon Health moves to dismiss Plaintiffs' Government Code Section 845.6 claim because Corizon is not a "public entity" or "public employee" for purposes of that statute. This portion of Defendants' motion is unopposed and, accordingly, Defendants' motion to dismiss Plaintiffs' Section 845.6 claim is GRANTED and Plaintiffs' claims against Corizon Health for violations of California Government Code Section 845.6 are hereby DISMISSED.

### F. Negligence

Defendants Orr, Sancho, and Corizon Health argue that the statute of limitations has expired on Plaintiffs' negligence claim against them because California Code of Civil Procedure section 340.5 limits negligence claims against healthcare providers to one year. Defendants raised this argument in opposition to Plaintiffs' motion for leave to file their Second Amended Complaint, and Judge Wilken rejected it. ECF No. 45, at 10, n.4 (finding Plaintiffs do not allege claims subject to California Code of Civil Procedure section 340.5: "The statute of limitations for medical malpractice claims is therefore irrelevant") (Wilken, J.). Because Defendants now simply repeat the same arguments they previously made, the Court will again reach the same conclusion. The statute of limitations has not expired on Plaintiffs' negligence claim.

In their second motion to dismiss, Defendants make the additional argument that Plaintiffs' addition of the Corizon Health Defendants more than two years after Mr. Harrison's death exceeded the statute of limitations for general negligence claims. This argument is also unavailing. Plaintiffs added the Corizon Health Defendants to the Second Amended Complaint after realizing through discovery that the prison officials at the Santa Rita jail who failed to provide Mr. Harrison with adequate medical care were employed by Corizon Health and not Alameda County. The Second Amended Complaint is based on the same operative facts as the first amended and original complaints, and the California relation back doctrine therefore permits Plaintiffs to add the Corizon Health

12

Defendants now. *See Merritt v. County of Los Angeles*, 875 F.2d 765 (9th Cir. 1989).[2]

Defendants' Motion to Dismiss Plaintiffs' negligence claim as time-barred is DENIED.

### G. Supervisory Liability

Defendants Orr and Corizon Health move to dismiss Plaintiffs' *Monell* section 1983 claim against them because Plaintiffs' allegations of supervisory liability for the deliberate indifference of Corizon Health's employees are too conclusory to state a claim upon which relief can be granted. *See Monell v. New York Dept. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (holding respondeat superior liability unavailable in claims pursuant to 42 U.S.C. § 1983).

Supervisory liability for violation of constitutional rights exists only if either (1) the supervisor was personally involved in the deprivation or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (quotation omitted). Here, only the second prong is relevant because Plaintiffs do not allege that Dr. Orr was personally involved in the constitutional violation.

The Ninth Circuit has recognized several bases for supervisory liability in civil rights cases. "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208 (*quoting Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998)). In *Starr*, the Ninth Circuit held that the plaintiff's allegations that "the actions or inactions of the person 'answerable for the prisoner's safe-keeping' caused his injury are therefore sufficient to state a claim of supervisory liability for deliberate indifference." *Id.*

In *Frary v. County of Marin*, 2012 WL 6218196, at *8 (N.D. Cal. Dec. 13, 2012), Anthony Carmignani was arrested, placed in a squad car, and taken to the Marin County Jail in handcuffs. While in the car, Carmignani removed narcotics from his pockets, disposed of some, and swallowed others. Carmignani died twenty-fours later from a drug overdose while still in custody.

---

[2] Judge Wilken reached a similar conclusion with respect to Plaintiffs' addition of Megan Hast as a defendant to an earlier complaint. ECF No. 45, at 9–10.

1    The officers were told prior to arresting Carmignani, and again seven hours later by his mother,
2    that he was carrying narcotics. Officers observed that he appeared sick on more than one occasion
3    while he was in custody.

4    In *Frary*, as here, the plaintiffs claimed that the police chief "failed to properly train,
5    assign, supervise, and guide his staff to take the necessary measures to ensure the health and safety
6    of arrested persons." *Id.* at *8. The *Frary* court found that the plaintiff had adequately alleged a
7    claim for supervisory liability under section 1983.

8    Here, Plaintiffs allege the following policies, customs, practices, or lack thereof, constitute
9    deliberate indifference to prisoners' medical needs: (1) failure to institute adequate procedures for
10   the prevention and treatment of severe alcohol withdrawal; (2) failure to coordinate the healthcare
11   assessment of inmates both generally and at the intake screening process; (3) failure to institute,
12   require, and enforce proper and adequate training, supervision, policies, and procedures
13   concerning the handling of addicted prisoners; (4) denial of access to appropriate, competent, and
14   necessary care for serious medical and psychiatric needs; and (5) failure properly to hire, train,
15   instruct, monitor, supervise, evaluate, investigate, and discipline healthcare personnel.

16   With respect to Dr. Orr, Plaintiffs allege: (1) that he was Corizon Health's medical director;
17   (2) that he was responsible for making and enforcing policies, procedures, and training related to
18   the medical care of inmates, including medical care related to alcohol withdrawal, and (3) that he
19   approved, tolerated, and/or ratified the wrongful acts and omissions of healthcare personnel with
20   respect to Mr. Harrison's lack of adequate medical care

21   In light of *Starr* and *Frary*, the Court finds that Plaintiffs have stated valid *Monell* claims
22   against Corizon Health and Dr. Orr, and those Defendants' Motion to Dismiss Plaintiffs' *Monell*
23   claims against them is therefore DENIED.
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

## IV. CONCLUSION

Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint is hereby DENIED, except for Plaintiffs' California Government Code Section 845.6 claim, which is hereby DISMISSED.

**IT IS SO ORDERED**.

Dated: April 17, 2013

_____
JON S. TIGAR
United States District Judge