MICHAEL J. HADDAD*
JULIA SHERWIN*
GINA ALTOMARE
GENEVIEVE K. GUERTIN

**HADDAD & SHERWIN**
505 SEVENTEENTH STREET
OAKLAND, CALIFORNIA 94612
(510) 452-5500 • FAX (510) 452-5510

*ADMITTED IN
CALIFORNIA
AND MICHIGAN

August 27, 2013

Honorable Jon S. Tigar
United States District Court
450 Golden Gate Avenue, Courtroom 9
San Francisco, CA 94102

Re:   *Harrison v. County of Alameda,* C-11-2868 JST

Dear Judge Tigar:

Thank you very much for your time and attention to the parties concerning the examination of Decedent Martin Harrison's original medical chart, which consists of twelve pages of records. Briefly by way of background, Mr. Harrison was arrested on August 13, 2010, after an Oakland police officer observed him jaywalking. A warrant check revealed an outstanding warrant for failure to appear in court for driving under the influence of alcohol, and Mr. Harrison was taken to jail. During his intake examination, Mr. Harrison informed the jail nurse that he drinks alcohol every day, his last drink was that day, and he has a history of alcohol withdrawal. The nurse wrote that she was putting him on a "CIWA," Clinical Institute Withdrawal Assessment, the standard protocol for safe detoxification of jail inmates. She later crossed out "with history of alcohol withdrawal" and "CIWA." (**Exhibit A**).[1] The nurse cleared Mr. Harrison for general population with no alcohol detoxification. He went into severe alcohol withdrawal three days later, flooding his cell and screaming that people were trying to kill him. Ten Alameda County Sheriff's deputies beat and Tased Mr. Harrison until he became unresponsive, and he was transferred to the hospital, where he died on August 18, 2013. My office represents Mr. Harrison's four adult children.

On October 26, 2011, we served Plaintiff's First Demand for Documents on Defendant Alameda County, reserving our right "to request inspection of the originals at any time thereafter upon request of Defendants' counsel." (1st RFP to County, p. 2). The County produced Mr. Harrison's medical records among other documents.

On July 27, 2012, Santa Rita Jail's medical director testified that she reviewed Mr. Harrison's original jail medical chart before her deposition, and she simply went to the medical records room at Santa Rita Jail to review the chart. (Maria Magat, M.D., Deposition, p. 46:1-10).

On August 24, 2012, Plaintiffs served Defendant Alameda County with a demand for inspection of the original medical chart, again reserving Plaintiffs' right to inspect any original documents upon request to defense counsel. Plaintiffs requested inspection of the original medical chart, to determine when the changes to the chart were made, whether they were made with the same instrument, whether any other changes to the chart were made, and whether any documents had been removed from the chart. (**Exhibit B**, pp. 2 and 4).

---

[1] All documents referenced here but not included with this letter brief are omitted due to the page limit, and will be produced to the Court upon request.



On September 24, 2012, the County Defendants responded, agreeing to produce the medical records in the County's "possession, custody or control at a mutually agreeable time and date." (**Exhibit C,** Response to Request No. 1, p. 3).

Pursuant to the contract between Corizon and the County, all medical records are owned by the County: "Existing medical records and medical records prepared by PHS [formerly Prison Health Services, now Corizon Health, Inc.] medical staff shall, during the term of this Agreement, be under the care and custody of PHS [Corizon], but **shall be the property of the County. County shall have full and prompt access to medical records during the term of this Agreement,** and both PHS and County shall maintain the confidentiality of all such records required by law." (ACSO 1136, Master Contract between the County and PHS/Corizon, p. 41 ¶ 3(a) (emphasis added)).

On November 16, 2012, the Honorable Claudia Wilken granted Plaintiffs' motion to amend the complaint to add the Corizon Defendants, who were responsible for providing medical services to inmates within Alameda County jails. (Document No. 45).

On February 22, 2013, Plaintiffs filed their First Demand for Production of Documents on the Corizon Defendants, including a demand for Mr. Harrison's medical records. Again, Plaintiffs reserved the right to inspect the original documents upon request to Defense counsel:

> "As an alternative to producing the originals of the documents requested herein for inspection and copying by Plaintiffs at Plaintiffs' attorneys' office, Plaintiffs would accept legible copies of the documents. However, **Plaintiffs reserve the right to request inspection of the originals at any time thereafter upon request** of Defendants' counsel."

(RFP to Corizon, p. 2, emphasis added). Corizon produced another copy of Martin Harrison's medical records, among other documents.

On June 10, 2013, I sent an email to all counsel, requesting dates for Mr. Harrison's original medical records to be produced for inspection by Plaintiffs' forensic documents examiner, pursuant to the County's previous agreement to produce the original records for examination. I received no response. (**Exhibit E,** p. 1, 6/10/13 Sherwin email to all counsel).

On August 6, 2013, my associate, Genevieve Guertin, followed up with all Defendants, again requesting to schedule a time for the documents to be examined. (**Exhibit E,** p. 2, 8/6/13 Guertin email to all counsel). On August 6, Valerie Ly, who represents the County Defendants, responded, stating that she assumed the examination would be after the mediation on August 14th, and that the County Defendants were available August 27 to August 30. (**Exhibit E, p. 2**).

