Nancy E. Hudgins, SBN 85222
Matthew M. Grigg, SBN 195951
Carol B. Ho, SBN 286972
LAW OFFICES OF NANCY E. HUDGINS
711 Van Ness Ave., Ste 450,
San Francisco, CA 94102
415-979-0100
mmg@hudginslaw.com

Attorneys for Defendants Harold Orr, Jr., M.D., and Corizon Health, Inc.

**UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| M.H., et al. | Case No.: C 11-2868 JST |
| Plaintiffs, | **DECLARATION OF ROBERT D. JONES, M.D., IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| ALAMEDA COUNTY, et al. | |
| Defendants. | |

I, Robert D. Jones, M.D., declare:

1. I am a physician, licensed to practice medicine in Arizona and Utah. I have practiced medicine for 39 years. I obtained my medical degree from the University of Utah College of Medicine in Salt Lake City in 1974. I am board certified by the American Board of Family Practice. I am a Certified Correctional Health Professional. I have treated numerous patients experiencing alcohol withdrawal.

2. I began working in correctional healthcare in 1990. I have been the Clinical Director of the Utah Department of Corrections, the Medical/Mental Health Director of the Montana Department of Corrections, and the Deputy Director of Health Services for the Arizona Department of Corrections. I currently serve as the Medical Director of the Arizona Department of Juvenile Corrections.

3. In connection with developing my opinions in this case, I have reviewed Martin Harrison's medical and mental health records from PHS/Corizon, Criminal Justice Mental Health, EMT providers, and Valley Care Hospital; the coroner's report and autopsy report;

PHS/Corizon policies and procedures; PHS/Corizon protocols; PHS/Corizon orientation manuals; several deposition transcripts; and Dr. Orr's declaration in support of summary judgment or partial summary judgment, among other documents. I also have conferred with Bill Wilson, a former health services administrator for Corizon.

4. Based on my education training and experience, these sources are of the sort reasonably relied upon by experts like me for purposes of forming the opinions contained herein. Based on my review and assessment of the informational sources referenced above, and my education, training and experience, I have formed the opinions appearing in bolded text below.

5. **The health care delivery system in place in Alameda County's Glenn E. Dyer Detention Facility and Santa Rita Jail during the period of Martin Harrison's incarceration in those facilities was a thoughtful, reasonable and rational system, comparable to those in place in other correctional facilities with good quality healthcare systems.**

6. This opinion is based on the PHS/Corizon policies and procedures, the PHS/Corizon training program for its nurses, and the information set forth in Paragraphs 8, 10, 12, 14 and 16, below.

7. **The policies and procedures established by PHS/Corizon and approved by Harold Orr, M.D., that were in effect during Mr. Harrison's incarceration, were thoughtful, reasonable and rational. They met or exceeded the standard of care.**

8. The bases for this opinion includes the following. PHS/Corizon's policies and procedures met the national "standards" for jails established by the National Commission on Correctional Health Care (NCCHC) and the American Correctional Association (ACA). These are national bodies that accredit the health care delivery system in jails and prisons. A review of the policies and procedures in effect at the time Mr. Harrison was incarcerated showed that the policies cross-referenced to both the NCCHC and ACA standards for jails. When the facilities were visited by an NCCHC survey team in April of 2008, the facilities again were in compliance with all applicable essential standards and 95% of all applicable important standards. (The accreditation lasts for three years, which period would have encompassed Mr. Harrison's August

