MICHAEL J. HADDAD/ State Bar #189114
JULIA SHERWIN/State Bar #189268
GENEVIEVE K. GUERTIN/State Bar #262479
T. KENNEDY HELM/State Bar #282319
HADDAD & SHERWIN
505 Seventeenth Street
Oakland, CA 94612
Telephone:     (510) 452-5500
Facsimile:      (510) 452-5510

Attorneys for Plaintiffs Joseph Harrison, Krystle
Harrison, Martin Harrison, Jr., and Tiffany Harrison

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.H., a minor, through his Guardian Ad Litem, Michelle Henshaw, JOSEPH HARRISON, KRYSTLE HARRISON, MARTIN HARRISON, JR., and TIFFANY HARRISON, all Individually and as Co-Successors in Interest of Decedent MARTIN HARRISON,<br><br>        Plaintiffs,<br>    vs.<br>COUNTY OF ALAMEDA, a municipal corporation; SHERIFF GREGORY J. AHERN, in his individual and official capacities; DEPUTIES MATTHEW AHLF, ALEJANDRO VALVERDE, JOSHUA SWETNAM, ROBERTO MARTINEZ, ZACHARY LITVINCHUK, RYAN MADIGAN, MICHAEL BARENO, FERNANDO ROJAS-CASTANEDA, SHAWN SOBRERO, SOLOMON UNUBUN; MEGAN HAST, A.S.W.; CORIZON HEALTH, INC., a Delaware corporation; HAROLD ORR, M.D.; ZELDA SANCHO, L.V.N.; and DOES 5-20, individually, jointly and severally,<br><br>        Defendants. | Case No. C11-2868 JST (MEJ)<br><br>**PLAINTIFFS' FIFTH MOTION IN LIMINE TO LIMIT THE TESTIMONY OF DEFENDANT CORIZON'S EXPERT ROBERT D. JONES, M.D., AND MEMORANDUM IN SUPPORT**<br><br>**Trial Date: March 10, 2014**<br>**Time: 8:30 a.m.**<br>**Courtroom: 9**<br>**Judge: Hon. Jon S. Tigar** |

No. C11-2868 JST (MEJ):   PLAINTIFFS' FIFTH MOTION IN LIMINE

# INTRODUCTION

This motion in limine presents this Court with four issues:

- **Information not included in Rule 26 report.**

    Dr. Jones did not review certain documents—including transcripts of depositions, and arbitration testimony—before writing his Rule 26 report.  Therefore, under Rule 37, this Court should order him not to testify about them.

- **Opinions not included in Rule 26 report.**

    Dr. Jones did not opine in his report about whether Martin Harrison had a serious medical need.  Therefore, under Rule 37, this Court should order him not to testify about this opinion.

- **Failure to comply with Rule 26's requirement that an expert-witness report list the facts and data used to formulate the report's opinions.**

    In violation of Rule 26, Dr. Jones's report did not list the specific bases for opinions 1 ("Overall System"), 2 ("Policies and Procedures"), 3 ("Training of Nurses"), and 5 ("Medical training of deputies").  Therefore, under Rule 37, this Court should preclude him from testifying about them.

- **Failure to meet FRE 702's reliability threshold requiring that an expert base opinions on sufficient facts.**  Dr. Jones based opinions 1 ("Overall System"), 2 ("Policies and Procedures"), 3 ("Training of Nurses"), and 5 ("Medical training of deputies"), on few specific facts and, in the case of opinions 3 and 5, solely on inadmissible hearsay (a single phone call with Bill Wilson, about which Defendants and Dr. Jones produced no information).  Therefore, this Court should prevent him from testifying about them at trial.