Of the dates the County offered, our forensic documents examiner, Patricia Fisher, was only available on August 28th, beginning at 8:00 a.m., because she had another appointment at noon and the examination may take up to four hours. On August 16, 2013, my associate, Gina Altomare, confirmed in writing that the inspection would take place on August 28, 2013, at 8:00

a.m., at Ms. Fisher's office in Walnut Creek, a date offered by the County Defendants. (**Exhibit D**).

We received no objection to the scheduled document examination from either the County or the Corizon Defendants.

On afternoon of Friday, August 23, while Michael Haddad and I were both out of town, Ms. Altomare emailed me that Mr. Grigg's office had called and requested to move the document examination to 9:30 a.m. on August 28th, "to give the Corizon people more time to drive out to Walnut Creek. They are also wondering how long this will take." (**Exhibit E, p. 3, 8/23/13 Altomare email to Haddad & Sherwin**). I responded that unfortunately, beginning at 8:00 a.m. was the only time the examiner could do the exam during the dates the County had offered, and the examination should take no more than four hours. (**Exhibit E, p. 3, 8/23/13 Sherwin email to Altomare**).

On the afternoon of Monday, August 26, 2013, Ms. Altomare informed me that she had spoken with Matthew Grigg's associate, Carol Ho, at 5:15 p.m. on Friday, August 23, and Ms. Ho had requested to move the document examination to a different day. Ms. Altomare stated, **"I asked that defendants send us all an email outlining their concerns about the document examination, but I have heard nothing since then."** (**Exhibit E, p. 4, 8/26/13 Altomare email to Haddad & Sherwin**).

At 9:23 a.m. on Tuesday, August 27, 2013, Ms. Altomare emailed Ms. Ho reminding her that the documents are County property and the County had already agreed to produce the documents for the inspection, and informing Ms. Ho that the Corizon counsel could arrive late to the examination if they would like. (**Exhibit E, p. 5, Altomare email to Ho**).

At 12:32 p.m. on Tuesday – the afternoon before the scheduled inspection -- Ms. Ho sent an email to all counsel, stating, "Unfortunately, Corizon has just informed me that they cannot produce the chart for examination tomorrow morning. I apologize for the short notice. Would Ms. Fisher [the examiner] be willing to reschedule to September 10th, 11th, or 12th?" (**Exhibit E, p. 5, 8/27/13 Ho email to all counsel**).

At 2:30 p.m., Ms. Altomare asked the County's attorney, Valerie Ly, to confirm that the County would be producing the original medical chart for the agreed inspection. (**Exhibit E, p. 8, 8/27/13 Altomare email to all counsel**). Ms. Ly responded that the County now would not produce the original chart. She also asserted that our notice of inspection of the original document was "untimely." (**Exhibit E, pp. 7-8, 8/27/13 Ly email to all counsel**).

At 3:13 p.m., I sent an email to all counsel, reminding them that 1) the chart is simply in Santa Rita Jail's medical records department, 2) we had demanded the inspection over a year ago on August 24, 2012, 3) the County owns the chart, 4) the County agreed on September 24, 2012, to produce the original chart at an agreed time and date; 5) on August 6, 2013, the County offered August 27 - 30 as dates for the inspection (which was less than 30 days away, so Defendants' current assertion that the inspection notice was untimely is meritless); 6) we

scheduled the inspection on the 28th, a date the County had offered, and our most recent notice of inspection was simply confirming the date of the previously noticed and agreed inspection.

I also informed Defendants that Plaintiffs had already paid $1,500 for the inspection scheduled for August 28th, and if the date had to be moved Defendants would have to pay the $1,500 we had paid for the scheduled inspection. I have since spoken to Ms. Fisher, and she has informed me that her cancellation fee for the late cancelled inspection is $750. She had to turn away work to hold the inspection time for us, but she would not charge us the full $1,500 cancellation fee.

During the Court's hearing about the document inspection, Corizon's counsel attempted to insert a dispute about Plaintiffs' depositions, as we have informed Defendants we are not available for depositions on the dates they demanded, September 4 and 5, but we could do our clients' depositions on September 16 and 17, and would produce them for deposition after the close of discovery. Now, on August 27, 2013, at 6:39 p.m., the Corizon Defendants have emailed notices of our clients' depositions for September 4 and 5, dates we have already informed them we are unavailable. My partner, Michael Haddad, is in depositions all day on September 4, and I have to fly to Seattle on September 4 for a pre-inquest hearing in Bellevue District Court in a case involving Bellevue SWAT officers' shooting of a man in Seattle, which is scheduled for September 5. Michael Haddad and I need to meet with the clients before their depositions, and we will be out of town for the Labor Day holiday, only returning to the Bay Area after business hours on Tuesday, September 3, so that I can participate in a meeting at the Court at 5:30 p.m. that day, as I serve on the Court's committee considering the reappointment of Chief Magistrate Laporte.

I have spent almost five hours today alone, dealing with Defendants' last minute cancellation of the document inspection. My associates have also spent considerable time on this matter, and our attorneys' fees for this work are in excess of $3,300. Rather than ask that Defendants pay attorneys' fees at this time, Plaintiffs reserve the right to seek all fees and costs from Defendants at the end of this litigation. At this time, Plaintiffs request that Defendants be ordered to pay the $750 cancellation fee for the late cancellation of the forensic documents examiner, as well as the $1,500 fee for the document inspection, and that Defendants be ordered to produce the documents for inspection in September 2013, on a date Ms. Fisher is available. Thank you very much for your time and attention to the parties in this matter.

Sincerely,

Julia Sherwin