13-16, 2010 incarceration.)  Both facilities had maintained accreditation since 1989 by NCCHC. NCCHC and ACA issue "standards" that constitute "best practices" for correctional health care. The organizations' "standards" often exceed the standard of care.  In addition, as evident from the policies and medical records, a process was in place in the Alameda County jails to provide initial receiving screening to inmates like Mr. Harrison, and such a screening applicable to Mr. Harrison was completed by a care provider who appropriately could complete such screenings – namely, a licensed vocational nurse.  Per policy, a process also was in place in the Alameda County jails to provide monitoring for inmates potentially at risk for alcohol withdrawal by means of Clinical Institute Withdrawal Assessment (CIWA) and, where clinically indicated, the ordering of medication by a licensed prescribing provider.  Dr. Orr testified in his deposition that the CIWA process has been frequently implemented in the jail.  Such a process is reasonable and appropriate.  According to policy, and as evident from the medical records, Mr. Harrison was provided with receiving health screening by Zelda Sancho, L.V.N.   This demonstrates accessibility to health care.  As evident from the intake screening form, and in accordance with Corizon policy, Nurse Sancho advised Mr. Harrison how to obtain care subsequently in the event he thought it necessary.  The intake form shows that, on 13 August 2010, at approximately 17:00 hours, Nurse Sancho completed the intake screening based on her observations and information Mr. Harrison provided.  Ms. Sancho was licensed, trained and qualified to complete that screening.  On the form under Item 26 "Comments" appears "*21 /c hx of ETOH – W/D*" (which was lined out) and "*CIWA*" which has "*error*" written over it.  The referenced abbreviations are standard and mean "with history of ethanol (alcohol) withdrawal – CIWA." Had she not struck them as an error, the CIWA process would have commenced with per shift withdrawal monitoring and, if indicated, the provision of additional care.

9. **PHS/Corizon's training program for its nurses met the standard of care.**

10. The bases for this opinion include the following.  Employers of nurses reasonably rely on state licensure to indicate a basic level of nursing competency.  PHS/Corizon also specifically stresses the importance of following its policies during its 40-hour new employee orientation training.  PHS/Corizon also provides ongoing monthly in-service training programs. These processes were assessed during the NCCHC accreditation survey in 2008 and found to be

*M.H. v. County of Alameda, et al.*     Case No. 11-02868 JST
Declaration of Dr. Jones Re Orr/Corizon MSJ     Harrison/p/JonesDecl 13k26

3

in compliance.  Orientation materials stress the potential lethality of alcohol withdrawal and the importance of identifying those potentially at risk for alcohol withdrawal, so appropriate monitoring and, if necessary, treatment can be implemented.  Annual training in 2009 and 2010, prior to Mr. Harrison's incarceration, covered addiction to alcohol and other drugs and withdrawal treatment in depth and was provided during all-staff meetings.  For instance, training on Alcohol and Substance Abuse Withdrawal was given during November 2009 and/or January 2010.  A handout was provided and CEU credit was given.  The lesson plan documenting the topic being taught would have been available for review by the accrediting body.  These materials are included in documents numbered COR 1965 to 1990 and demonstrate that training on alcohol and other drugs which included the use of CIWA was provided by PHS/Corizon.  The training calendar for the years of 2009 and 2010 were reviewed and support this opinion.  Trainings specific to CIWA were also given.

11. **PHS/Corizon was reasonable in hiring and retaining Zelda Sancho, L.V.N., and in its response to her handling of the Harrison intake screening.**

12.   The bases of this opinion include the following.  The documentation reviewed showed:

   a. prior to her hiring, Mr. Sancho was licensed as a registered nurse in her native Philippines and was licensed as a licensed vocational nurse in California,
   b. she received good performance reviews following her hiring,
   c. she did not fully document information obtained during her intake screening of Mr. Harrison or comply with PHS/Corizon standards regarding the timing of follow-up assessment,
   d. she was counselled as a result,
   e. about a week after her screening of Mr. Harrison, review of Ms. Sancho's charting revealed a similar instance of inadequate documentation,
   f. this led to her termination.

This action demonstrates a timely and appropriate response, and appropriate concern regarding having employees adhere to PHS/Corizon standards, which are designed for patient safety.

PHS/Corizon's termination of Nurse Sancho further shows its reasonableness with respect to retaining employees who will adhere to its high standards for patient care.