## I. ARGUMENT

**A. Under Federal Rule of Civil Procedure 37(c)(1), this Court should preclude Dr. Jones from testifying about facts that he did not include in his Rule 26 report.**

This Court should preclude Dr. Jones from testifying at trial about materials, such as deposition transcripts, that he himself testified that he either never read in preparing his report or read after he had submitted his report. An expert witness's Rule 26 report must contain "the facts or data considered by the witness in forming [his or her opinions]." Fed R. Civ. P. 26(a)(2)(B)(ii). Rule 37(c)(1) "gives teeth" to Rule 26's requirements "by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that [wa]s not properly disclosed." *Yeti by Molly LTD v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (footnote omitted). Dr. Jones admitted at his deposition that he did not read (or could not remember reading, or read after finishing his report) the following documents:

- **Bill Wilson's testimony from Zelda Sancho's arbitration hearing.** Dr. Jones admitted not reading Mr. Wilson's testimony. (Exhibit L, Jones Dep., 23:12–17);

- **Zelda Sancho's testimony from her arbitration hearing.** Dr. Jones admitted not reading Ms. Sancho's testimony. (Ex. L, Jones Dep., 23:18–22);

- **Lenore Gilbert's testimony from Zelda Sancho's arbitration hearing.** Dr. Jones admitted not reading Ms. Gilbert's testimony. (Ex. L, Jones Dep., 23:23–24:1);

- **The testimony of any other nurse who testified at Zelda Sancho's arbitration hearing.** Dr. Jones admitted that he had not seen the documents containing this testimony. (Ex. L, Jones Dep., 24:2–7);

- **Corizon's Employer's Post-Hearing Brief filed in the Sancho arbitration.** Dr. Jones admitted that he did not receive this document to review. (Ex. L, Jones Dep., 24:14–21);

- **The deposition of Corizon's Person Most Knowledgeable under Federal Rule of Civil Procedure 30(b)(6) concerning training provided to corrections officers, Terri

**Granlund, R.N.**  Dr. Jones admitted that he "d[id] not recall that deposition."  (Ex. L, Jones Dep., 46:5–9);

- **The deposition of Alameda County's Person Most Knowledgeable under Federal Rule of Civil Procedure 30(b)(6) concerning training provided to corrections officers, Sergeant Cynthia Sass.**  Dr. Jones admitted that he "d[id] not recall that deposition."  (Ex. L, Jones Dep., 46:10–15);

- **The depositions of all of the Sheriff's deputies involved in this case except Deputy Ahlf.**  Dr. Jones testified that Deputy Ahlf's deposition was the only one he had read.  (Ex. L, Jones Dep., 56:1–10);

- **Bill Wilson's deposition.**  In addition to not reviewing Bill Wilson's arbitration testimony, he admitted to not reading Bill Wilson's deposition in this case until after Dr. Jones formulated his opinions in this case.  (Ex. L, Jones Dep., 43:15–17; 101:1–4);

- **Megan Hast's deposition transcript.**  Dr. Jones admitted that he did not, that he could recall, read the transcript of Ms. Hast's July 2, 2012 deposition.  (Ex. L, Jones Dep., 99:9–11)  Dr. Jones later admitted that he reviewed Ms. Hast's deposition after forming his opinions in this case (Ex. L, Jones Dep., 101:1–4; 196:7–9);

- **Lenore Gilbert's deposition transcripts.**  Dr. Jones admitted that he did not read the transcript of Ms. Gilbert's October 8, 2013 deposition before submitting his report.  (Ex. L, Jones Dep., 99:12–15).  Later at his deposition, Dr. Jones admitted that he did also not review the transcript from Ms. Gilbert's deposition in December 2013, as Corizon's person most knowledgeable, until after he formed his opinions in this case (Ex. L, Jones Dep., 101:5–10);

- **Dr. Kathryn Burns's report and second report.**  Dr. Jones admitted to reviewing these after he wrote his Rule 26 report.  (Ex. L, Jones Dep., 100:5–9);

- **Plaintiff's expert Dr. Baden's report.** Dr. Jones admitted to reviewing this after he wrote his Rule 26 report. (Ex. L, Jones Dep., 100:10–12);

- **The reports of Drs. Mooney, Wetli, Di Maio, Schoenfeld, and Nurse Wild.** Dr. Jones admitted to reviewing these after he wrote his Rule 26 report. (Ex. L, Jones Dep., 100:13–16);