13. **PHS/Corizon met the standard of care for approving medical training of deputies through ongoing dialog and discussion with Sheriff's department supervisors. Neither PHS/Corizon nor Dr. Orr had a duty to personally train deputies at the Alameda County Jails.**

14. The bases for this opinion include the following. The Health Services Administrator (HSA) by organization and by confirmation of the survey team serves as the Responsible Health Authority (RHA). Training records of deputies are kept by the Sheriff's Department. Bill Wilson, the PHS/Corizon Health Services Administrator at the time of Martin Harrison's incarceration, advised me that, when he began working at the Alameda County Jail he learned: (a) that operations there already had been accredited by the NCCHC, and (b) the Sheriff's department had medical-related training for deputies in place, which training had been approved by the NCCHC and was on-going. Additionally, Criminal Justice Mental Health (CJMH) was responsible for training on suicide prevention and its training included sections on substance abuse. Mr. Wilson explained that he approved the County's (NCCHC-approved) training program and offered the Sheriff's Department the help of medical staff to assist in these trainings as needed. He had frequent contact with the Sheriff's Department sergeants and lieutenants who were assigned as liaison to PHS/Corizon, including ongoing discussions with them about training. The medical training of deputies is demonstrated by the 4 minute training handouts, which review the important items for correctional staff to be attuned to when dealing with inmates, as well as substance abuse handouts provided by PHS/Corizon to the Sheriff's Department. The medical training of deputies was reviewed by the NCCHC Accreditation team, which found that the Santa Rita Jail was in compliance with NCCHC national standards for medical training of deputies.

15. **PHS/Corizon's policy regarding transfer of inmates between the Alameda County jail buildings and the medically-related aspects of Mr. Harrison's transfer met the standard of care. The policy, and the standard of care, did not require that the initial screen be reviewed prior to Mr. Harrison's transfer from Glen Dyer to Santa Rita. The**

**policy, and the standard of care, did not require that the inmate be re-screened at Santa Rita, nor that the initial screen be audited for completeness or correctness; rather, the goal is that the initial screen be reviewed for continuity of care.**

16. The bases for this opinion include the following. PHS/Corizon had a transfer policy in place for instances in which an inmate was transferred from one Alameda County Jail building/facility to another. The policy required that the initial medical screen and a medical summary accompany each inmate when they were transferred from one building/facility to the other, except where the transfer occurred within a short time frame. In that instance, the policy was that the initial screen could serve as the transfer information and medical summary (as medical records indicate was the case with Mr. Harrison). As Dr. Orr explains in his declaration, such intake forms are reviewed for continuity of care purposes but not audited upon an inmate's arrival at Santa Rita. This practice comports with reasonable transfer-related records review practice. To explain further, as NCCHC recognizes, the purposes of transfer-related records review include "ensur[ing] that inmates continue to receive appropriate health services for health needs *already identified*…." In Mr. Harrison's case, as explained by Dr. Orr in his declaration, Ms. Sancho designated Mr. Harrison a "3." Thus no medical needs were "already identified." As a result, review of simply the "3" appearing on the intake form's upper left hand corner would satisfy the standard of care.

17. **Had Mr. Harrison received medical treatment at any time up until the time he was tazed, he would not have died from alcohol withdrawal in relation to his incarceration. To a reasonable degree of medical probability, his symptoms were reversible if he had received medical treatment prior to his altercation with deputies.**

18. The bases for these opinions include Mr. Harrison's medical records, the behavioral health record and the observations of Mr. Harrison's behavior by Deputy Ahlf prior to the initial tazing of Mr. Harrison. Mr. Harrison's condition, up until the time he was tazed, would have been treatable. Mr. Harrison was described as coordinated, able to follow instructions, not disoriented and, at least initially, cooperative. This is a presentation inconsistent with severe delirium tremens.

19. In sum, it is my opinion that the healthcare system Corizon had in place in the Alameda County jail facilities was a reasonable one. This is based not only on my review of the evidentiary sources discussed above in light of my education, training and experience, but also on my recognition that the accreditation in place as of the time of Mr. Harrison's incarceration would not have been in place had the system been an unreasonable one, with respect to the identification of alcohol withdrawal or otherwise. For the foregoing reasons, it is also my opinion that Dr. Orr acted reasonably in fulfillment of his responsibilities within the healthcare system. The pertinent evidentiary sources (discussed above) also evince the absence of any substantial risk of serious harm to inmates. It thus is my opinion that Corizon policymakers were not deliberately indifferent to such any such purported risk.

So declared under penalty of perjury under the laws of the State of California. Executed in Utah, this 27th day of November, 2013.

*/s/ Robert D. Jones, M.D.*
_____
Robert D. Jones, M.D.