- **Dr. Burns's declaration in Opposition to the Defendant's Motions for Summary Judgment.** Dr. Jones admitted to reviewing this after issuing his rule 26 report. (Ex. L, Jones Dep., 100:17–21);

- **Dr. Orr's Declaration in Support of Corizon's Motion for Summary Judgment.** Dr. Jones admitted to reviewing this after issuing his rule 26 report. (Ex. L, Jones Dep., 100:22–25);

Because Dr. Jones did not list these documents in his Rule 26 report, this Court should preclude Dr. Jones from testifying about them at trial.

**B. Federal Rule of Civil Procedure 37(c)(1) requires this Court to preclude Dr. Jones from testifying about whether or not Martin Harrison had a serious medical need because Dr. Jones did not include this opinion in his report as Rule 26 requires.**

An expert witness's report must contain "a complete statement of all opinions the witness will express[.]" Fed. R. Civ. P. 26(a)(2)(B)(i). As Dr. Jones admitted at his deposition, his report did not include an opinion on whether or not Martin Harrison had a serious medical need. (Ex. L, Jones Dep., 247:12–15). Therefore, this Court should preclude him from testifying about this opinion at trial.

**C. Under Federal Rule of Civil Procedure 37(c)(1), this Court should preclude Dr. Jones from testifying about opinions 1 ("Overall System"), 2 ("Policies and Procedures"), 3 ("Training of Nurses") and 5 ("Medical training of deputies") because he failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B)(i)–(ii)**

This Court should preclude Dr. Jones from testifying about opinions 1, 2, 3, and 5 because his report failed to include the factual bases for them. Opinion 1, titled "Overall System," alleged that the healthcare system at Alameda County's Dyer Detention Facility and the Santa Rita Jail was, while Martin Harrison was incarcerated there, a "thoughtful, reasonable and rational system, comparable to those in place in other correctional facilities that offer quality health care systems." (Exhibit M, Jones Report, p. 2). Opinion 2, labelled "Policies and Procedures," claimed that the PHS/Corizon policies and procedures in effect during Mr. Harrison's incarceration were "thoughtful, reasonable[,] and rational[,]" and "met or exceeded the standard of care." (Ex. M, Jones Report, p. 2). Opinion 3, called "Training of nurses," alleged that "PHS/Corizon's training program for its nurses met the standard of care." (Ex. M, Jones Report, p. 4). Finally, Opinion 5, labelled "Medical training of deputies[,]" alleged that "PHS/Corizon met the standard of care for approving medical training of deputies through ongoing dialog and discussion with Sheriff's department supervisors." (Ex. M, Jones Report, p. 5).

An expert witness's report must contain "a complete statement of all opinions the witness will express *and the basis for them*[.]" Fed R. Civ. P. 26(a)(2)(B)(i) (emphasis added). To this end, Rule 26 requires that the expert witness's report include "the facts or data considered by the witness in forming [the witness's opinions]." Fed. R. Civ. P. 26(a)(2)(B)(ii). If an expert witness fails to include the facts or data upon which the expert witness relied in forming an opinion, then he or she may not testify about the opinion at trial—Federal Rule of Civil Procedure 37(c)(1) penalizes a party's failure to comply with Rule 26(a). Rule 37(c)(1) provides that "a party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). Rule 37(c)(1) "is a recognized broadening of the sanctioning power" of district courts. *Yeti by Molly*, 259 F.3d at 1106 (citing *Klonoski v. Mahlab*, 156 F.3d 255,

269 (1st Cir. 1998) (rest of citation omitted).  And "[t]he Advisory Committee Notes describe it as a 'self-executing,' 'automatic' sanction to 'provide[ ] a strong inducement for disclosure of material . . . .'" *Yeti by Molly*, 259 F.3d at 1106 (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)).  Dr. Jones failed to disclose in his expert witness report—or even at his deposition—the facts or data upon which he relied as the bases in forming opinions 1, 2, 3, and 5.

Consider Opinion 1, entitled "Overall System," in which Dr. Jones opined that "[t]he health care system in place in Alameda County's Glenn E. Dyer Detention Facility and Santa Rita Jail during the period of Martin Harrison's incarceration was a thoughtful, reasonable, and rational system, comparable to those in place in other correctional facilities that offer quality health care systems."  (Ex. M, Jones Report, p. 2).  Nowhere in his report did Dr. Jones identify the information upon which he relied in reaching this conclusion.  He did not identify the other correctional facilities that offer "quality health care systems," similar to Defendants, nor ever identify the aspects of a 'quality health-care system."  Instead of listing the facts or data upon which he based this opinion, he listed, as the "basis" for this opinion, "[s]ee Opinions 2–6."  (Ex. M, Jones Report, p. 2).  Listing opinions as the basis for an opinion does not comply with Rule 26.

Similarly, in Opinion 2, Dr. Jones claimed that "[t]he policies and procedures established by PHS/Corizon and approved by Harold Orr, M.D., which were in effect during Mr. Harrison's incarceration, were thoughtful, reasonable, and rational."  (Ex. M, Jones Report, p. 2).  But Dr. Jones does not define these elastic terms.  He further asserted that these policies and procedures "met or exceeded the standard of care," but nowhere does his report identify specifically the standard of care that he applied. (Ex. M, Jones Report, p. 2).  He claimed that the PHS/Corizon policies and procedures "also met the national 'standards' for jails established by the National Commission on Correctional Health Care (NCCHC) and the American Correctional Association (ACA)."  (Ex. M, Jones Report, p. 2–3).  He did not, however, include in his report the specific NCCHC or ACA standards he

consulted when forming this opinion. Dr. Jones claimed that "the policies and procedures in effect at the time Mr. Harrison was incarcerated cross referenced to both the NCCHC and ACA standards for jails." (Ex. M, Jones Report, p. 3). He did not, however, identify the specific policies and procedures that he was referring to.

In Opinion 3, he wrote that "PHS/Corizon's training program for its nurses met the standard of care." (Ex. M, Jones Report, p. 4). But he did not define the standard of care. He asserted that "PHS/Corizon also specifically stresses the importance of following its policies during its 40 hour new employee orientation training." (Ex. M, Jones Report, p. 4). He did not identify the documents he relied upon as a basis for this statement, and there is no evidence that the Corizon 40-hour, new-employee training is given to corrections officers who are employed by the County and not Corizon. Dr. Jones claimed that "PHS/Corizon also provides ongoing monthly in-service training programs." (Ex. M, Jones Report, p. 4). But he did not identify the factual basis for this statement—by, for example, listing the specific documents that he reviewed that were purportedly used in the training program. Dr. Jones asserted that "[t]hese processes were assessed during the NCCHC accreditation survey in 2008 and found to be in compliance." (Ex. M, Jones Report, p. 4). But nowhere in his report does he include the factual basis for this claim. Moreover, it is undisputed that any 'monthly' training is only for Corizon employees, and corrections officers do not attend such trainings.

Dr. Jones claimed that "[o]rientation materials stress the potential lethality of alcohol withdrawal and the importance of identification of those at risk for alcohol withdrawal for monitoring, and treatment as necessary." (Ex. M, Jones Report, p. 4). Presumably, it would not have been difficult for Dr. Jones to list these "orientation materials," but he did not do so. The orientation and training Corizon provided to its own employees are not in issue in this case, and neither Dr. Jones nor any other witness provides admissible evidence that correctional officers received the annual or biennial health related training mandated by national standards.

Dr. Jones also claimed that "[a]nnual training in 2009 and 2010, prior to Mr. Harrison's incarceration, covered addiction to alcohol and other drugs and withdrawal treatment in depth and was provided during all staff meetings." (Ex. M, Jones Report, p. 4). But nowhere does Dr. Jones list the factual basis for this statement. Furthermore, such training is only for Corizon health care staff, which is not at issue in this case. Dr. Jones claimed that "[a] handout was provided and CEU credit was given[,]" but Dr. Jones did not list the handout's title, or summarize its content, in his report. (Ex. M, Jones Report, p. 4).

Lastly, Dr. Jones failed to provide the factual basis for Opinion 5. Entitled "Medical training of deputies," Dr. Jones claimed in Opinion 5 that "PHS/Corizon met the standard of care for approving medical training of deputies through ongoing dialog and discussion with Sheriff's department supervisors." (Ex. M, Jones Report, p. 5). Dr. Jones claimed in Opinion 5 that "[t]he medical training of deputies [wa]s demonstrated by the 4 minute training handouts, which review the important items for correctional staff to be aware of when dealing with inmates, as well as substance abuse handouts provided by PHS/Corizon to the Sheriff's Department." (Ex. M, Jones Report, p. 6). But nowhere in his report did he specifically identify the 4-minute training handout, or even discuss its contents with any specificity. Dr. Jones further claimed that "[t]he medical training of deputies was reviewed by the NCCHC Accreditation team, which found that the Santa Rita Jail was in compliance with NCCHC national standards for medical training of deputies." (Ex. M, Jones Report, p. 6). Nowhere does he list the NCCHC's findings. Dr. Jones claimed, as the "basis" for his opinion, the "[t]raining records of deputies" that were "kept by the Sheriff's Department." (Ex. M, Jones Report, p. 5). Nowhere in his report, however, did Dr. Jones identify the specific records upon which he relied to form Opinion 5. Indeed, at his deposition, Dr. Jones testified that he had not looked at any of the training records of the Sheriff's deputies involved in

this case; specifically, he said that he "ha[d] not looked at specific officers' training records." (Ex. L, Jones Dep., 55:22–25).

After the section in his report containing his opinions, Dr. Jones again failed to list the facts and data upon which he relied in reaching his opinions. Instead of listing the specific facts or data upon which he relied to form his opinions, as Rule 26 requires, Dr. Jones merely wrote, under the heading "[i]nformation reviewed in forming opinions[,]" this vague phrase: "Medical records: PHS Policies and Procedures." (Ex. M, Jones Report, p. 6).

Indeed, at his deposition, Dr. Jones could not specify the documents he relied upon to form the opinions in his report. When asked about which specific policies he reviewed to formulate his opinions, Dr. Jones testified: "What I remember? Uh, intake screening, training, documentation, alcohol treatment. I mean this has been a long time ago. I simply don't remember all the policies. I reviewed all of them that I received and that were in effect at the time." (Ex. L, Jones Dep., 129:3–5). When asked whether he understood that Rule 26 required him to state all the documents that he reviewed in forming his opinions, Dr. Jones replied that he "reviewed all the policies and procedures." (Ex. L, Jones Dep., 129:13–16).

Dr. Jones never provided anything but summary conclusions, and referred to his own opinions as the basis for his opinions. Rule 26, and this Court's gatekeeping function, require more specificity.

Because Dr. Jones failed to provide the information upon which he relied in forming Opinions 1, 3 and 5, this Court should prevent him from testifying about them.

**D. Under Federal Rule of Evidence 702, Opinions 1 ("Overall System"), 2 ("Policies and Procedures"), 3 ("Training of Nurses"), and 5 ("Medical training of deputies"), are unreliable because Dr. Jones based them on insufficient facts, and therefore this Court should preclude him from testifying about them.**

Rule 702 provides another basis for this Court to preclude Dr. Jones from testifying about Opinions 1, 2, 3 and 5. A district court must ensure the reliability of the expert's testimony. *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (citing *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993)).  This "'basic gatekeeping obligation' applies with equal force in cases, such as this one, where 'non-scientific' experts wish to relate specialized observations derived from knowledge and experience that is foreign to most jurors."  *United States v. Prime*, 43 2 F.3d 1147, 1152 (9th Cir. 2005) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999)).

Plaintiffs request that this Court, in its discretion, determine the reliability of Dr. Jones's proposed expert-witness opinion testimony without holding a hearing, given that "[t]he reliability inquiry is 'a flexible one.'"  *Estate of Barabin v. AstenJohnson, Inc.*, No. 10-36142, No. 11-35020, 2014 U.S. App. LEXIS 774, at *13 (9th Cir. Jan. 15, 2014) (en banc) (citing *Kumho Tire*, 526 U.S. at 150).  This means that the trial judge "has broad latitude in determining the appropriate form of the inquiry."  *Id.* (citing *United States v. Alatorre*, 222 F.3d 1098, 1102 (9th Cir. 2000) ("Nowhere … does the Supreme Court mandate the form that the inquiry into relevance and reliability must take.")).  Here, this Court need not hold a *Daubert* hearing: Dr. Jones's report and deposition transcript show that his proposed expert-witness opinion testimony lacks reliability because he has failed to provide sufficient factual bases for his opinions.  An expert witness "may provide opinion testimony if 'the testimony is based upon sufficient facts or data' and 'is the product of reliable principles and methods,' which have been 'applied . . . reliably to the facts of the case.'"  *United States v. W.R. Grace*, 504 F.3d 745, 759 (9th Cir. 2007) (quoting Fed. R. Evid. 702).  Dr. Jones's Opinions 1, 3 and 5 do not pass muster under Rule 702, because he based them on insufficient facts.

The purported "basis" of Opinion 1 is "Opinions 2–6."  (Ex. M, Jones Report, p. 2). Therefore, this Court should preclude Dr. Jones from testifying about Opinion 1 because he did not base it on sufficient facts; rather, he based it on other opinions.

This Court should preclude Dr. Jones from testifying about Opinions 2 and 3 because of their lack of factual bases as discussed in the preceding section of this memo.

This Court should preclude Dr. Jones from testifying about Opinion 5 because it lacks a sufficient factual basis. Dr. Jones based it on a single phone conversation with Bill Wilson. At his deposition, Dr. Jones admitted that "Opinion 5, the training of deputies, is based on much of [Dr. Jones's] dialogue with Mr. Wilson." (Ex. L, Jones Dep., 34:7–8). In Opinion 5, Dr. Jones wrote that "Bill Wilson, the PHS/Corizon health services administrator at the time Martin Harrison was incarcerated, *said* that when he began working at the Alameda County Jail, it had already been accredited by the NCCHC[,]" and "the Sheriff's department had medical training for deputies in place, which had been approved by the NCCHC and was on-going." (Ex. M, Jones Report, p. 5–6) (emphasis added). Dr. Jones added in Opinion 5 that "Mr. Wilson offered the Sheriff's Department the help of medical staff to assist in these trainings as needed." (Ex. M, Jones Report, p. 6). Dr. Jones further claimed in Opinion 5 that Bill Wilson "had frequent contact with the Sheriff's Department sergeants and lieutenants who were assigned as liaison to PHS/Corizon, including ongoing discussions with them about training." (Ex. M, Jones Report, p. 6). Dr. Jones's Opinion 5 is not his opinion at all, but an empty vessel for Bill Wilson's inadmissible hearsay statements.

A district court may allow an expert witness "to state an opinion based on otherwise inadmissible hearsay when the source of information is 'of a type reasonably relied upon by similar experts in arriving at sound opinions on the subject.'" *United States v. McCollum*, 732 F.2d 1419, 1422 (9th Cir. 1984) (quoting *United States v. Sims*, 514 F.2d 147, 149 (9th Cir. 1975), *cert. denied*, 423 U.S. 845 (1975); Fed R. Evid. 703). But *Sims* contemplates that an expert witness relies on hearsay to form his or her own independent opinion; there, the panel explained that an expert may rely upon hearsay provided that "the expert synthesizes the primary source material—be it hearsay or not—into properly admissible evidence in opinion form." *Sims*, 514 F.2d at 149.

Dr. Jones has neither synthesized Bill Wilson's assertions nor used them to form his own independent opinions. Rather, he has simply spouted unsupported hearsay statements of Mr.

Wilson, given in an unspecified telephone conversation with Dr. Jones, and recast them as his 'opinions.'

Dr. Jones's purported Opinion 5 does not synthesize what Bill Wilson said so much as recite what Bill Wilson said.  Indeed, the *Sims* panel warned that it did "not open the gates to a wholesale use of all types of hearsay in formulating expert opinions." *Id.*

Indeed, Dr. Jones's deposition testimony reveals that he did not synthesize, into some kind of work product, what Bill Wilson had told him.  Dr. Jones did not document his phone call with Mr. Wilson.  At his deposition, when asked if he had brought his notes from his conversation with Mr. Wilson as the deposition notice required, Dr. Jones replied "Uh, no[,]" that he did not bring any notes because "[t]here were no notes; it was a telephone conversation."  (Ex. L, Jones Dep., 8:9–12).  Dr. Jones testified that he did not take any notes; he "primarily just asked him specific questions and he responded to them."  (Ex. L, Jones Dep., 8:13–16).  Dr. Jones testified that he "basically asked him similar questions that [he] would [have asked] during an audit process[,]"  But Dr. Jones testified that, when doing an audit for the NCCHC or the ACA, he would "have forms" to "interview the individuals with."  (Ex. L, Jones Dep., 9:2–14).  Nevertheless, Dr. Jones testified that he did not use any kind of form when he interviewed Bill Wilson.  (Ex. L, Jones Dep., 9:15–17).

Indeed, Dr. Jones could not—or would not—answer basic questions about his conversation with Mr. Wilson.  When asked when he spoke to Mr. Wilson, Dr. Jones testified that he "d[id]n't recall the specific date."  (Ex. L, Jones Dep., 9:18–19).  When asked "[h]ow far in advance of your writing your original report in this case was [his] conversation" with Mr. Wilson, Dr. Jones testified that he "d[id] not specifically remember that information."  (Ex. L, Jones Dep., 9:23–10:1).  Indeed, when asked whether Dr. Jones could "provide . . . an estimate of how far in advance of writing [his] report [he] spoke to Mr. Wilson[,]" Dr. Jones replied that he "d[id] not remember."  (Ex. L, Jones Dep., 10:2–4).  Dr. Jones repeatedly could not say how long his telephone conversation with Mr.

Wilson lasted. (Ex. L, Jones Dep., 28:2–4; 29:12–32:3). The conversation lasted more than 5 minutes and less than two hours, and Dr. Jones was incapable of providing more definite information. (Ex. L, Jones Dep., 30:19–32:3). Dr. Jones did not synthesize what he learned from Mr. Wilson into an independent opinion. And, in any case, this purported phone conversation does not provide a sufficient factual basis for Opinion 5.

Moreover, Dr. Jones acknowledged Opinion 5's utter lack of factual support. He admitted that he did not recall the deposition of Terri Granlund, Corizon's Person Most Knowledgeable about the training that the Sheriff's Deputies received on alcohol withdrawal. (Ex. L, Jones Dep., 46:5–9). He also did not recall the deposition of Alameda County Sherrif's Sergeant Cynthia Sass, whom the County produced as its Person Most Knowledgeable on training that the County provided to the Sheriff's deputies on alcohol withdrawal. (Ex. L Jones Dep., 46:10–15).

## II.   RELIEF REQUESTED

For the foregoing reasons, Plaintiffs move in limine to preclude Dr. Jones from testifying about both: (1) the facts he omitted from his opinion, as stated in I.A., above; (2) the opinion he did not include in his report, as discussed in I.B., above; and (3) Opinions 1, 2, 3 and 5, because he failed to comply with Rule 26, as discussed in I.C., above, and because he failed to provide adequate factual bases as Rule 702 requires, as discussed in I.D., above.

Respectfully Submitted,

Dated:  February 21, 2014                              HADDAD & SHERWIN

1  
2  
3  
4  
5  
6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

/s/ T. Kennedy Helm

T. KENNEDY HELM

Attorneys for Plaintiff