1  William W. Drury, #005238
   Jeffrey S. Hunter, #024426
2  RENAUD COOK DRURY MESAROS, PA
   One North Central, Suite 900
3  Phoenix, Arizona 85004-4417
   Telephone: (602) 307-9900
4  Facsimile:  (602) 307-5853
   E-mail:   docket@rcdmlaw.com
5             wdrury@rcdmlaw.com
              jhunter@rcdmlaw.com

6  J. Randall Andrada (SBN 70000)
7  randrada@andradalaw.com
   ANDRADA & ASSOCIATES
8  180 Grand Avenue, Suite 225
   Oakland, California 94612
9  Attorneys for Defendants
10 County Of Alameda, Gregory J. Ahern, In His Capacity As Sheriff For County Of
   Alameda, And Deputies Matthew Ahlf, Alejandro, Valverde, Joshua Swetnam, Roberto
11 Martinez, Zachary Litvinchuk, Ryan, Madigan, Michael Bareno, Fernando
   Rojas-Castaneda, Shawn Sobrero, Solomon Unubun, all individually and in their
12 official capacities as Deputy Sheriffs for County of Alameda, and Megan Hast, A.S.W.

13
   Nancy E. Hudgins, SBN 85222
14 Matthew M. Grigg, SBN 195951
   Carol B. Ho, SBN 286972
15 LAW OFFICES OF NANCY E. HUDGINS
   711 Van Ness Ave., Ste 450
16 San Francisco, CA, 94102
   415-979-0100
17 Attorneys for Defendants
18 Harold W. Orr, Jr., M.D., and Corizon Health

19
   Kathleen J. Williams, CSB #127021
20 Martha M. Stringer, CDB #156333
   WILLIAMS & ASSOCIATES
21 1250 Sutterville Road, Suite 290
   Sacramento, CA 95822
22 (916) 456-1122
   (916) 737-1126 (fax)
23 Attorneys for Defendant
24 Zelda Sancho, LVN

25

26

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1

1804815.v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

M. H., a minor, through his Guardian Ad
Litem, Michelle Henshaw, JOSEPH
HARRISON, KRYSTLE HARRISON,
MARTIN HARRISON, JR. and TIFFANY
HARRISON, all individually and as Co-
Successors in Interest of Decedent
MARTIN HARRISON,

                              Plaintiffs,

v.

COUNTY OF ALAMEDA, a municipal
corporation, - SHERIFF GREGORY J.
AHERN, in his individual and official
capacities; DEPUTIES MATTHEW
AHLF, ALEJANDRO VAL VERDE,
JOSHUA SWETNAM,
ROBERTO MARTINEZ, ZACHARY
LITVINCHUK, RYAN MADIGAN,
MICHAEL BARENO,
FERNANDO ROJAS-CASTANEDA,
SHAWN SOBERO, SOLOMON
UNUBUN, MEGAN HAST,
A.S.W., CORIZON HEALTH, INC., a
Delaware corporation, HAROLD ORR,
M.D., ZELDA SANCHO, L.V.N. and
DOES 5-20, individually,
28 jointly and severally,

                              Defendants.

No. C11-2868 – JST


**DEFENDANTS' OMNIBUS
MOTION IN LIMINE**

## DEFENDANTS' OMNIBUS MOTION IN LIMINE

Pursuant to the Court's Order Re: Trial Schedule, Bifurcation, Motions in Limine, Jury Questionnaire, and Jury Instructions (Doc#294), Defendants respectfully submit their Omnibus Motions *in Limine*.

**A.    Defendants County of Alameda, Ahern, Ahlf, Verde, Swetnam, Martinez, Litvinchuk, Madigan, Bareno, Rojas-Castaneda, Sobero, Unubun, Hast**

**Motion *in Limine* No. 1:        Exclude evidence re: the alleged "code of silence" at Santa Rita Jail and/or within the Alameda County Sheriff's**

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

2

1804815.v1

**Office and Plaintiffs' police practices expert Jack Ryan from testifying re: same. Line of questioning and "expert" opinion re: this subject is irrelevant, unfairly prejudicial to the Defendants, and highly inflammatory.**

Reference to the code of silence should be prohibited because it is irrelevant to the issues in the case. "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Evidence which is not relevant is not admissible. Fed.R.Evid. 402.

Whether the defendant deputies are familiar with the code of silence fails to prove or disprove any disputed allegation. The existence of a code of silence at other institutions or, for that matter, at ACSO in the past has no bearing on whether the defendant deputies engaged in any excessive force during the subject incident and/or are testifying truthfully. No deputy or ACSO employee was asked at deposition whether a code of silence existed at Santa Rita Jail. There has been no testimony or evidence at all from a County witness regarding code of silence at all.

Evidence of the alleged code does not tend to prove the Plaintiffs' allegations against the Defendants. Nor does it tend to prove that the deputy defendants are engaged in some dark conspiracy to cover up the truth. Thus, the Plaintiffs should be precluded from making any reference to the code of silence. *See* Fed.R.Evid. 402.

There is no probative value to introducing evidence of the term or concept of code of silence. Such "code" evidence does not address the merits, i.e. an element of a claim or defense; the probative value of the evidence is weak at best. *See*, e.g., *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (the probative value of evidence against a defendant is low where the evidence does not go to an element of the charge).

In *Buckley v. Evans*, 2007 WL 2900173 (E.D. Cal. 2007), the Plaintiffs sought to introduce evidence of the code of silence to show bias and attack the credibility of the

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

3

1804815.v1

defense witnesses. The Eastern District concluded the evidence had minimal probative value. The court found that any such value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading of the jury. Id. The court stated, "Each of the witnesses is a defendant with a clear interest in the outcome of the case whose bias is obvious." Id.

*Buckley* is analogous to the instant case. Evidence of this kind offered for credibility purposes has minimal, if any, probative value and should be excluded. The danger of prejudice and confusion of the jury are obvious.

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, and misleading the jury. Fed.R.Evid. 403. The obvious intent behind the introduction of evidence regarding the code of silence (a.k.a. "the conspiracy") is to appeal to the passion or prejudice of jurors. It follows that the code of silence evidence should be excluded under Rule 403. *See Gonzalez v. City of Garden Grove*, 2006 WL5112757 (C.D. Cal., Dec. 4, 2006) (Testimony regarding code of silence prohibited because the term is unfairly prejudicial); *Bruce v. City of Chicago*, 2011 WL 3471074 (N.D. Ill., July 29, 2011) (Plaintiff prohibited from using "code of silence" or "blue wall" as these terms are unduly prejudicial. Plaintiff also prohibited from introducing evidence that officers typically adhere to a "code of silence" or "blue wall" or seek to cover-up misconduct in order to protect fellow officers).

Evidence of an alleged code of silence should also be excluded as character evidence under Federal Rule of Evidence 404(b). The Ninth Circuit has held that "[e]vidence of prior misconduct is admissible [only] if it is clear and convincing; relevant to an issue other than character; and its probative value outweighs any potential prejudicial effect. Such evidence may not be admitted to show a propensity or proclivity to commit bad acts. Nor is such evidence admissible to show that a person acted in conformity with his bad character." *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1334-1335 (9th Cir. 1985).

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

4

1804815.v1

In this case, there is no "evidence of prior misconduct" or other evidence to suggest that any of the officers are withholding information under a code of silence. Thus, reference to a code of silence suggests that jurors should question the credibility of officers based upon unfounded allegations related to the conduct of other officers at other institutions. This is essentially character evidence based upon the character of other, unnamed individuals. Any such evidence is clearly inadmissible under Rule 404(b).

The County Defendants further seek to exclude any expert testimony regarding the existence of a code of silence under Rule 403 and 702. As stated above, the Plaintiffs will seek to introduce evidence regarding the code of silence through its expert Jack Ryan to attack the credibility of defense witnesses.

However, the credibility of witnesses is not a proper subject for expert testimony. *See* Fed.R.Evid. 702 (A witness may testify as an expert if his scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence.); *United States v. Barnard,* 490 F.2d 907, 912–13 (9th Cir. 1973) (Credibility is a matter to be decided by the jury).

The Plaintiffs' only expert on police practices is Jack Ryan. Mr. Ryan testified that he believes there is a code of silence among the defendant deputies at Santa Rita Jail. He has never worked at Santa Rita, Alameda County Sheriff's Office, or even at any department in California and thus is not competent to testify as to whether the code of silence existed at Santa Rita Jail during the time of the subject incident. Nor should Mr. Ryan be able to testify to the existence of a code of silence among jail officials in general because this term is unfairly prejudicial, as argued above. *See Gonzalez v. City of Garden Grove*, 2006 WL 5112757 (C.D. Cal., Dec. 4, 2006).

According Mr. Ryan, the following is evidence of the code of silence among the defendant deputies: 1) there is an absence of any testimony with regard to the neck trauma; 2) some officers reviewed other reports or spoke to others before writing their report; and

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

3) the wording in some reports was very similar to other reports; 4) some deputies were in a position to observe events but claim not to have seen them; and 5) some deputies saw other deputies striking the inmate but were unable to specifically identify the strikers. [Ryan depo, 187-190, Ex. A to Ly Dec].

It is undisputed that the autopsy report contains some injuries to the neck. No deputy testified that he intentionally inflicted force on Mr. Harrison's neck. These two facts alone do not equate to a conspiracy to cover up some use of force. The neck injuries could have been caused by any number of reasons. Mr. Ryan's opinion that a code of silence existed based on the neck trauma is pure speculation and not the proper subject of expert testimony. *See* Fed.R.Evid. 702 (A witness may testify as an expert if his scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence). The jury should be free to make its own conclusions regarding the evidence presented at trial without Mr. Ryan essentially being allowed to argue that the deputies are liars and conspirators.

Regarding report writing, Deputy Madigan testified that he did not even know how to access other deputies' reports at the time he wrote his own. [Madigan depo, 56-57, Ex. B to Ly Dec]. Deputy Unubun testified that he had no idea whether other deputies had written their reports prior to him writing his own. [Unubun depo, 59:24-60:5, Ex. C to Ly Dec]. Deputy Valverde did not confer with any deputy or review any previously written report prior to writing his report. [Valverde depo, 59-60, Ex. D to Ly Dec].

The only deputy that Mr. Ryan identified as reading other deputies reports was Deputy Litvinchuk. [Ryan depo, 190:7-12]. Deputy Litvinchuk testified that he looked at the supplemental reports of the deputies who already had their reports completed prior to writing his own. [Litvinchuk depo, 56:21-25 Ex. E to Ly Dec]. He did not recall which specific report he reviewed, if any.  Litvinchuk was certain that he wrote his report in his own words describing how he observed the incident. [*Id.*, 58-59]. He did not "copy and paste" anything from another deputies' report and paste it into his own. [*Id.*]. Mr. Ryan's

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

conclusion that a code of silence existed because a deputy might have reviewed another deputy's report prior to writing his own lacks foundation and is pure speculation. Furthermore, the fact that the words in one report might be similar to those in another report about the same incident is not an adequate basis for an expert to opine that a code of silence exists.

Finally, Mr. Ryan's opinion that a code of silence exists merely because some deputies are unable to recall specific details of the altercation is likewise speculation and impermissible testimony regarding credibility. It is therefore outside the scope of expert testimony under FRE 702.

For the aforementioned reasons, the court should prohibit reference to any code of silence, a conspiracy with regard to report writing and or other such nefarious matters.

**Motion *in Limine* No. 2:**     **Exclude the Plaintiffs from using the phrases "beating" or "stomping" or "crushing" or any other inflammatory words to describe the use of force exhibited by the deputy defendants. Such language is unnecessary (i.e., the jury can draw its own conclusions), unfairly prejudicial to the defendants, and highly inflammatory.**

Additionally, these statements mischaracterize the evidence. For example, Plaintiffs have continuously mischaracterized the deputies' use of force as a "beating" during the discovery process, even in its questions to medical experts. To a layperson, the word "beating" obviously will evoke anger and punitive impulses. The first result that appears after a "Google search" of "beating definition" is "a punishment or assault in which the victim is hit repeatedly." It is clear that no deputy testified that they inflicted force with the intent to punish or assault Mr. Harrison.  Rather, they were trying to achieve compliance from a noncompliant inmate.

Further, Plaintiffs and their police practices expert have mischaracterized Deputy Swetnam's kick as a "stomp." Deputy Swetnam testified that he delivered a "downward

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

kick to his lower abdomen." [Swetnam depo, 25:15, Ex. F to Ly Dec]. He clearly testified that he did not "stomp" Mr. Harrison. [Swetnam depo, 82-83]. Rather, Swetnam described his kick as follows:

> I did not force my heel all the way to the ground. What I did was I just kicked him in the stomach there or lower abdomen....It's going to be delivered with some force, yes. But I'm not trying to stomp his guts out…" [Swetnam depo, 83:7-16]

As stated above, Plaintiffs have attempted to "editorialize" the evidence in this case through descriptions of the events in this case using inflammatory language, such as the words "beating" or "stomping" or "crushing." This Court has the authority and discretion to issue an Order in Limine precluding the use of such (or similar) language by Plaintiffs' counsel.

This Court "has broad discretion to manage the conduct of a trial and the evidence presented by the parties, under the Federal Rules of Evidence and Civil Procedure and as part of the Court's inherent authority." *Apple, Inc. v. Samsung Electronics Co., Ltd*., 2013 WL 6001902, *2 (N.D.Cal.2013).  Federal Rule of Evidence 403 "gives the court discretion to exclude relevant evidence 'if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 4537838, *1 (N.D.Cal.2013) (quoting Fed.R.Evid. 403) (emphasis added). *See also Tennison v. Circus Circus Enters*., 244 F.3d 684, 690 (9th Cir.2001) (district court "enjoys considerable discretion in determining whether to exclude evidence under Rule 403 for unfair prejudice.").

Federal courts have restricted an attorney's use of inflammatory language through Orders in Limine. *See e.g., Berry v. Epps, 230 Fed.Appx*. 386, 395-396 (5th Cir. 2007) (precluding use of term "habitual criminal" as unfairly prejudicial); *U.S. v. Stewart*, 977 F.2d 81, 83 (3d Cir. 1992) (precluding use of term "lookout" as unfairly prejudicial);

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1   *FreeLife Intern., Inc. v. Am. Ed. Music Pubs. Inc*., 2010 WL 1252568, *6 (D.Ariz. 2010)

2   (precluding use of term "pyramid" in case alleging financial fraud); *BNSF Ry. Co. v.*

3   *LaFarge Southwest, Inc.*, 2009 WL 4279847, *7 (D.N.M. 2009) (precluding use of word

4   "slumber" as unnecessary "interpretation" in case alleging engineer fell asleep).

5       In *U.S. v. Sayetsitty*, 107 F.3d 1405, 1408-09 (9th Cir. 1997), the Ninth Circuit

6   suggested that language such as "attack," "assault," "killing," "brutal kicking," and

7   "animal-like attack" were proper only because the terms were restricted to closing

8   argument and were not used by the prosecution during trial to describe the evidence. See

9   107 F.3d at 1408-09. The same is true in this case.

10      In *Cotton v. City of Eureka*, 2010 WL 5154945, *14, 08-04386 (N.D. Cal. Dec. 14,

11  2010), Judge Armstrong excluded Plaintiffs' expert from "inflammatory" characterizations

12  of the defendant officers' conduct, including terms such as "pummeled," beating the

13  dickens out of," and "beat into submission." This Court found that such characterizations

14  are inflammatory within the meaning of FRE 403 and instructed both parties "to ensure that

15  their respective experts articulate their opinions in a thoughtful and professional manner,

16  and to avoid eliciting unnecessarily sensationalized testimony."

17      The jury is the trier of fact, and the jury will be presented with the evidence of how

18  the defendant deputies used force against Mr. Harrison. To allow the jurors the freedom and

19  the respect to which they are entitled, County Defendants respectfully request that this

20  Court preclude Plaintiffs from using such (or similar) language. There are several non-

21  inflammatory alternatives to accurately describe the use force, such as strikes, punches, or a

22  kick.

23      For the aforementioned reasons, the court should prohibit reference to any evidence

24  regarding inflammatory language as outlined herein.

25  **Motion *in Limine* No. 3:    To exclude the autopsy photos in this case.**

26                                  **Defendant Sancho joins in Defendant ACSO's Motion in**

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

**Limine #3**

**Defendants Corizon and Dr. Orr join in Defendant ACSO's Motion in Limine #3**

A number of courts have held that gruesome photographs may be excluded where offered for no other purpose but to inflame the emotions of the jury. *See Navarro de Cosme v. Hospital Pavia*, 922 F.2d 926, 930-31, 31 Fed. R. Evid. Serv. 1200 (1st Cir. 1991) (gruesome photographs, were properly excluded by the trial judge as prejudicial and inflammatory); *U.S. v. Katz*, 178 F.3d 368, 372-74, 51 Fed. R. Evid. Serv. 1241 (5th Cir. 1999) (trial judge properly excluded photographs on the basis that the prejudicial impact of the photographs outweighed the probative value of them); and *Aliotta v. National R.R. Passenger Cor*p., 315 F.3d 756, 764, 60 Fed. R. Evid. Serv. 290 (7th Cir. 2003) (trial court had discretion to exclude a photograph of the deceased's body on the basis that the unfair prejudice from the photograph outweighed the probative value of it).

The majority of the autopsy photos depict close-up pictures of organs and body tissue. The other photos that depict recognizable portions of a human body include a head with a spread rib cage. This photo certainly is graphic and does not demonstrate anything other than the fact that an autopsy was conducted.

For jurors not accustomed to viewing such pictures, the photographs will not aid in understanding the medical testimony at all. Because the probative value is so minimal, the unfair prejudice substantially outweighs any possible value to Plaintiffs' case, and thus, the photographs should be precluded. See, e.g., *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 4537838, *1 (N.D.Cal.2013) (quoting Fed.R.Evid. 403).

Furthermore, gruesome photographs may be excluded as cumulative where the proponent cannot show how the photographs differ from other evidence. *See, e.g., Hospital Pavia*, 922 F.2d at 930-31 (gruesome photographs, which were also cumulative of other evidence, were properly excluded). Again, unless the jury is trained in pathology, the jury likely will not be able to appreciate what the photograph demonstrates, let alone what is

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

10

1804815.v1

1  unique about the body tissue in the photo. The photos simply duplicate the medical

2  evidence but do not enhance the jury's understanding, and thus, should be precluded as

3  cumulative.

4      For the aforementioned reasons, Defendants respectfully request that this Court

5  preclude the admission of the autopsy photos in this case.

6

7  **Motion *in Limine* No. 4:**          **To exclude any argument or evidence that Deputy**
                                           **Martinez's taser certification had expired four**
8                                          **months prior to the subject incident. Such evidence or**
                                           **argument is irrelevant, because Plaintiffs have made**
9                                          **no showing that Deputy Martinez's prior certification**
                                           **did not give him sufficient knowledge to property use**
10                                         **the TASER. Furthermore, the jury will be misled and**
                                           **confused with regard to whether Deputy Martinez**
11                                         **was authorized to employ the TASER.**

12

13     Deputy Martinez completed an eight-hour taser training course and thus became

14 certified to use the taser on May 21, 2008. ACSO policy states that deputies are to renew

   their certification every year. Deputy Martinez renewed his certification on April 27, 2009.
15
   At the time of the incident August 16, 2010, he had not yet renewed his certification.
16
   [ACSO 61, Ex. G to Ly Dec]. He renewed it shortly after this incident.
17
       Plaintiffs did not question Deputy Martinez regarding this subject at his deposition.
18
   However, they spent some length of time questioning the County's taser PMK, Deputy
19
   Kevin Lewis, regarding Martinez's expired certification. Plaintiffs questioned what
20
   Martinez's obligation was to monitor his certification, the discipline if he uses a taser out of
21
   certification, and what Deputy Lewis's role was in reporting officers who use a taser
22
   without a current certification. [Lewis depo, 51-56, Ex. H to Ly Dec]. This line of
23
   questioning is irrelevant, lacks probative value, and will mislead the jury/waste time.
24
       This court "has broad discretion to manage the conduct of a trial and the evidence
25
   presented by the parties, under the Federal Rules of Evidence and Civil Procedure and as
26

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

part of the Court's inherent authority." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2013 WL 6001902, *2 (N.D.Cal.2013). Federal Rule of Evidence 403 "gives the court discretion to exclude relevant evidence 'if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 4537838, *1 (N.D.Cal. 2013) (quoting Fed.R.Evid. 403) (emphasis added). Furthermore, evidence is irrelevant is the fact an irrelevant fact "is one not of consequence in determining the action." *Blye v. California Supreme Court*, 2014 WL 295022, 1 (N.D.Cal.) (N.D.Cal. 2014) (citing Fed.R.Evid. 401(b)).

Plaintiffs are not arguing that Deputy Martinez's failure to have the most recent certification prevented him from learning of new techniques or precautions that either would have prevented injury in this case or would have reduced the decedent's injuries – cf. Russell v. Wright, 916 F.Supp.2d 629, 657 (W.D.Va. 2013) – thereby rendering the lack of a current certification irrelevant. Furthermore, Plaintiffs' argument on this point may create the unfairly prejudicial impression that the lack of a current certification is the same as no certification, which is certainly not true in this case.

For the aforementioned reasons, the court should prohibit Plaintiffs from introducing evidence regarding Deputy Martinez's lack of current Taser certification.

**Motion *in Limine* No. 5:**   **County Defendants move to exclude inquiry regarding Deputy Unubun's: A. Performance at the academy, B. Inmate Grievances filed against him in October 2009 and March 2010, C. Internal affairs complaint filed against him in September 2011**

**A. Performance at the academy**

Deputy Unubun entered the police academy in 2005. He initially failed the defensive tactics course at the academy. Specifically, he was unable to pin a subject three consecutive

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

times. As a result, Deputy Unubun worked as a sheriff's technician for one year. He returned to the academy and graduated in November, 2007.

**B. Inmate Grievances filed in October 2009 and March 2010**

Inmate X[1] filed a grievance against Deputy Unubun on October 25, 2009. He alleged that he was assaulted on October 5, 2009. According to the nurse who evaluated him the next day, there were no signs of injury and Inmate X did not reveal how the alleged injuries occurred. An investigation determined that reasonable force was used. The grievance was denied on November 18, 2009.

Inmate Y filed a grievance on March 18, 2010. He alleged that he was assaulted by Unubun and another deputy on March 2, 2010. Both deputies denied that a physical altercation took place. PHS records indicated that Inmate Y was seen on numerous occasions during March, 2010. The inmate did not complain of any physical altercation. The grievance was denied on April 7, 2010.

**C. Internal affairs complaint filed in September 2011**

ACSO Internal Affairs received a complaint on September 11, 2011 from Inmate Z regarding alleged excessive use of force by Deputy Unubun in June, 2011. This complaint resulted in the initiation of an Internal Affairs investigation. The inmate alleged that Unubun used excessive force to subdue him after he attempted to escape. The inmate acknowledged that he was schizophrenic but claimed that he did not experience hallucinations until after the incident, which occurred in the behavioral health unit.

The complaint was filed four months after the incident. An Internal Affairs Investigator interviewed Inmate Z's cellmate, who refuted the claims. The cellmate believed Unubun used an appropriate amount of force to capture Inmate Z. Deputy Unubun did not strike Inmate Z or inflict any bodily injuries. The investigator determined that the

---

[1] The names have been redacted for confidentiality purposes.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

allegations were unfounded and recommended no further action. The Captain concurred. The case was closed on December 6, 2011.

The County Defendants produced records regarding the grievances and IA investigation. To date, the Plaintiffs have included such documents on their exhibit list. However, in an abundance of caution, County Defendants move for an order precluding Plaintiffs from referring to or introducing these records.

FRE 402 provides that: "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Relevant evidence is defined by Federal Rule of Evidence 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

FRE 403 specifically provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See Old Chief v. U.S.*, 519 U.S. 172, 180–92 (1997); *U.S. v. Hitt*, 981 F.2d 422, 423–25 (9th Cir. 1992).

FRE 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The Ninth Circuit has held that "[e]vidence of prior misconduct is admissible [only] if it is clear and convincing; relevant to an issue other than character; and its probative value outweighs any potential prejudicial effect. Such evidence may not be admitted to show a propensity or proclivity to commit bad acts. Nor is such evidence admissible to show that a person acted

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

14

1804815.v1

1   in conformity with his bad character." *Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329,

2   1334-1335 (9th Cir. 1985).

3        Evidence of Deputy Unubun's performance at the academy, grievances, and IA

4   investigation are irrelevant under Rule 402, and their admission into evidence would be

5   unduly prejudicial, confusing to the jury, and a waste of limited time and resources under

6   Rule 403. None of the evidence concerns the subject incident. The academy was several

7   years prior to the subject incident. The IA investigation was after the subject incident. The

8   apparent intent behind the introduction of this evidence is to prejudice Deputy Unubun.

9   "Permitting the jury to consider the complaints and accounts of misconduct contained in the

10  personnel files of the [defendant officers] present[s] a  grave danger of unfair prejudice."

11  *Carter v. District of Columbia*, 795 F.2d 116, 131 (D.C. Cir. 1986). The unfair prejudice

12  results from the likelihood that the jury "would conclude that the evidence established the

13  bad character of the defendants and that the defendants were likely to have acted in the

14  same way on the night in question." *Id*. As such, the evidence is unduly prejudicial, and

15  would only confuse the jury.

16        This is particularly true in light of the fact that none of the allegations in the

17  grievances were sustained. In other words, none of the complaints led to a finding that

18  Deputy Unubun violated ACSO policy. The grievances are entirely irrelevant to the facts of

19  this case, and their admission into evidence would unduly prejudice Deputy Unubun. As a

20  result, their admission into evidence is barred under Rule 402.

21        Furthermore, the grievances constitute inadmissible character evidence of other

22  alleged wrongs or acts. Fed.R.Evid. 404(b). The Ninth Circuit has held that "[e]vidence of

23  prior misconduct is admissible [only] if it is clear and convincing; relevant to an issue other

24  than character; and its probative value outweighs any potential prejudicial effect. Such

25  evidence may not be admitted to show a propensity or proclivity to commit bad acts. Nor is

26  such evidence admissible to show that a person acted in conformity with his bad character."

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

15

1804815.v1

*Coursen v. A.H. Robins Co., Inc.*, 764 F.2d 1329, 1334-1335 (9th Cir. 1985). First, the proposed "evidence of prior misconduct" is not clear and convincing. None of the complainants will testify at trial and, as indicated above, none of the allegations were sustained. Additionally, these unsubstantiated complaints are not relevant to any issue other than character, and their potential prejudice far outweighs any conceivable probative value. In any event, such evidence is not admissible to show that the defendants acted in conformity with the allegations contained therein. Fed.R.Evid. 404.

Finally, unsworn statements made by unidentified individuals are barred by FRE 802 as hearsay. The content of the grievances, IA investigation, and related documents clearly fall within the scope of evidence precluded under FRE 802. The content of these documents does not fall within any exception to the hearsay rule. Thus, any evidence of grievances and IA investigation against Deputy Unubun is inadmissible as hearsay.

**Motion *in Limine* No. 6:     To exclude testimony regarding Sergeant Dudek's speculation as to what Deputy Ahlf intended by stating that he took a "great photo" of Mr. Harrison.**

Sergeant Scott Dudek was assigned with the task of investigation whether any criminal action occurred during the Martin Harrison incident. Sergeant Dudek interviewed Deputy Ahlf at the hospital on the evening of the incident, roughly two hours after the incident. Deputy Ahlf informed the sergeant that he had taken some photos of Mr. Harrison after the incident to document the use of force.

Sergeant Dudek asked whether it appeared that Mr. Harrison was still conscious while Ahlf was taking the photos. Ahlf responded that "it looked like he was breathing" and it was hard to see his face because he was wearing a spit mask. Then Deputy Ahlf stated, "I got a great photo of him in the…with his spit mask on but other than that…" Plaintiffs' counsel did not question Deputy Ahlf at deposition as to what he intended by "great photo."

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

Plaintiffs' counsel did question Sergeant Dudek regarding this line of questioning.

Q: Ahlf told you, "I got a great photo of [Harrison]… with his spit mask on," right?

A: Correct.

Q: What do you think that he meant by that, that that was a great photo?

A: I didn't want to know what he meant by that.

Q: What do you mean by that?

A: Because it just leaves too many doors open. Was it a great photo because the light was good? Was it a great photo for inappropriate purposes? I didn't want to know…

[Dudek depo, 59:20-60:8, Ex. I to Ly Dec.]

FRE 402 provides that: "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Relevant evidence is defined by Federal Rule of Evidence 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

FRE 403 specifically provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See Old Chief v. U.S.,* 519 U.S. 172, 180–92 (1997); *U.S. v. Hitt,* 981 F.2d 422, 423–25 (9th Cir. 1992).

Sergeant Dudek's opinion as to what Deputy Ahlf meant by "great photo" is irrelevant and speculation.  First, Sergeant Dudek did not ask Ahlf during the interview what he meant by that comment. Thus, he has no personal knowledge of what Ahlf intended to state and his opinion is pure speculation. Second, Sergeant Dudek's opinion of Ahlf's statement is not relevant to any claim in this case. It does not have any tendency to

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

show whether Ahlf was deliberately indifferent or applied excessive force to Mr. Harrison. Plaintiffs' counsel will argue Deputy Ahlf was collecting a so-called "trophy photo." The only purpose of offering the testimony is to depict Deputy Ahlf as malicious and disturbing. Evidence offered for this purpose is unduly prejudicial and would only mislead the jury. Sergeant Dudek's testimony regarding Deputy Ahlf's intent of "great photo" should be excluded.

**Motion *in Limine* No. 7:** **To exclude any detailed testimony regarding any expert's prior testimony – i.e., the details of the prior cases. Although examination about prior experience or cross-examination about an expert's prior testimony is permissible, this Court should preclude detailed discussion of an expert's prior work because such testimony likely would mislead or confuse the jury, would constitute undue delay, and would waste this Court's time.**

**Defendant Sancho joins in Defendant ACSO's Motion in Limine #7**

**Defendants Corizon and Dr. Orr join in Defendant ACSO's Motion in Limine #7**

On information and belief, Defendants believe that Plaintiffs will attempt to elicit substantial details of the work and testimony of both parties' experts in previous cases during direct and cross-examination. In order to prevent juror confusion and to conserve this Court's resources, Defendants respectfully request an Order in Limine preventing Plaintiffs from dwelling on the details of the experts' prior work and testimony in direct or cross, except for standard questions regarding experience and bias.

This Court "has broad discretion to manage the conduct of a trial and the evidence presented by the parties, under the Federal Rules of Evidence and Civil Procedure and as part of the Court's inherent authority." *Apple, Inc. v. Samsung Electronics Co., Ltd.,* 2013 WL 6001902, *2 (N.D.Cal. 2013). Federal Rule of Evidence 403 "gives the court discretion to exclude relevant evidence 'if its probative value is substantially outweighed by a danger

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

18

1804815.v1

of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Dynetix Design Solutions, Inc. v. Synopsys, Inc.,* 2013 WL 4537838, *1 (N.D.Cal. 2013) (quoting Fed.R.Evid. 403) (emphasis added).

In *Estate of Thompson v. Kawasaki Heavy Industries, Ltd.*, 933 F.Supp.2d 1111 (N.D.Iowa 2013), the district court struck a balance between permitting cross-examination of experts and conducting "min-trials" on prior cases that amount to undue delay and a waste of time. The court concluded that conducting "mini-trials" on 'the facts of the prior cases, the judge's rulings, and the reasons for the judge's rulings in the prior cases" would only be of "marginal probative value" and instead would be "outweighed by its likelihood to confuse the issues and waste time." Id. at 1151-52. The court acknowledged that opponents could still maintain "vigorous cross-examination of the experts without delving into the facts of the prior cases. Id. at 1152.

For the aforementioned reasons, the Court should prohibit the parties from asking detailed questions regarding any expert's prior cases.

**Motion *in Limine* No. 8:**     **To exclude any detailed testimony regarding Plaintiffs' expert Dr. Baden's prior work in "sensational" or "high profile" cases and/or his work as a consultant for Fox News. Any such description is unduly prejudicial, because the jury likely will be improperly swayed by the fame and cachet assumed from involvement in prior cases rather than evaluating the expert's work in the instant case. Because such evidence lacks probative value and would be both unduly prejudicial and irrelevant, this Court should preclude such evidence.**

**Defendant Sancho joins in Defendant ACSO's Motion in Limine #8**

**Defendants Corizon and Dr. Orr join in Defendant ACSO's Motion in Limine #8**

Dr. Baden's expert disclosure included an addendum to which Dr. Baden stated

LAW OFFICES
RENAUD COOK
DRURY MESAROS
One North Central
Suite 900
Phoenix, AZ  85004
Telephone (602) 307-9900
Facsimile (602) 307-5853

1804815.v1

contained "interesting stuff." [Baden's addendum, Ex. J to Ly Dec]. Dr. Baden testified that this was not part of his CV; it was included so people could know more about his background. On information and belief, Defendants believe that Plaintiffs will attempt to elicit substantial details of the past expert testimony of Dr. Baden in high-profile cases, such as the 1990s O.J. Simpson criminal trial. Additionally, on information and belief, Defendants believe that Plaintiffs will attempt to elicit substantial details of Dr. Baden's involvement in high-profile media stories, including, but not limited to, the missing University of Virginia student Hannah Graham, the shooting of Michael Brown in Ferguson, Missouri, and the death of Eric Garner in New York.  In order to prevent undue prejudice and to eliminate irrelevant material, Defendants respectfully request an Order in Limine preventing Plaintiffs from eliciting details of Dr. Baden's work, especially in high-profile cases that the jury likely would recognize.

This Court "has broad discretion to manage the conduct of a trial and the evidence presented by the parties, under the Federal Rules of Evidence and Civil Procedure and as part of the Court's inherent authority." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2013 WL 6001902, *2 (N.D.Cal. 2013). Federal Rule of Evidence 403 "gives the court discretion to exclude relevant evidence 'if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 4537838, *1 (N.D.Cal. 2013) (quoting Fed.R.Evid. 403) (emphasis added).

"'Undue prejudice' within [the context of Rule 403] means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403 Advisory Committee Notes to 1972 Proposed Rules. As the Advisory Committee notes to Rule 403 state, "[i]n reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." Id.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

20

1804815.v1

This jury must evaluate Dr. Baden's work in this case – using the evidence from this case and the methodology he employed based on these facts. If Plaintiffs regale the jury with Dr. Baden's work in high-profile cases, the jury may give undue weight to Dr. Baden's opinions in this case.

For the aforementioned reasons, the court should prohibit the parties from asking detailed questions regarding any expert's prior cases.

**Motion in Limine No. 9:** **To exclude any cross-examination of Dr. Wetli regarding a series of autopsies conducted in Dade County over 20 years ago. Such examination would be unduly prejudicial, using the spectre of racial animus to unfairly prejudice the jury regarding a topic that requires an unnecessary "mini-trial" that will waste time and unduly delay these proceedings.**

County Defendants concede that the alleged bias of an expert is a proper topic for cross examination. Challenging an expert who testifies only for "one side" in litigation is a reasonable inquiry.

But County Defendants fear, on information and belief that Plaintiffs intend to raise unsubstantiated allegations against defense expert Dr. Charles Wetli. The unfair prejudice of these unfounded allegations clearly outweighs the probative value of any such allegation, and as such, this Court should preclude cross-examination of Dr. Wetli on the "Dade County autopsies."

At his deposition, Plaintiffs examined Dr. Wetli on a 1992 article he had written that summarized the findings of several autopsies he had conducted while serving as the Deputy Medical Examiner for Dade County, Florida. [Wetli depo, 50:1-15, Ex. K to Ly Dec]. Plaintiffs then asked Dr. Wetli a series of questions regarding his conclusions on those autopsies that were later challenged by Dr. Davis, the Dade County Medical Examiner:

• Plaintiffs asked Dr. Wetli to verify the accuracy of several news reports, which

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

21

1804815.v1

required Dr. Wetli to explain the facts of the case in some detail;

• Plaintiffs insinuated that Dr. Wetli had affirmatively concluded that the women had not been raped and murdered, but Dr. Wetli clarified that the findings simply were inconclusive to reach that affirmative conclusion;

• Plaintiffs also insinuated that Dr. Davis had found evidence of trauma that Dr. Wetli had ignored, but Dr. Wetli explained that his examinations catalogued the evidence cited by Dr. Davis – Dr. Wetli simply believed the evidence did not support that affirmative conclusion;

• Plaintiffs also insinuated that Dr. Davis's reclassification of these deaths as homicides means that Dr. Wetli erred in his conclusions. Dr. Wetli noted that Dr. Davis classified the deaths as homicides of uncertain means, which was really no different than his conclusions;

• Plaintiffs' questions also required Dr. Wetli to contest some of the statements and findings of Dr. Davis. [Wetli depo, 175-181]

Most importantly, Plaintiffs noted that the women who were the subjects of these autopsies were all African-American and all had died in circumstances that required investigation. Questioning Dr. Wetli's determinations in these cases unfairly suggests racial animus on the part of Dr. Wetli.

Courts are weary of "mini-trials" on the past work of experts, as such "mini-trials" generally are of "marginal probative value" and instead are "outweighed by its likelihood to confuse the issues and waste time." *See*, e.g., *In Estate of Thompson v. Kawasaki Heavy Industries, Ltd.*, 933 F.Supp.2d 1111, 1151-52 (N.D.Iowa 2013). Plaintiffs desire to confront Dr. Wetli with media accounts that require a detailed rebuttal, medical conditions that are not relevant (i.e., evidence of asphyxiation, evidence of forcible rape, etc.), and a professional disagreement between medical examiners is not an allegation of bias that can easily be raised and understood on cross-examination.

Furthermore, the implication of racial bias is clearly unfairly prejudicial and not at all warranted by the evidence. Dr. Wetli will never be able to explain his position once the issue of race is injected in the jury's consideration. Federal Rule of Evidence 403 "gives the court discretion to exclude relevant evidence 'if its probative value is substantially

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Dynetix Design Solutions, Inc. v. Synopsys, Inc.,* 2013 WL 4537838, *1 (N.D.Cal. 2013) (quoting Fed.R.Evid. 403) (emphasis added).

Plaintiffs are free to assert that Dr. Wetli is biased because of his background testifying for law enforcement or due to some financial arrangement. The jury can understand those allegations quickly and easily. But Plaintiffs cannot be allowed to use spurious quotes to reporters and disagreements between trained medical professionals to lead to an impermissible racial bias. Such allegations are unfounded and cannot even be presented without a "mini-trial" that will require irrelevant considerations and too much medical discussion to be understood in any kind of context.

Because of the unfair prejudice such allegations will create, this Court must preclude any cross examination of Dr. Wetli regarding the Dade County autopsies.

| | |
|---|---|
| **Motion *in Limine* No. 10:** | **To exclude any opinion testimony by Dr. Baden regarding the Defendants' use of a Taser as the cause of death of the decedent. Dr. Baden admitted during deposition that he is not qualified to offer expert opinions on the effect of Taser use on the human body, and he also admitted that he cannot explain how the use of a Taser contributed to the decedent's death. Because his expert opinion would be speculative, it would not assist the jury, and must be precluded.** |

Not only did Dr. Baden testified at deposition that he is not an expert in either cardiology [Baden depo, 52:20-22, Ex. L to Ly Dec] or electrophysiology [52-53:24-01], he also is not "an expert on on the flow of electrical current from a taser into the human body." [Id., 53:18-24.] Furthermore, Dr. Baden admitted that his expert opinion on the use of a Taser as the cause of death was rejected by a federal court in Louisiana. Attached hereto as Exhibit M is *Thomas v. City of Winnfield*, (2012) W.D.La. 2012 WL 1255265, in which the court issued the following opinion on April 13, 2012:

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

1
2
3
4

…we find Dr. Baden is not qualified to testify regarding the
psychological effect of an Electronic Control Device ("ECD")
[taser] on a human being because he lacks education, training,
or experience in electricity or its effects on people. By his own
admission, Dr. Baden is not an expert in cardiology,
electrophysiology, electricity, or a number of other fields which
involve electricity and its effect on the human body.

5      Attached hereto as part of Exhibit M is the Memorandum of Points and Authorities

6   that set forth, among other things, Dr. Baden's admitted lack of qualifications in that case.

7   Parenthetically, the case was reversed in part by the Fifth Circuit which found that QI

8   applied. See Thomas v. Nugent, 539 Fed.Appx. 456 (5th Cir. 2013) (unpublished).

9      Even if Dr. Baden was competent to opine upon the effects of Tasers generally, he

10   cannot specify how use of the Taser affected Mr. Harrison or the specific manner in which

11   use of the Taser contributed to the decedent's death:

12                                    **65**

13   9      Q      So -- by the way, you have never
     10 fired a taser, correct?
14   11     A      That's correct.
     12     Q      Have you ever actually seen one?
15   13     A      Yes.
     14     Q      When is the first time you saw
16   15 one?
     16     A      I don't know.
17   17     Q      So you have told us that you don't
     18 specifically know what injury, if you will, or
18   19 damage was caused by the particular tasings,
     20 correct? Correct?
19   21     A      In this patient? In this person?
     22     Q      Yes.
20   23     A      No.
     24     Q      No, you do not -- let's make sure
21   25 we have it clear now.

22                                    **66**

23   1      M. Baden, M.D.
     2      A      I do not know specifically what
24   3 damage the taser -- the taser applications
     4 caused.
25
     [Baden depo, 65-66 (emphasis added).]
26

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

1
2
3
4

Despite later identifying cardiac arrhythmia as the likely way in which the use of a Taser would affect a person's health, Dr. Baden confirmed that he had no evidence of arrhythmia in this case:

5    Q    Do you have any information that
6 one or more of the tasings specifically caused
7 any damage to the heart?
8    A It doesn't cause damage to the
9 heart. You are talking about damage to the
10 cardiac rhythm. No.
11    Q    Do you have any specific
12 information that any particular tasing caused a
13 cardiac arrhythmia?
14    A    No.
15    Q    Do you have any information with
16 regard to how much electricity, in laymen's
17 terms, entered Mr. Harrison's body by virtue of
18 the tasings?
19    A    No.
20    Q    Do you have any information as to
21 where that electricity went in the body?
22    A    No.
23    Q    So you have no information that
24 the tasings caused either cardiac arrest or
25 respiratory arrest, correct?

**67**
1    M. Baden, M.D.
2    A    No. The tasing wouldn't normally
3 cause respiratory arrest. If it is -- negative
4 effects are usually causing some cardiac
5 arrhythmia, if it does cause -- if it does cause
6 some kind of abnormality.
7    Q    Right. But you have no
8 information that, in fact, in this case any one
9 or more of the tasings caused cardiac
10 arrhythmia, correct?
***

**68**
19 Go ahead, Doctor.
20    A I don't have any specific
21 information as to what the taser caused in
22 Mr. Harrison's body and what effect it had on
23 his heart, yes.
24    Q    Nor do you have any general
25 information in that regard; isn't that true?

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

25

1804815.v1

**69**

1 M. Baden, M.D.
2      A      General information -- I have
3 general information that that was applied
4 together with all of the other things going on.
5 But I don't have anything specifically that the
6 taser did.
7      Q      So your theory with regard to the
8 tasings, Doctor, is really one of sequence in
9 timing; isn't that true?
10      A      Yes. That's how medical examiners
11 arrive at opinions as to what was going on just
12 before the death or the -- occurred and to
13 interpret that as best we can.
14 And so the tasing occurred during
15 the actions by the correction officers, the
16 prison officers. To that extent, it happened.
17 Whether or not it caused a cardiac arrhythmia, I
18 don't know.

[Baden depo, 66-69].

"Rule 702 demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs." *Diviero v. Uniroyal Goodrich Tire Co.,* 114 F.3d 851, 853 (9th Cir.1997). Given that Dr. Baden lacks expertise in electrophysiology and cannot explain what physiological the electricity from the Taser had and how that effect contributed to the decedent's death, Dr. Baden's opinion regarding the Taser is speculation and cannot be permitted at trial.

The district court analyzes claims for state-law negligence against prison medical professionals pursuant to the forum state's law. *See* e.g., *Reynoso v. Sayre*, 2013 WL 4840496, **14-15 (N.D.Cal.2013). Under California law, proffering an expert opinion that there is some theoretical possibility the negligent act could have been a cause-in-fact of a particular injury is insufficient to establish causation.

*Jennings v. Palomar Pomerado Health Sys.*, Inc., 8 Cal.Rptr.3d 363, 370 (App. 2003) (emphasis added).  Because Dr. Baden does not confirm that the use of the Taser was

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

a cause-in-fact of the decedent's death, his opinion must be excluded on this ground as well.

For the aforementioned reasons, the court should prohibit the parties from asking detailed questions regarding any expert's prior cases.

**Motion *in Limine* No. 11:**    **The County Defendants move this Court for an order preventing Plaintiffs' police procedures expert, John "Jack" Ryan, from giving testimony about matters that are outside his expertise as well as matters that are not relevant to this case.**

County Defendants seek to exclude his testimony on the following issues:

A.     Medical Causation

B.     Opinion that a spit mask can complicate breathing

C.     Credibility of witnesses

D.     Nonresponsive answers

E.     Training of deputies

F.     Inflammatory description of Deputy Swetnam's kick as a "stomp," "shard foot," or "driving his foot down into his abdomen"

G.     Inflammatory statements that lack foundation

H.     Speculation that Mr. Harrison was agitated when Deputy Ahlf decided to move him to a clean isolation cell

I.     Testimony regarding video cameras

J.     Code of Silence

County Defendants seek to limit Mr. Ryan's testimony at trial on several grounds. First, FRE 702 provides that witnesses providing expert testimony must be qualified by their knowledge, skill, experience, training, or education. Secondly, experts cannot offer opinions that are unsubstantiated and speculative. FRE Rule 702; *see also Diviero v. Uniroyal Goodrich Tire Co*., 114 F.3d 851, 853 (9th Cir. 1997) ("Rule 702 demands that

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

27

1804815.v1

expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs.") Thirdly, a witness may only testify about matters that are relevant to the case at issue. FRE Rules 401 and 402. Lastly, testimony that is likely to waste time, confuse issues, mislead the jury, or cause unfair prejudice should also be excluded. FRE Rule 403.

### A.    Medical Causation or Medical Opinions

County Defendants move to exclude all testimony by Mr. Ryan stating that the deputies caused or were a substantial factor in causing specific injury to Mr. Harrison, including trauma to the neck or head pursuant to FRE 702 and 403. The following testimony took place at Mr. Ryan's deposition.

> Q:    Were you asked to render opinions about what caused the contusion around the neck?
>
> A:    No, but I did read the autopsy record, which was indicative that it was caused by blunt trauma of the neck somehow, or some kind of trauma to the neck." [Ryan depo, 111:8-13 Ex. A to Ly Dec].
>
> Q:    ...You're obviously not a physician, correct?
>
> A:    ...I'm not rendering an opinion as to what caused the neck [trauma]....I can't definitively say what caused those injuries. I'm not a medical doctor. I'm not offering a medical opinion. [Ryan depo, 111:8-23]

Later in the deposition, Mr. Ryan testified that deputies were "banging [Harrison] on the head."

> Q:    Who was banging him in the head?
>
> A:    We don't know, because nobody acknowledges it and nobody sees it. We only see it in the autopsy. [Ryan depo, 147:1-7]

Mr. Ryan's opinion as to what caused Mr. Harrison's injuries is inadmissible under FRE 702.  He does not have any scientific, technical, or other specialized knowledge within the scope of FRE 702 which would qualify him to opine upon medical causation. Plaintiffs

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

have a separate expert to testify regarding causation. Despite testifying that he would not be rendering any medical opinions, Mr. Ryan later testified that the deputies must have "banged" him in the head because the autopsy showed the same. Mr. Ryan is not qualified to give such an opinion. There is no probative value to such testimony and it should also be excluded under FRE 403. Mr. Ryan should be precluded from testifying that the deputies caused any specific injury based on the autopsy report.

**B. Opinion that a spit mask can complicate breathing**

County Defendants move to exclude Mr. Ryan's opinion that a spit mask can complicate breathing on the grounds that it was not included in his report. Additionally, it is excludable under FRE 702 and 403.

> Q: What about getting the spit mask, was that reasonable?
>
> A: You know, again, I don't have this in my report but I will tell you that I would be highly critical when you have this kind of long period, you know, somebody said as long as five-minute fight in the hallway…I would certainly not put a spit mask on somebody if I thought it may further complicate their breathing in any way. But again, I don't have that in my report." [Ryan depo, 127:3-14, emphasis added]

Later in the deposition, Mr. Ryan again states that a spit mask "sometimes causes an inability to breathe." [Ryan depo, 128:16-17].

FRCP 26(B) requires that an expert's report contain a "complete statement of all opinions the witness will express and the basis and reasons for them." An expert generally may not testify beyond the scope of his or her pretrial report. See FRCP 37(c)(a). Mr. Ryan admitted that his opinion regarding the spit mask impeding breathing was not included in his report. Thus, he should not be permitted to testify to the same.

Additionally, Mr. Ryan is not qualified to testify that the spit mask in this case impeded Mr. Harrison's ability to breathe. As stated above, he is not qualified to opine on medical causation under FRE 702. It is also excludable under 403 as it has no probative value and might mislead or confuse the jury.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

29

1804815.v1

**C.  Credibility of witnesses**

Mr. Ryan directly stated in his deposition that he would not be opining about the credibility of the witnesses. However, Mr. Ryan then proceeded to essentially state that the deputies were not being truthful. Mr. Ryan should be cautioned to avoid such indirect comments regarding credibility at trial.

Two examples are below:

> Q: [Harrison] continued to yell, scream, and actively resist as he was being taken down the hall; isn't that true?
>
> A: "Yeah, you know, I don't know. I mean, that's what the officers report. But again, that's an issue for the trier of fact, if they believe the officers…" [Ryan, 120:17-23, emphasis added]….
>
> Q: Deputy Ahlf concluded that Mr. Harrison understood that he, Deputy Ahlf, was going to move Mr. Harrison to another cell, correct?
>
> A: Correct.
>
> Q: Deputy Ahlf concluded that Mr. Harrison appeared willing to cooperate, correct?
>
> A: Let's just add one word. He testified that he concluded that.
>
> Q: Well, are you now suggesting that somehow you are competent to opine upon whether someone is telling the truth?
>
> A: No, no, no. Absolutely not. I'm talking about a reasonable officer though, because that's what we do in these cases. A reasonable officer would have also seen the damage that he already cited, the fact that he put him in that cell because of bizarre behavior, the fact that he had other dealings with him which would indicate that he may not cooperate. So a reasonable officer, in his position, whether or not he believed it subjectively or not, that's a different issue. And I'm not opining on credibility at all. He may have a subjective belief, yeah. I tell you what. One, I don't think that that was objectively reasonable. And again, I'm not giving a legal opinion, but as a police practice expert and someone who trains on this throughout the country, I wouldn't say that was a proper conclusion based on the facts as he knew them, number one. And more importantly, even if he was totally compliant, we would never move a prisoner without backup, particularly one that we thought had mental health issues. [Ryan depo, 72:4-73:15, emphasis added].

"[I]t is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts."

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

*Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004) (internal quotations and citations omitted). As such, it is plain that Mr. Ryan may not opine on whether another witness is credible. *United States v. Komisaruk*, 885 F.2d 490, 494 (9th Cir. 1989) ("We have held that expert testimony cannot be offered to buttress credibility."); *Engesser v. Dooley*, 457 F.3d 731, 736 (8th Cir. 2006) ("An expert may not opine on another witness's credibility."). Mr. Ryan should not be allowed to opine upon the credibility of witnesses directly or indirectly.

**D. Nonresponsive answers**

Mr. Ryan's deposition testimony was replete with nonresponsive answers that were essentially arguments. The testimony cited directly above is one example. Additional examples are quoted below.

> Q: Is there anything else in the protocol [Learning Domain 37] that you are basing your opinion on [that Deputy Ahlf should have called for backup]?
>
> A: That's certainly a piece of it. But remember, I'm not alone on this opinion. Sergeant Bricker also criticized them, and Officer Ahlf acknowledged that. So obviously, this isn't something that the opinion just arose out of something I want to say. This is obviously something that is standard practice that everybody follows. [Ryan depo, 161-162].
>
> …
>
> Q:  Are you saying that all force used after the arrival of Deputy Madigan was inappropriate?
>
> A: I would have to look at each officer's force and in conjunction with what everybody else was doing at that time. There- they are all an integral – this is a nice trick, but even the courts don't allow it. You know, it's a nice trick to try to isolate each officer, when the officers themselves don't identify who was there at the time. As Madigan said, "there were three or four. I'm not sure who they were." So it's real easy to do that, have the officer not identify anyone. I train this. And I'll tell you, one of the most pro law enforcements in the country had a case out of Highland, Florida where everybody says, I don't know who did what; I just know what I did. And the court says, you all become an integral part of it. And we train that to officers around the country. So these officers are all an integral part of it. And if we take each one in isolation, it's a really neat thing to do, but it doesn't work when we put the use of force together that I identified, by their own testimony. [Ryan depo,

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

100-101]

At deposition, defense counsel repeatedly objected that Mr. Ryan's answers were nonresponsive and moved to strike them. Mr. Ryan responded, "I want you to know what I'm going to say at trial." [Ryan depo, 101:12-13, emphasis added]. Therefore, defense counsel is concerned that at trial, particularly on cross examination, Mr. Ryan will continue to give nonresponsive answers. The examining attorney has the right to have the witness answer a proper question. See <u>Trial Objections Handbook</u>, 2d § 6:16 Nonresponsive Answer. County defendants request that Mr. Ryan be cautioned not to give nonresponsive answers at trial.

**E. Training of deputies**

County Defendants move to exclude Mr. Ryan from testifying that the County was indifferent to the prisoners for failing to train its deputies. Mr. Ryan's report states that "An agency that has failed to direct its officers through training and policy on this issue is clearly not acting consistently with professional law enforcement and is indifferent to the care, custody, control, and restraint of prisoners." [Ryan Report, ¶ 116].

The following testimony took place at deposition.

Q: Do you have any criticism of the training [provided to the defendant deputies]?

A: [M]y criticism would be that, you know, from their testimony, they don't testify that they knew how to handle this particular situation of dealing with somebody who was in this state of agitation and dealing with somebody who was in a diminished capacity.

Q: Are you talking about Deputy Ahlf?

A: I think it's not just Deputy Ahlf; I mean, it's throughout. I mean, there's a number of different pieces here where a number of officers are using hard hand control tactics in a situation where there's no active resistance, there's certainly no assaultive conduct, by everybody's testimony. But again, I don't know that I have a particular opinion …that says I'm critical of a particular training document or a particular training that they say they have. [Ryan depo, 69]

Once again, Mr. Ryan disavows that he has an opinion and then proceeds to give it!

LAW OFFICES<br>RENAUD COOK<br>DRURY MESAROS<br>ONE NORTH CENTRAL<br>SUITE 900<br>PHOENIX, AZ 85004<br>TELEPHONE (602) 307-9900<br>FACSIMILE (602) 307-5853

1804815.v1

Mr. Ryan is opining that the deputies were not properly trained regarding how to deal with a person of diminished capacity. Mr. Ryan never directly testified or wrote in his report that the County was indifferent in its training of deputies. Thus, any testimony at trial regarding the same should be excluded on the grounds that it was outside the scope of his report.

Additionally, such testimony should be excluded on the grounds that it lacks foundation, is not reliable, and is not helpful to the jury. Mr. Ryan is not an expert on how officers are trained in California. Mr. Ryan's only experience as a police officer was with the Providence Police Department from 1982-2002. He has never worked for law enforcement in California. Alameda County Sheriff's Office participates in the Peace Officer Standards and training ("POST") program, whereby California POST certifies its officer training programs. Mr. Ryan has never written or participated in writing any California policies and has never used those standards to train any officer. [Ryan depo, 68:6-10]. Mr. Ryan has never been hired by any public entity in California to write policies. Mr. Ryan has never trained officers regarding the POST Learning Domains in California. Like Dr. Burns, Mr. Ryan is also unqualified to render such opinions regarding training. County Defendants incorporate by reference Motion in Limine No. 12 Regarding Dr. Kathryn Burns.

**F.    Inflammatory description of Deputy Swetnam's kick as a "stomp," "shard foot," or "driving his foot down into his abdomen"**

County Defendants move to exclude Mr. Ryan's inflammatory description of Deputy Swetnam's kick as a "stomp," "shard foot," or "driving his foot down into [Harrison's] abdomen with his heel." This description is not only a mischaracterization of Swetnam's testimony, but is also inflammatory under FRE 403.

Deputy Swetnam testified that he delivered a "downward kick to his lower abdomen." [Swetnam depo, 25:15 Ex. F to Ly Dec]. He clearly testified that he did not "stomp" Mr. Harrison. [Swetnam depo, 82-83]. Rather, Swetnam described his kick as

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

follows:

> I did not force my heel all the way to the ground. What I did was I just kicked him in the stomach there or lower abdomen….It's going to be delivered with some force, yes. But I'm not trying to stomp his guts out…" [Swetnam depo, 83:7-16]

Despite reading Deputy Swetnam's testimony, Mr. Ryan used several inappropriate and inflammatory terms to describe the kick at deposition:

> "[W]e refer to that [kick] in the criminal law as a shard foot. It's actually assault with a dangerous weapon when somebody stomps down like that. We criminally charge people who do that. That's not something that's trained to police officers, to drive your heel into somebody's body…..I don't recall [Swetnam] saying he was trained to drive his heel down into somebody's abdomen…" [Ryan depo, 148-149]

Use of these terms by witnesses should be excluded pursuant to FRE 403. The terms used by Mr. Ryan, including comparing it to a criminal act, are illustrative of inflammatory language which counsel and witnesses are likely to inject into testimony solely for the purposes of provoking the jury. There is no purpose for use of this language other than to evoke anger and punitive impulses, especially considering that other more descriptive, factually accurate and less inflammatory terms are available.

In *Cotton v. City of Eureka*, 2010 WL 5154945, *14, 08-04386 (N.D. Cal. Dec. 14, 2010), Judge Armstrong excluded Plaintiffs' expert from "inflammatory" characterizations of the defendant officers' conduct, including terms such as "pummeled," beating the dickens out of," and "beat into submission." This Court found that such characterizations are inflammatory within the meaning of FRE 403 and instructed both parties "to ensure that their respective experts articulate their opinions in a thoughtful and professional manner, and to avoid eliciting unnecessarily sensationalized testimony."

County Defendants incorporate by reference as though fully stated herein their arguments from Motion in Limine No. 2.

### G.   Inflammatory statements that lack foundation

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

Mr. Ryan testified that the deputies were "banging him on the head." When asked which deputy was allegedly doing this, Ryan replied, ""We don't know, because nobody acknowledges it and nobody sees it. We only see it in the autopsy." [Ryan depo, 147:1-7]. County Defendants move to exclude this type of testimony on the grounds that it is inflammatory under FRE 403 and lacks foundation. County Defendants incorporate by reference as though fully stated herein their arguments from Number 6 immediately above and County Defendants' Motion in Limine No. 2.

**H.     Speculation that Mr. Harrison was agitated when Deputy Ahlf decided to move him to a clean isolation cell**

County Defendants move to exclude Mr. Ryan's testimony that Mr. Harrison was agitated when Ahlf opened the cell door to move him to a clean isolation cell. The deposition testimony is below.

> Q: Mr. Ryan, do you have any information that Mr. Harrison was agitated when Deputy Ahlf came to the cell? Yes or no.
>
> A: Again, the testimony of the officer is no. The conduct of everything that transpired afterwards, obviously, there's physical evidence that would show he was agitated. Why else would he flood the cell? Also why else would he do damage to the food tray? Those are things that Ahlf is just noticing at that point. If he's not agitated, he wouldn't have done those things. There's physical evidence that would suggest he was in fact agitated. [Ryan depo, 75-76]

Mr. Ryan admitted that Deputy Ahlf never testified that Harrison was agitated. Then Mr. Ryan proceeds to discredit Deputy Ahlf's opinion, effectively arguing that Deputy Ahlf was not testifying truthfully. As stated above, an expert is prohibited from commenting upon a witness's credibility.

Expert opinions must be the "product of reliable principles and methods." Fed. R. Evid. 702(c).  An expert's conclusions must be based upon the knowledge and experience of his specific discipline, not his "subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993). Mr. Ryan's opinion that

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

1  Harrison was agitated was pure speculation, lacks foundation, and therefore should be

2  excluded.

3  **I.     Testimony regarding video cameras**

4      Mr. Ryan continuously raised the fact that there were no video cameras recording

5  the subject altercation. He also testified that the generally accepted practice in this country

6  is to record and review for quality assurance. [Ryan depo, 78:5-19].  He acknowledged that

7  he did not include this opinion in his report. [Id.]. Therefore Mr. Ryan should not be

8  permitted to opine regarding this opinion at trial for the same reasons outlined in section B

9  above.

10     Mr. Ryan should also be excluded from giving argumentative testimony regarding

11  the video cameras on the grounds that it is irrelevant and unfairly prejudicial under FRE

12  403. Several examples are below.

13

14  Q: Do you have any doubt that [Mr. Harrison charged at Ahlf]?

15  A: I don't know. I mean, obviously, that's the testimony. I'm not going to
   make an assessment of credibility. We don't have a video, so we don't know.
   [Ryan depo, 85:12-20, emphasis added]

16

17  ….

18  Q: So do you believe that [Bareno's] estimate is in fact an accurate
   assessment of the amount of time?

19  A: …I don't know that anybody can tell you that, short of having
          somebody stand in that hallway with a stop watch or having a camera
20  system that records and gives you exact times, which most of them do…"
   [Ryan depo, 129:10-19, emphasis added]

21

22  …

23  Q: What was the length of time that the—that this greatest number of officers
   were applying – were on top of Mr. Harrison, to use your definition of on
   top?

24

25  A: Hey, I guess probably what we should do, we should probably have you
   ask the officers because in fact the officers can't tell who was even there. So
   that's where we ought to start with that proposition. But we do have an
26  officer saying he was on for three minutes. We do have Bareno saying the

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

incident lasts for five minutes after he gets there. So to give an answer, if we had cameras, like exist in most parts of the country, in most jails that record and record in real time and we had the video available, we could give an exact answer to that question. But that probably would not work to the way you would like it in this case. I don't know. Because we do have officers putting it at three to five minutes, which is much too long to be on somebody's back. [Ryan depo, 156:7-157:6, emphasis added]

…

Q: So how long was Mr. Harrison on the bench?

A: Well, I don't know the answer to that, because we don't have any video…" [Ryan depo, 88:1-5]

There will be an abundance of evidence that there were in fact cameras that allowed the sheriff's technician in the so-called security booth a few feet from the site of the struggle to watch certain events occur. However, the system does not preserve the images that the camera sends to the screen. Mr. Ryan's argument—that most jails have video cameras that preserve images and thus Santa Rita should have had them too—is irrelevant to this case. Such testimony should be excluded pursuant to FRE 403. It is argumentative, lacks probative value, and serves no purpose other than provoke the jury. Additionally, it is unfairly prejudicial to the deputies as they had no involvement in the decision to install recording video cameras.

**J.      Code of Silence**

County Defendants incorporate by reference as though fully stated herein their arguments from Motion in Limine No. 1.

**Motion *in Limine* No. 12:**      **To exclude Argument by counsel and Testimony by expert Kathryn Burns, M.D. regarding medical Training to deputies and Training to CJMH staff.**

**Defendants Corizon and Dr. Orr join in Defendant ACSO's Motion in Limine #12**

County Defendants move in limine for an order stating that:

A.      Plaintiffs are precluded from arguing that the County provides no medical

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

training to deputies concerning alcohol withdrawal;

B.     Plaintiffs are precluded from arguing that Sergeant Cynthia Sass "confirmed" that the County does not provide any medical training to deputies concerning alcohol withdrawal;

C.     Plaintiffs expert Kathryn Burns, M.D. is precluded from giving opinion that the County failed to train deputies concerning alcohol withdrawal and the County failed to train Ms. Hast regarding how to appropriately triage and respond to emergency referrals; and

D.     The American Correctional Association (ACA) requires that deputies be trained regarding alcohol withdrawal.

## II.     LEGAL ARGUMENT

**The argument that the County provides no medical training to deputies concerning alcohol withdrawal should be excluded because it mischaracterizes the evidence and is unduly prejudicial under FRE 403.**

The Plaintiffs have stated in its response to County Defendants' Motion for Summary Judgment that "There is no record that Defendant Ahlf ever received the required training" and that the County's PMK, Sergeant Sass, confirmed that the County "do not provide any such training and have never provided such training." [Opp., Doc. 147, 54:19-24]. However, the evidence is clearly to the contrary. First, the County produced the following records regarding training to deputies:

- Continued Professional Training (CPT) outline for a course Deputy Ahlf attended in 2009. This was produced to Plaintiffs on September 24, 2013. In the Basic First Aid training portion, there is a section regarding "signs and symptoms" of "medical emergencies/sudden illness." Those signs and symptoms include pale or flushed skin, cold sweats, dizziness, weakness, confusion, nausea, vomiting, diarrhea, severe headache, paralysis, slurred speech, seizure, breathing difficultly, persistent pain or pressure, and changes in consciousness. This document, bates stamped ACSO 1548, 1556-1560, and 1587, was attached as Exhibit V to the County's Reply to Plaintiffs' Response to the MSJ, Docket No. 159.

- Training materials of a course entitled "Emergency Action Plan" and documentation that Deputy Ahlf attended this course in 2009. This was

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

38

1804815.v1

also produced to Plaintiffs on September 24, 2013, The lesson plan for this course included "signs and symptoms of mental illness, violent behavior, and acute chemical intoxication and withdrawal." This document, bates stamped ACSO 1669-1672, was attached as Exhibit W to the County's Reply to Plaintiffs' Response to the MSJ, Docket No. 159.

- Deputy Ahlf's 80 hour Jail Operations Core Course exam and notes.[2] This was produced on September 26, 2013. There were several questions regarding dealing with inmates with substance abuse, under the influence, or undergoing withdrawals. This document, bates stamped ACSO 1673, 1682, and 1683, was attached as Exhibit X to the County's Reply to Plaintiffs'

Response to the MSJ, Docket No. 159.

Second, Sergeant Sass testified that Alameda County Sheriff's Office has a training block that deals with identifying people who might be drug or alcohol induced. [Sass depo, 17:3-14, Ex. P to Ly Dec]. She also testified that ACSO has a Standard in Training course that deals with the same matters. [*Id.,* 22:5-15]. Sergeant Sass further testified that the last time she received training on "chemical dependency that addressed the issue of alcohol" was in 2012 during her Continued Professional Training and Standards in Training course. [*Id.*, 48:12-24].

FRE 403 specifically provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See Old Chief v. U.S.*, 519 U.S. 172, 180–92 (1997); *U.S. v. Hitt,* 981 F.2d 422, 423–25 (9th Cir. 1992). Plaintiffs' argument that no training was given is inaccurate, mischaracterizes the evidence, and therefore unduly prejudicial. Thus, Plaintiffs should be precluded from arguing that no training was given.

**B.      Plaintiffs should be precluded from arguing that the County does not provide medical training to deputies based on Sergeant Cynthia Sass's**

---

[2] ACSO was unable to locate the outline for the Jail Operations Core course in 2006.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

**testimony, i.e., Sergeant Sass's testimony is not an "admission" by the County**

Plaintiffs have argued that Sergeant Sass "confirmed" that the County does not provide any training regarding alcohol withdrawal and therefore no such training is given. [Plaintiffs' Opp to County's MSJ, Doc 147, 54:19-24]. As stated above, Plaintiffs mischaracterize Sergeant Sass's testimony. In addition, Sergeant Sass testified herself that the County does not have one employee designated for training of alcohol withdrawal:

> Q: You have been designated as the Alameda County Sheriff's Office person most knowledgeable regarding the training policies and procedures, from 2007 to the present, concerning assessing, examining, treating, or providing care to inmates with possible alcohol withdrawal, detoxification of inmates who are alcohol dependent, preventing alcohol withdrawal in inmates, and handling inmates who are experiencing alcohol withdrawal. Do you understand that designation?
>
> A: I do.
>
> Q: Do you agree that you're the person most knowledgeable within the Alameda CountySheriff's Office on those topics?
>
> [Objection: Calls for speculation]
>
> A: I actually kind of have a caveat to that. We don't actually have a position that stands for ...the treatment and development of a plan for people specifically going through alcohol withdrawals, but we do a medical liaison, a law enforcement medical liaison, that goes between both entities. That helps to breech the gap between the facility of services for each. And that was my position prior to this [current position]. I was probably the person who would know most about how – once our medical and mental health staff came up with a plan, how we would make sure that they would implement it by providing staff in there. [Sass depo, 8:3-9:7]

Plaintiffs will argue that no medical training is given to deputies based on Sergeant Sass's testimony. This argument is wholly inaccurate, unduly prejudicial, and therefore should be excluded under FRE 403.

**C.    Plaintiffs' expert Kathryn Burns, M.D.'s opinion that the County failed to train deputies regarding alcohol withdrawal should be excluded because it lacks foundation, is unnecessary, and will not aid the jury. Further, her opinion that the County failed to train CJMH staff on how to appropriately triage and respond to emergency referrals should be**

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

40

1804815.v1

**excluded for the same reasons.**

County Defendants move to exclude the testimony by Plaintiffs' expert on the issue of the County's training of deputies and CJMH clinicians pursuant to FRE 702 and 403. Plaintiffs' retained expert, Kathryn A. Burns, M.D., Chief Psychiatrist of Ohio's prison system, has authored a report and testified at deposition whereby she opines that the County failed to train its deputies on the signs and symptoms of alcohol intoxication and withdrawal. [Dr. Burns' Report dated 11/3/13, p. 3 Ex. N to Ly Dec].

Dr. Burns further opined that the County failed to train CJMH staff on how to appropriately triage and respond to emergency referrals. [Dr. Burns' Report dated 11/3/13, p. 3]. Dr. Burns testified at deposition on December 27, 2013, that she was not provided, and thus did not review, any training documents produced by the County which show that the County trained deputies regarding specific medical problems, including chemical dependency. [Burns' depo, 115:2-118:4; 121:15-21 Ex. O to Ly Dec]. Prior to writing her report, Plaintiffs did not provide Dr. Burns the following documents regarding training, which are more fully described in Section A above.

- Continued Professional Training (CPT) outline for a course Deputy Ahlf attended in 2009.
- Training materials of a course entitled "Emergency Action Plan" and documentation that Deputy Ahlf attended this course in 2009
- Deputy Ahlf's 80 hour Jail Operations Core Course exam and notes.

The only documents Dr. Burns reviewed prior to writing her report that supported her opinion regarding training were Plaintiffs' Summary of the Case Supplement,[3] Sergeant Sass's deposition, Ms. Granlund's deposition,[4] and the deputies' training activity logs. [Burns' depo, 120:15-121:21]. Dr. Burns concluded that deputies received no health related

[3] This summary written by Plaintiffs' counsel repeatedly argues that the County failed to provide such medical training to deputies.

[4] Ms. Granlund was Corizon's PMK regarding training of deputies who testified that Corizon did not train deputies regarding alcohol withdrawal.

LAW OFFICES RENAUD COOK DRURY MESAROS ONE NORTH CENTRAL SUITE 900 PHOENIX, AZ 85004 TELEPHONE (602) 307-9900 FACSIMILE (602) 307-5853

1804815.v1

training partly because she "didn't see training that was health-related training or alcohol and other drug training" on the log. [Id.] The training activity logs merely list the names of the training courses completed. It does not list every subject that is covered within each training course. In fact, some of the documents listed above were included on such training activity logs.

Dr. Burns reviewed Sergeant Sass's deposition, but appears to have overlooked the relevant testimony regarding training. [Burns depo, 113:14-115:1]. As stated above, Sergeant Sass testified that ACSO has a training block that deals with identifying people who might be drug or alcohol induced. [Sass depo, 17:3-14 (Ex. 48 to Sherwin Dec.) Docket No. 153]. She also testified that ACSO has a Standard in Training course that deals with the same matters. [*Id*., 22:5-15]. Sergeant Sass further testified that the last time she received training on "chemical dependency that addressed the issue of alcohol" was in 2012 during her Continued Professional Training and Standards in Training course. [*Id.,* 48:12-24 (Ex. U to Ly Dec) Docket No. 159].

FRE 702 provides that an expert witness may offer an opinion as to his or her specialized knowledge based on experience or training where that knowledge will assist the trier of fact in understanding the evidence. Where non-scientific expert testimony is at issue, the reliability of the expert's opinion focuses on his or her knowledge and experience. *Hangarter v. Provident Life and Acc. Ins. Co*., 373 F.3d 998, 1017 (9th Cir. 2004).

Dr. Burns did not review the relevant training materials listed above prior to writing her report. Thus, her opinion that there was no such training lacks foundation.

Her opinion also lacks foundation because Dr. Burns does not have any specialized knowledge or experience to qualify her to offer an opinion as to whether Alameda County adequately trains its staff. Dr. Burns has never worked at an Alameda County Jail or even at a California institution. Thus, she is not familiar with the training provided under the

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

42

1804815.v1

Commission on Peace Officers Standards and Training in California. Dr. Burns' opinion regarding the County's training of deputies and CJMH staff lacks foundation. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.").

The testimony should also be excluded under FRE 403. Dr. Burns' opinion regarding training is unnecessary and will not aid the jury. *See Salem v. U. S. Lines Co.*, 370 U.S. 31, (1962), rehearing denied 370 U.S. 965, on remand 304 F.2d 672 (Expert testimony is not only unnecessary but may properly be excluded if all primary facts can be accurately and intelligibly described to jury, and if they, as men of common understanding, are as capable of comprehending primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation).

At trial, the County Defendants will provide evidence of the training given to deputies and CJMH staff. The deputies will testify to their own training. A majority of the deputies, including Deputy Ahlf, were not questioned at deposition regarding medical training. Ms. Hast will testify regarding her own training on triaging clients. Leonicia Castro, a CJMH supervisor, will also testify as to the training given to Megan Hast.[5] The jury is certainly capable of comprehending such evidence and determining whether the training was given. Dr. Burns presumably will not be attending the majority of the trial to listen to the testimony of the deputies and staff regarding their own training. Even if she hears all of the evidence, Dr. Burns' opinion of the same training documents and testimony offers little, if any, probative value. This value is certainly outweighed by the danger of wasting valuable court time and undue delay. Dr. Burns' testimony regarding training

---

[5] Ms. Castro's deposition was not taken.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

should be excluded.

**D.     Plaintiffs should be precluded from arguing that the American Correctional Association (ACA) requires that deputies be trained regarding alcohol withdrawal.**

The Plaintiffs have continuously made the argument that Corizon and/or the County lied to the ACA by stating that it provides medical training to deputies concerning alcohol withdrawal. There is absolutely no evidence supporting this bald assertion. No witness has testified that the ACA requires such medical training. This argument lacks foundation and is inadmissible under FRE 403. The Alameda County Jails are accredited under the ACA, which requires certain standards that the jail must follow in order to achieve accreditation. There is no ACA standard that requires that correctional officers be trained in recognizing the signs and symptoms of alcohol withdrawal. The relevant ACA standards are summarized as follows:

- 4-ALDF-4C-36 requires that detoxification of inmates is done only under medical supervision (ACA Core Jail Standards Fourth Edition (ACA book), p. 65)

- 4-ALDF-4C-37 recommends that inmates have access to a chemical dependency treatment program (ACA book, p. 65-66)

- 4-ALDF-5A-04 recommends that inmates with drug and alcohol addiction problems are provided with substance abuse programs (ACA book, p. 84)

- 4-ALDF-7B-08 All employees who have contact with inmates should receive training, which includes at a minimum…[list of items which do not include alcohol withdrawal] (ACA book, p. 114)

- 4-ALDF-7B-09 All new full-time health care employees should be trained regarding…[list of items which do not include alcohol withdrawal] (ACA book, p. 114-115)

- 4-ALDF-7B-10 All new correctional officers should be trained regarding…[list of items which do not include alcohol withdrawal] (2012 Supplement to ACA book, p. 99)

- 4-ALDF-7B-10-1 Correctional officers should receive training regarding…[list of items which do not include alcohol withdrawal] (2012 Supplement to ACA book, p. 113-114)

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

44

1804815.v1

[ACA Core Jail Standards Fourth Edition, pp. 65, 66, 84, 114, 115; 2012 Supplement to the same, pp. 99, 113, 114, Ex. Q to Ly Dec].

All of the above mentioned ACA standards, except for 4-ALDF-4C-36, are "expected practices" which are not mandatory. ["Summary of Mandatory Expected Practice," Ex. R to Ly Dec]. There are no other standards which contemplate training of correctional officers regarding medical topics, [Table of Contents to ACA book, Ex. S to Ly Dec]. In sum, the ACA standards do not require that correctional officers are trained regarding alcohol withdrawal. Plaintiffs should be precluded from arguing the same.

**Motion *in Limine* No. 13:** **The County Defendants move this Court for an order preventing Plaintiffs' expert, Larissa J. Mooney, M.D., from giving testimony about matters that are outside her expertise and are excludable under FRE 403.**

**Defendant Sancho joins in Defendant ACSO's Motion in Limine #13**

Specifically, County Defendants request that Dr. Mooney be precluded from testifying regarding the following opinion in her report:

> [I]t is my opinion that despite the presence of DTs, Mr. Harrison would have been able to experience pain and suffering while being repeatedly Tased and beaten. It is accepted by medical clinicians that patients who are critically ill with altered mental status experience physical pain despite being unable to communicate their experience verbally or with other signs (Barr et al., 2013).

[Mooney report, 3, Ex. T to Ly Dec].

## II.    LEGAL ARGUMENT

FRE 702 provides that an expert witness may offer an opinion as to his or her specialized knowledge based on experience or training where that knowledge will assist the trier of fact in understanding the evidence. FRE 702 consists of three distinct but related requirements: "(1) the subject matter at issue must be beyond the common knowledge of

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." U.S. v. Finley, 301 F.3d 1000, 1007 (9th Cir. 2002).

FRE 403 specifically provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See Old Chief v. U.S., 519 U.S. 172, 180–92 (1997); U.S. v. Hitt, 981 F.2d 422, 423–25 (9th Cir. 1992).

Dr. Mooney did not review any of the deputies' depositions, aside from Deputy Ahlf's, prior to writing her report. Nor did she review any documents which documented the use of force involved. The only information Dr. Mooney reviewed regarding the tasing and alleged beating was from Plaintiffs' own summary of the case. [Mooney depo, 65:8-66:13, Ex. U to Ly Dec]. Dr. Mooney concluded that Mr. Harrison was beaten in part from a summary of the autopsy report that was written by Plaintiffs' counsel. [Id.]. Thus, her opinion that Mr. Harrison was "repeatedly Tased and beaten" is argumentative and lacks foundation. It is also excludable under FRE 403 because the opinion has no probative value, but is unfairly prejudicial and misleading to the jury.

Regarding her opinion about Mr. Harrison experiencing pain and suffering, Dr. Mooney relied upon a study in the Critical Care Medicine Journal which concluded that adult ICU patients routinely experience pain. ["Clinical Practice Guidelines for the Management of Pain, Agitation, and Delirium in Adult Patients in the Intensive Care Unit" by Barr, et al, pp.263-272, Ex. V to Ly Dec]. Dr. Mooney agreed at deposition that "suffering" was not mentioned in the article. She also agreed that the study did not assess whether persons experience pain and suffering during an altercation. The article did not address whether a person in delirium tremens experienced pain and suffering. [See Mooney depo, 66:14-69:6]. Thus, Dr. Mooney's opinion regarding Mr. Harrison's "pain and

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

suffering" lacks foundation to the extent it relies on this study.

In addition, the average layman is certainly aware that if pain compliance techniques are being used against a subject, that subject will experience pain. A jury is capable of understanding that if a taser activation is effective, or a person is struck, it will cause pain. Dr. Mooney's testimony in that regard is not beyond the common knowledge of the average layman and therefore is not the subject of expert testimony under FRE 702. See Finley, 301 F.3d at 1007. Moreover, because the testimony has little, if any, probative value and is unfairly prejudicial, it is also excludable under FRE 403.

**Motion** *in Limine* **No. 14:** **To exclude Plaintiffs' counsel from questioning County expert James Rael, M.D. regarding matters which are outside the scope of his retention and irrelevant to his opinion, namely 1) the medical aspects of this case, including the care, treatment, policies, and training to medical staff regarding alcohol withdrawal and 2) the policies and training at Contra Costa County jails.**

Dr. Rael served as the Medical Director for the Contra Costa County jails for ten years, where he oversaw the medical and mental health services at the jails. Dr. Rael was disclosed as an expert by the County to opine about the management of Mr. Harrison's mental health care by Megan Hast. He opined that Ms. Hast performed her duties on August 16, 2010 well within the standard of care. [Rael's report, 1, Ex. W to Ly Dec].

At deposition Plaintiffs' counsel extensively questioned Dr. Rael regarding medical aspects of this case, including the care, treatment, policies, and training regarding alcohol withdrawal. [Rael's depo, 109:17-121:9 Ex. X to Ly Dec]. This line of questioning was objected to by defense counsel as being outside the scope of the expert's opinion. Then, after fact discovery was already closed, Plaintiffs subpoenaed policy and training records from Contra Costa County regarding alcohol withdrawal. Defense counsel objected to the same. Such documents were not cited in Dr. Rael's expert report and were not relied upon in making Dr. Rael's opinions in this case. Thus, to the extent Plaintiffs seek to introduce or

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

question Dr. Rael regarding the records at trial, County Defendants also move to preclude the same.

## II.   LEGAL ARGUMENT

FRE 402 provides that: "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Relevant evidence is defined by Federal Rule of Evidence 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

FRE 403 specifically provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See Old Chief v. U.S*., 519 U.S. 172, 180–92 (1997); *U.S. v. Hitt*, 981 F.2d 422, 423–25 (9th Cir. 1992).

Dr. Rael's opinions regarding any medical aspect of this case, including treatment for alcohol withdrawal, are outside the scope of his retention and thus irrelevant. Likewise, the policies, procedures, and training regarding alcohol withdrawal at the Contra Costa jails are irrelevant to Dr. Rael's opinions in this case. Plaintiffs have designated their own experts to opine regarding the medical aspects of this case. Allowing Plaintiffs to question Dr. Rael regarding the same would thus be duplicative and a waste of the jury's valuable time. Therefore, the line of questioning should beprecluded pursuant to FRE 402 and 403.

**Motion *in Limine* No. 15:**    **To exclude any hypothetical questions of expert witnesses regarding the "mere possibility" of events.**

**Defendant Sancho joins in Defendant ACSO's Motion in Limine #15**

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

1

2

**Defendants Corizon and Dr. Orr join in Defendant ACSO's Motion in Limine #15**

3

4

5

6

7

On information and belief, Plaintiffs intend to ask medical experts in this case about whether certain events could have been "possible" medical causes of the decedent's death. Because California substantive law requires a plaintiff to demonstrate probable medical cause in medical-malpractice accidents, such "mere possibility" questions must be precluded.

8

9

10

The district court analyzes claims for state-law negligence against prison medical professionals pursuant to the forum state's law. *See*, e.g., *Reynoso v. Sayre*, 2013 WL 4840496, **14-15 (N.D.Cal.2013). Under California law,

11

12

proffering an expert opinion that there is some theoretical possibility the negligent act could have been a cause-in-fact of a particular injury is insufficient to establish causation.

13

14

15

16

17

18

*Jennings v. Palomar Pomerado Health Sys., Inc.,* 8 Cal.Rptr.3d 363, 370 (App. 2003) (emphasis added). See also Saelzler v. Advanced Group 400, 107 Cal.Rptr.2d 617, 626-27 (2001) (as quoted by Jennings, 8 Cal.Rptr.3d at 370) ("mere possibility of such causation is not enough;" and "when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant"). Instead,

19

20

21

the plaintiff must offer an expert opinion that contains a reasoned explanation illuminating why the facts have convinced the expert, and therefore should convince the jury, that it is more probable than not the negligent act was a cause-in-fact of the plaintiff's injury.

22

Jennings, 8 Cal.Rptr.3d at 363.

23

24

25

26

Because expert testimony of a "mere possibility" is of no moment in regards to causation, such testimony would only waste time and mislead and confuse the jury, and as such, the unfair prejudice to Defendants requires the preclusion of such questions. *See*, e.g., *Dynetix Design Solutions, Inc. v. Synopsys, Inc*., 2013 WL 4537838, *1 (N.D.Cal.2013)

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

(quoting Fed.R.Evid. 403).

However, the same rule does not apply in converse. As federal courts have recognized, a defendant is free to proffer questions to an expert about possible causes, because the defendant does not have the burden of proof on causation:

> The plaintiff in a negligence action bears the burden of producing evidence "to prove that it is more likely than not that [plaintiff's] injury was" caused by the defendant's negligence. … Defendant need not prove another cause, he only has to convince the trier of fact that the alleged negligence was not the legal cause of the injury. … In proving such a case, a defendant may produce other "possible" causes of the plaintiff's injury. These other possible causes need not be proved with certainty or more probably than not. To fashion such a rule would unduly tie a defendant's hands in rebutting a plaintiff's case, where as here, plaintiff's expert testifies that no other cause could have caused plaintiff's injury. The burden would then shift and defendant would then bear the burden of positively proving that another specific cause, not the negligence established by plaintiff's expert, caused the injury. Certainly, this is much more than what should be required of a defendant in rebutting a plaintiff's evidence.

Wilder v. Eberhart, 977 F.2d 673, 676-77 (1st Cir.1992) (internal citations omitted).

For the aforementioned reasons, Defendants respectfully submit that this Court should prohibit Plaintiffs from asking medical experts questions about merely "possible" causes and limit questions to medical experts regarding causation to only those questions for which the expert has a reasonable degree of medical certainty.

**Motion *in Limine* No. 16:     To preclude Dr. Eugene Schoenfeld from opining upon the nature and extent of the trauma sustained by the decedent and or the cause(s) of his death.**

Dr. Schoenfeld was retained by defendant Sancho to opine upon the cause of death, which he summarized in his Rule 26 report as follows:

> He did not die from the DTS…Martin Harrison died because he was repeatedly tased and beaten…

Dr. Schoenfeld obtained his medical degree in 1961. [Schoenfeld depo, 46:4-6, Ex. Y to Ly Dec]. He never completed a residency. [*Id*., 47:2-3,12-14]. He has not had hospital privileges since 1987. [*Id*., 62:14-19]. Dr. Schoenfeld practices psychiatry and addiction medicine two days a week. [*Id*., 61:8-22]. He is also occasionally retained in forensic

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

matters such as determining the mental competency of a criminal defendant. [*Id.*, 68:3-7]

Dr. Schoenfeld has never treated a physical injury that was attributed to a taser. He was asked the following question: "You don't claim to be an expert with regard to the physical effects of tasers, do you?" His answer was "No." [*Id.*, 76:14-16]. He has never previously considered whether someone had been physically injured by a taser. [*Id.*, 78:14-16, 88:8-12]. Dr. Schoenfeld was unable to offer an opinion as to the specific effects of the tasing. [*Id.*, 78-80].

Regarding the trauma sustained in the fight, Dr. Schoenfeld seldom performs physical exams in the course of his two day a week practice. He has not made an initial diagnosis of physical trauma since the 1980s. [*Id.*, 72, 73:5-10]. He has never performed an autopsy. [*Id.*, 89:1-3]. Nor is he an expert in interpreting autopsy photos. [*Id.*, 89:21-23]. He has no opinion with regard to which the specific trauma described by the coroner caused the death. In other words, in his opinion, they all contributed to one extent or another. The traumas to which he refers include a cut of the lip, abrasions on the knuckles, and other such trivial injuries. [*Id.*, 82:6-86:18].

The court is already familiar with the rules of law regarding the need for an expert to testify within his area of expertise. The cases and law are discussed in Motion in Limine No. 10 regarding Dr. Baden. County Defendants incorporate by reference as though fully stated herein their arguments from Motion in Limine No. 10. In sum, Dr. Schoenfeld lacks the legal competency to opine that Mr. Harrison died because of the tasing and trauma.

**Motion *in Limine* No. 17:**     **To exclude all Plaintiffs' experts from concluding any of Defendants' actions were objectively unreasonable and/or amounted to deliberate indifference.**

**Defendants Corizon and Dr. Orr join in Defendant ACSO's Motion in Limine #17**

On information and belief, Defendants believe Plaintiffs will attempt to elicit testimony from its experts concluding Defendants' actions were objectively unreasonable

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

and/or that deliberate indifference did exist. Any such conclusion is an impermissible legal conclusion.

The Ninth Circuit has held that "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Mukhtar v. California State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002). In *Wiles v. Department of Education*, 2008 WL 4225846 (D. Hawai'i 2008), the Court noted "Courts have held that expert witnesses' use of 'judicially defined terms,' "terms that derived their definitions from judicial interpretations," and 'legally specialized terms' would constitute expression of opinion as to the ultimate legal conclusion." *Id* citing *United States v. Duncan,* 42 F.3d 97, 101–02 (2d Cir.1994) (cited approvingly in *Mukhtar,* 299 F.3d at 1066). *Wiles* specifically held the term "deliberate indifference" is "such a judicially defined and/or legally specialized term" that Plaintiffs' experts were precluded from expressing their conclusions that some action amounted to deliberate indifference.

In *Gonzalez v. City of Garden Grove*, 2006 WL5112757 (C.D. Cal., Dec. 4, 2006), the Court precluded plaintiffs' expert witness from testifying as to legal conclusions "that the officers' actions were objectively unreasonable, or that the City's alleged inadequate training constitutes 'deliberate indifference[,]' as such testimony would "would invade the province of the jury."

Here, as in *Gonzalez* and *Wiles*, whether Defendants' actions were objectively unreasonable or deliberately indifferent are legal conclusions properly left for the jury to conclude – not Plaintiffs' experts. If Plaintiffs' experts are permitted to conclude in front of the jury that Defendants' actions were objectively unreasonable and/or amounted to deliberate indifference, the Court would permit the experts to unfairly venture in the province of the jury. Any expert testimony offered in this vein is unduly prejudicial and would only mislead the jury.

For the aforementioned reasons, the Court should prohibit Plaintiffs from eliciting

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

testimony from its experts concluding Defendants' actions were objectively unreasonable and/or that deliberate indifference did exist.

**Motion *in Limine* No. 18:**     **To exclude Plaintiffs from eliciting testimony and/or referencing any part of the Court's Amended Order Re: Defendants' Motions for Summary Judgment.**

**Defendants Corizon and Dr. Orr join in Defendant ACSO's Motion in Limine #18**

On information and belief, Plaintiffs will attempt to introduce and/or refer to the Court's Amended Order Granting in Part, Denying in Part Defendants' Motions for Summary Judgment dated April 11, 2014 ("Court's Order") to the extent Defendants' Motions were denied.

Plaintiffs should be precluded from using at trial the Court's Order and any reference thereto on the grounds that: 1) it is irrelevant and therefore excluded under Federal Rules of Evidence 401 and 402; 2) its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and a waste of time, and therefore must be excluded under Federal Rules of Evidence 403; and 3) it is inadmissible hearsay and therefore should be excluded under Federal Rules of Evidence 801.

This Court "has broad discretion to manage the conduct of a trial and the evidence presented by the parties, under the Federal Rules of Evidence and Civil Procedure and as part of the Court's inherent authority." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2013 WL 6001902, *2 (N.D.Cal.2013). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Evidence which is not relevant is not admissible. Fed.R.Evid. 402.

It is irrelevant that this Court denied some of Defendants Motions for Summary Judgment. The Court's determination in its Amended Order amounted to a finding only that

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

53

1804815.v1

material issues of fact existed so as to deny summary judgment on some of the issues presented by Defendants. The Court's Order has zero tendency to make the existence of any fact more or less probable because the Order simply finds there are issues as to existing material facts, which the Court determined should be left for the jury to decide.

Even if there is some minimal probative value in the Court's Order, it is "substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 4537838, *1 (N.D.Cal.2013) (quoting Fed.R.Evid. 403) (emphasis added). *See also Tennison v. Circus Circus Enters.*, 244 F.3d 684, 690 (9th Cir.2001) (district court "enjoys considerable discretion in determining whether to exclude evidence under Rule 403 for unfair prejudice."). The jury may give special weight to the judicial conclusions of the Court. "[C]ourts, recognizing the attendant danger of jury confusion and unfair prejudice, frequently have approved the exclusion of judicial findings, convictions, and similar evidence on Rule 403 grounds." *Faigin v. Kelly*, 184 F.3d 67, 80 (1st Cir. 1999) ("A lay jury is quite likely to give special weight to judicial findings merely because they are judicial findings.").

Introducing the Court's Amended Order in any form would invite the jury to inappropriately place a substantial amount of weight on the Court's Order, thereby compromising the jury's independence in making its own determination to the exclusion of the Court's influence. No matter how the Court's Order may be introduced to the jury, any reference thereto creates the risk that the Court's decision of the existence of material facts means that Defendants must be liable, or at a minimum, would factor into the jury's analysis at all. Clearly, this was not the intent of the Order; however, it is very likely that a lay jury could make this conclusion, or enter the Order into its analysis. Accordingly, any minimal probative value is substantially outweighed by the danger of being misleading and

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

54

1804815.v1

confusing to the jury and unfairly prejudicial to Defendants.

Finally, the Court's Order is inadmissible hearsay as its sole purpose would be used to prove the truth of the matters asserted therein regarding Defendants' liability. To the extent the Order is offered to prove the truth of the matters asserted in the judgment, it is inadmissible hearsay. *See U.S. v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011) ("A prior judgment is 'hearsay to the extent that it is offered to prove the truth of the matters asserted in the judgment[.]'"); *see also U.S. v. Sine*, 493 F.3d 1021, 1036-37 (9th Cir. 2007) (A prior court order was hearsay when findings from the order were used to cross-examine a witness, since the purpose was for the jury to agree with the prior judge's findings).

For the aforementioned reasons, the Court should prohibit Plaintiffs from referencing any part of the Court's Amended Order Re: Defendants' Motions for Summary Judgment.

**Motion *in Limine* No. 19:    To preclude Plaintiffs from eliciting testimony from Sergeant Scott Dudek regarding Defendant Deputy Ahlf's judgment, specifically that he "used poor judgment".**

Sergeant Scott Dudek was assigned with the task of investigating whether any criminal action occurred during the Martin Harrison incident. Sergeant Dudek interviewed Deputy Deputy Ahlf at the hospital on the evening of the incident, roughly two hours after the incident. Sergeant Dudek was deposed by Plaintiff's counsel who elicited testimony regarding Deputy Ahlf's judgment and Deputy Ahlf's mistake in handling Mr. Harrison. Any testimony referencing Deputy Ahlf's judgment should be precluded pursuant to FRE 401, 402, 403, 701, and because such testimony is an impermissible ultimate legal conclusion.

This Court "has broad discretion to manage the conduct of a trial and the evidence presented by the parties, under the Federal Rules of Evidence and Civil Procedure and as part of the Court's inherent authority." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2013

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

WL 6001902, *2 (N.D.Cal.2013). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Evidence which is not relevant is not admissible. Fed.R.Evid. 402.

Moreover, the Court must exclude evidence when its probative value is "substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 4537838, *1 (N.D.Cal.2013) (quoting Fed.R.Evid. 403) (emphasis added). *See also Tennison v. Circus Circus Enters*., 244 F.3d 684, 690 (9th Cir.2001) (district court "enjoys considerable discretion in determining whether to exclude evidence under Rule 403 for unfair prejudice.").

The degree to which Deputy Ahlf exercised judgment has no bearing on the issues in controversy and amounts to an inadmissible opinion in the form of a conclusion of Deputy Ahlf's conduct. It is the conduct itself at issue and should be analyzed by the jury – not Plaintiffs' attempt to couch Deputy Ahlf's conduct in terms of unfairly prejudicial conclusions. In the same vein, the sole purpose of referencing Deputy Ahlf's judgment is to evoke anger and punitive impulses, especially in light of the nature of the present charges. Accordingly, any such reference to Deputy Ahlf's judgment must be precluded under FRE 401, 402, and 403.

To the extent Sergeant Dudek's testimony is testifying as a non-expert witness, his testimony is inadmissible opinion evidence. The text of FRE 701 reads as follows:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

    **(a)** rationally based on the witness's perception;

    **(b)** helpful to clearly understanding the witness's testimony or to determining a fact

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

1    in issue; and

2    **(c)** not based on scientific, technical, or other specialized knowledge within the

3    scope of Rule 702.

4    Sergeant Dudek merely interviewed Deputy Ahlf following the underlying events,

5    therefore Sergeant Dudek's testimony cannot rationally be based on Sergeant Dudek's

6    perception of the events giving rise to this lawsuit. Sergeant Dudek's opinion is further

7    unnecessary to help the jury understand Deputy Ahlf's conduct during his attempts to

8    restrain Mr. Harrison – the conduct itself is sufficient testimony for the jury to analyze

9    whether Defendants are liable for Plaintiffs alleged injuries. Moreover, the opinion *is* based

10   on technical or other specialized knowledge regarding proper procedure for handling unruly

11   detainees such as Mr. Harrison – knowledge that requires specialized training and/or

12   knowledge within the scope of Rule 702.

13   Finally, if Sergeant Dudek is testifying as an expert witness, Plaintiffs' anticipated

14   attempts to elicit testimony regarding Deputy Ahlf's use of judgment is inappropriate

15   testimony as to an ultimate issue of law and invasive of the sole province of the jury. The

16   Ninth Circuit has held that "an expert witness cannot give an opinion as to her legal

17   conclusion, i.e., an opinion on an ultimate issue of law." *Mukhtar v. California State Univ.,*

18   *Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002). In *Wiles v. Department of Education*,

19   2008 WL 4225846 (D. Hawai'I 2008), the Court noted "Courts have held that expert

20   witnesses' use of 'judicially defined terms,' "terms that derived their definitions from

21   judicial interpretations," and 'legally specialized terms' would constitute expression of

22   opinion as to the ultimate legal conclusion." *Id* citing *United States v. Duncan,* 42 F.3d 97,

23   101–02 (2d Cir.1994) (cited approvingly in *Mukhtar,* 299 F.3d at 1066).

24   Should Sergeant Dudek be permitted to testify as to Deputy Ahlf's "poor judgment"

25   or any other similarly negative connotation regarding Deputy Ahlf's judgment, would

26   permit Dudek to reach an ultimate legal conclusion that Deputy Ahlf and the County

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

57

1804815.v1

Defendants were negligent and/or otherwise liable for Plaintiffs' injuries. Such testimony would clearly compromise the independence of the jury in reaching/forming their own conclusions with respect to Deputy Ahlf's conduct as they would substitute their own analysis with Sergeant Dudek's conclusion.

For the aforementioned reasons, the Court should prohibit Plaintiffs from eliciting testimony from Sergeant Dudek regarding Defendant Deputy Ahlf's judgment.

**Motion *in Limine* No. 20:**     **To preclude Plaintiffs from i.e., 1) asking the jury to send a message; 2) calling for policy change; 3) arguing that compensation can diminish danger within the community; and/or 4) referencing other similar types of policy the jury can influence with their verdict.**

**Defendants Corizon and Dr. Orr join in Defendant ACSO's Motion in Limine #20**

On information and belief, Defendants believe Plaintiffs will attempt to elicit improper and overbroad testimony in an effort to place the jury in the position of the Plaintiffs. Such testimony is completely irrelevant and unfairly prejudicial and should be excluded under FRE 401, 402, and 403.

Plaintiffs anticipated appeal to the cognitive and emotional senses of the jurors by asking the jurors to "send a message", calling for a "policy change", and/or eliminate the danger within the community allegedly caused by a defendants' conduct is an improper, irrelevant, and unfairly prejudicial attempt to shift the jurors' focus from the facts of this lawsuit to harm to the community in general.

This Court "has broad discretion to manage the conduct of a trial and the evidence presented by the parties, under the Federal Rules of Evidence and Civil Procedure and as part of the Court's inherent authority." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2013 WL 6001902, *2 (N.D.Cal.2013). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

1   Evidence which is not relevant is not admissible. Fed.R.Evid. 402.

2           Moreover, the Court must exclude evidence when its probative value is

3   "substantially outweighed by a danger of ... unfair prejudice, confusing the issues,

4   misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

5   evidence.'" *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 4537838, *1

6   (N.D.Cal.2013) (quoting Fed.R.Evid. 403) (emphasis added). *See also Tennison v. Circus*

7   *Circus Enters.*, 244 F.3d 684, 690 (9th Cir.2001) (district court "enjoys considerable

8   discretion in determining whether to exclude evidence under Rule 403 for unfair

9   prejudice.").

10          In particular, Plaintiffs should be precluded from eliciting testimony and/or making

11  statements: 1) arguing for a "policy change"; 2) asking the jury to "send a message"; 3)

12  advising the jury they can eliminate the type of harm Plaintiffs allege Defendants caused by

13  finding in Plaintiffs favor; and/or 4) referencing other similar types of policy the jury can

14  influence with their verdict. The foregoing statements are irrelevant and highly

15  inflammatory. First, said statements do not tend to prove the Plaintiffs' allegations against

16  the Defendants – the very nature of such statements falls outside the particular conduct

17  Plaintiffs allege caused their injuries and has absolutely no tendency to make any fact at

18  issue more or less probable. Accordingly, such statements are irrelevant and should be

19  precluded under FRE 401 and 402.

20          To the extent the statements carry with it any minimal probative value; it is

21  substantially outweighed by Rule 403 considerations. Such a plea by Plaintiffs is highly

22  inflammatory and solely intended to incite the jury and cause them to base their verdict not

23  on the evidence of the case, but rather on the basis of emotions and policy outside the

24  contours of what the jury should appropriately consider under the Federal Rules of

25  Evidence. Specifically, statements such as those outlined above create the danger that the

26  jury would issue its verdict based on a fear that they, their family, or other members of the

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

59

1804815.v1

community could be injured just as the plaintiff was injured, which in turn is unfairly prejudicial, confusing, and misleading.

For the aforementioned reasons, the Court should prohibit Plaintiffs from eliciting testimony and/or making statements regarding: 1) policy change; 2) asking the jury to "send a message"; 3) advising the jury they can eliminate the type of harm Plaintiffs allege Defendants caused by finding in Plaintiffs favor; and/or 4) referencing other similar types of policy the jury can influence with their verdict.

**Motion *in Limine* No. 21:   To preclude Plaintiffs' from introducing evidence, eliciting testimony about, and/or referencing police brutality in general and/or its prevalence in current events.**

On information and belief, Defendants believe Plaintiffs will attempt to elicit testimony regarding and/or referencing police brutality in general and/or its prevalence in current events. Such testimony is completely irrelevant, unfairly prejudicial and should be excluded under FRE 401, 402 and 403.

This Court "has broad discretion to manage the conduct of a trial and the evidence presented by the parties, under the Federal Rules of Evidence and Civil Procedure and as part of the Court's inherent authority." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2013 WL 6001902, *2 (N.D.Cal.2013). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Evidence which is not relevant is not admissible. FRE 402.

There is no probative value to introducing evidence of or referring to police brutality in general as it does not address the merits of this case. Where such "police brutality" evidence does not address the merits, i.e. an element of a claim or defense; the probative value of the evidence is weak at best. *See*, e.g., *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (the probative value of evidence against a defendant is low

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

1   where the evidence does not go to an element of the charge).

2       Moreover, the Court must exclude evidence when its probative value is

3   "substantially outweighed by a danger of ... unfair prejudice, confusing the issues,

4   misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

5   evidence.'" *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 4537838, *1

6   (N.D.Cal.2013) (quoting Fed.R.Evid. 403) (emphasis added). *See also Tennison v. Circus*

7   *Circus Enters.*, 244 F.3d 684, 690 (9th Cir.2001) (district court "enjoys considerable

8   discretion in determining whether to exclude evidence under Rule 403 for unfair

9   prejudice.").

10      To a layperson, the word "police brutality" is a "hot-button" subject that evokes

11  anger and punitive impulses. A "Google search" of "police brutality" returns haunting

12  videos and images, sometimes doctored or fake, in addition to a plethora of articles

13  reporting instances where law enforcement officials are charged and/or indicted for their

14  involvement in "police brutality" cases. One article defines "police brutality" as "the

15  wanton use of excessive force, usually physical…"  It is clear that no deputy was criminally

16  charged and/or indicted as it relates to the underlying events and further, no deputy testified

17  that they inflicted excessive force. Rather, their testimony is to the contrary and consistent

18  with trying to achieve compliance from a noncompliant inmate. Plaintiffs should be

19  precluded from "editorializing" the evidence in this case through referencing or describing

20  "police brutality" events or other similar inflammatory language.

21      For the aforementioned reasons, the Court should prohibit Plaintiffs from eliciting

22  testimony and/or making statements regarding "police brutality".

23

24  **Motion *in Limine* No. 22:      To preclude Plaintiffs' from introducing evidence and/or referencing Defendant Deputy Ahlf withdrawn application to ACSO Patrol or Deputy Ahlf's evaluation in the ACSO Patrol Field Training Program.**

25

26      Prior to Deputy Ahlf's detail with Santa Rita Jail, Deputy Ahlf submitted an

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

application to the Alameda County Sherriff's Office ("ACSO") to serve as a patrolman and had gotten as far as beginning field training. At his deposition, Deputy Ahlf testified he was forced to withdraw his participation in the field training program due to a family emergency – a personal reason independent of this litigation. *See* Deputy Ahlf Deposition, p.15-16. Plainitffs' counsel then inquired whether Deputy Ahlf received below standard evaluations during field training, to which Deputy Ahlf responded "Some, yes." *Id.* On information and belief, Plaintiffs will attempt to elicit testimony regarding Deputy Ahlf's withdrawal of his application with the ACSO and his below standard evaluations during field training. Any such attempt to elicit such testimony or otherwise make any reference to this effect must be precluded pursuant to FRE 401, 402, 403, and 404.

This Court "has broad discretion to manage the conduct of a trial and the evidence presented by the parties, under the Federal Rules of Evidence and Civil Procedure and as part of the Court's inherent authority." *Apple, Inc. v. Samsung Electronics Co., Ltd*., 2013 WL 6001902, *2 (N.D.Cal.2013). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Evidence which is not relevant is not admissible. Fed.R.Evid. 402.

Moreover, the Court must exclude evidence when its probative value is "substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, 2013 WL 4537838, *1 (N.D.Cal.2013) (quoting Fed.R.Evid. 403) (emphasis added). *See also Tennison v. Circus Circus Enters*., 244 F.3d 684, 690 (9th Cir.2001) (district court "enjoys considerable discretion in determining whether to exclude evidence under Rule 403 for unfair prejudice.").

Deputy Ahlf's withdrawal of his application with ACSO patrol due to a family

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

emergency bears no probative value in this lawsuit as it has no tendency to make any fact at issue more or less probable. One goal of eliciting such testimony is to unfairly prejudice Defendants and mislead and confuse the jury at the expense of Deputy Ahlf's embarrassment – a result that is strictly prohibited by Rule 403 on balance.

Deputy Ahlf's withdrawn application with ACSO and below standard evaluations must also be excluded as an "other act" under FRE 404(b), which states in relevant part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The Ninth Circuit has held that "[e]vidence of prior misconduct is admissible [only] if it is clear and convincing; relevant to an issue other than character; and its probative value outweighs any potential prejudicial effect. Such evidence may not be admitted to show a propensity or proclivity to commit bad acts. Nor is such evidence admissible to show that a person acted in conformity with his bad character." *Coursen v. A.H. Robins Co., Inc*., 764 F.2d 1329, 1334-1335 (9th Cir. 1985).

As demonstrated above, Deputy Ahlf's withdrawn application is not relevant to any issue presently in controversy and any minimal probative value is substantially outweighed by its prejudicial effect. The goal of introducing Deputy Ahlf's withdrawn application with the ACSO patrol is show because he previously received below standard evaluations during field training and withdrew his application with the ACSO, Deputy Ahlf's performance during his efforts to restrain Mr. Harrison was below standard, a use that is strictly prohibited by Rule 404.

For the aforementioned reasons, the Court should prohibit Plaintiffs from eliciting testimony and/or otherwise referencing Defendant Deputy Ahlf withdrawn application to ACSO Patrol or Deputy Ahlf's evaluation in the ACSO Patrol Field Training Program.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

1

2    **B.       Defendants Harold W. Orr, Jr., M.D., and Corizon Health, Inc.**

3    **INDEX TO DEFENDANTS DR. ORR'S AND CORIZON'S MOTIONS IN LIMINE**

4    **1.   TO EXCLUDE EXPERT OPINION ON DELIBERATE INDIFFERENCE**

5    **2.   TO EXCLUDE CORIZON'S FINANCIAL EVIDENCE**

6
     **3.   TO EXCLUDE EVIDENCE OF OTHER CLAIMS, LAWSUITS, VERDICTS,
7         SETTLEMENTS, AND CONTRACTS INVOLVING CORIZON OR ITS EMPLOYEES**

8    **4.   TO EXCLUDE REFERENCE TO DR. ORR'S SUPERVISION OF MS. SANCHO**

9
     **5.   TO EXCLUDE CORIZON EMPLOYMENT ARBITRATION BRIEF AND DECISION**
10
     **6.   TO EXCLUDE MR. HARRISON'S HEARSAY STATEMENTS ABOUT HIS ALLEGED
11        PLAN TO DETOX IN JAIL**

12
     **7.   TO EXCLUDE HEARSAY BY DECEDENT THAT HIS SON WAS HIS "BEST FRIEND"**
13
     **8.   TO EXCLUDE EVIDENCE OF CORIZON'S ALLEGED FAILURE TO PRODUCE MENTAL
14        HEALTH RECORDS**

15
     **9.   TO PRECLUDE PLAINTIFFS FROM REFERRING TO CORIZON'S ALLEGED LIES OR
16        MISREPRESENTATIONS TO THE NCCHC**

17   **10.  TO PRECLUDE PLAINTIFFS FROM REFERRING TO CORIZON'S ALLEGED LIES OR
         MISREPRESENTATIONS TO THE NCCHC**
18
     **11.  TO EXCLUDE ONE OF DEFENDANTS COUNTY OF ALAMEDA'S AND HAST'S TWO
19        EXPERT FORENSIC PATHOLOGISTS**

20
     **12.  TO EXCLUDE OPINION TESTIMONY OF PLAINTIFFS' FORENSIC DOCUMENT
21        EXAMINER, OR IN THE ALTERNATIVE, TO LIMIT HER TESTIMONY TO OPINIONS
         WITHIN HER AREA OF EXPERTISE ONLY**
22

23   **13.  TO EXCLUDE REFERENCE TO FACTS, ISSUES, OUTCOMES, ETC., IN DEFENSE
         EXPERTS' PRIOR CASES**
24

25   **14.  DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 14 TO EXCLUDE
         EVIDENCE OF DR. SCHOENFELD'S EXPERIMENTS INVOLVING ANIMALS**
26

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

**15. TO EXCLUDE REFERENCES TO THE "GOLDEN RULE" AND THE LIKE**

**16. DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 16 TO USE ALTERNATE CASE CAPTION AT TRIAL**

**17. TO EXCLUDE REFERENCE TO CORIZON'S POLICIES RE HOSPITALIZATOIN FOR ALCOHOL WITHDRAWAL**

**18. TO EXCLUDE PORTIONS OF DR. MOONEY'S TESTIMONY**

**1. DEFENDANTS DR. ORR AND CORIZON'S MOTION _IN LIMINE_ NO. 1 TO EXCLUDE EXPERT OPINION ON DELIBERATE INDIFFERENCE**

## I.  **INTRODUCTION**

Defendants Dr. Orr and Corizon request an order _in limine_ precluding:

> 1.      Opinions proffered by any of Plaintiffs' experts that any defendant, or employee, agent, or supervisee thereof, was "deliberately indifferent";

> 2.      Opinions proffered by any of Plaintiffs' experts that any defendant, or employee, agent, or supervisee thereof, "knew" or "should have known" of any fact;

> 3.      Opinions proffered by any of Plaintiffs' experts regarding the mental state of any defendant, or employee, agent, or supervisee thereof; and,

> 4.      Use by any of Plaintiffs' experts, witnesses or attorneys of the term "deliberately indifferent" or "deliberate indifference," etc.

These purported expert opinions should be excluded because they do not assist the jury.  Most importantly, such opinions improperly usurp the jury's fact-finding function.  They are based on speculation and are outside the scope of the expert's expertise.

## II.  **ARGUMENT**

The opinions should be excluded because:

1.  They do not assist the jury.  F. Rules Evid. 702(a).
2.  They impermissibly usurp the jury's fact-finding function, that is, testifying about the ultimate issue in the case.
3.  They fundamentally assess a defendant's credibility, which is the sole province of the jury.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

4.  They assess a defendant's state of mind, testimony which experts are unqualified to give.

*See Al-Turki v. Robinson*, 2013 WL 603109, at *5-6 (D. Col. 2013).  Indeed, as explained by the District Court in *Al-Turki, supra*:  "When [the expert physician] opines that Defendant was 'deliberately indifferent,' he is rendering an opinion on an ultimate legal issue in the case, and further invading the province of the jury insofar as the jury is tasked with assessing credibility.  Moreover, even if he avoids the term 'deliberately indifferent,' but his testimony nevertheless opines on Defendant's knowledge and intent, he is without personal knowledge and rendering an opinion which is outside the scope of his expertise. [The expert physician] is not qualified to testify about Defendant's state of mind."  *Id.* at *5.

## III. **CONCLUSION**

For the foregoing reasons, the court should enter an order *in limine* precluding:

1.    Opinions proffered by any of Plaintiffs' experts that any defendant, or employee, agent, or supervisee thereof, was "deliberately indifferent";

2.    Opinions proffered by any of Plaintiffs' experts that any defendant, or employee, agent, or supervisee thereof, "knew" or "should have known" of any fact;

3.    Opinions proffered by any of Plaintiffs' experts regarding the mental state of any defendant, or employee, agent, or supervisee thereof; and,

4.    Use by any of Plaintiffs' experts, witnesses or attorneys of the term "deliberately indifferent" or "deliberate indifference," etc.

## 2. **DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 2 TO EXCLUDE CORIZON'S FINANCIAL EVIDENCE**

## I.   **INTRODUCTION**

Defendants Dr. Orr and Corizon request an order precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to the financial condition, size, net worth, market share, or

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

66

1804815.v1

finances of Corizon Health, Inc., any affiliated company, and Dr. Orr, including, without limitation to revenue, net worth, the value of any contract with the County of Alameda, the County of Fresno, and any other contract, unless the case proceeds to the punitive damages phase of trial.  (The Court has previously granted defendants' motion to bifurcate liability issues from punitive damages.  Doc.  294.)

## II. **ARGUMENT**

Defendants' size, market share, financial condition, net worth, and/or finances (collectively, the "financial condition") are irrelevant to questions of liability, causation and damages.  It is unduly and unfairly prejudicial for such evidence to become entangled in the jurors' minds with evidence regarding defendants' alleged liability on plaintiffs' claims, including under 42 U.S.C. § 1983 and California Civil Code section 52.1.

Evidence is appropriately excluded when it is (1) irrelevant or (2) its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time . . . ."  Fed. R. Evid. 402-403. Additionally, California Civil Code section 3295, subdivision (d), provides:  "The Court, shall, on application of any defendant, preclude the admission of evidence of that defendant's profits or financial condition until after the trier of fact returns a verdict for plaintiff awarding actual damages and finds that a defendant is guilty of malice, oppression, or fraud in accordance with Section 3294.  Evidence of profit and financial condition shall be admissible only as to the defendant or defendants found to be liable to the plaintiff and to be guilty of malice, oppression, or fraud."  Cal. Civ. Code, § 3294.

Here, the subject of financial condition is not relevant to liability or damages, and presenting it to the jury would pose a substantial danger of the harms that Rule 403 is intended to prevent.  Indeed, "the proposition that evidence on the question of damages may well have a prejudicial effect on the jury is almost certainly true of any litigation . . . ."

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

1  *Lagudi v. Long Island R. Co.,* 775 F.Supp. 73, 75 (E.D. N.Y. 1991).

2      Absent such an order, Plaintiffs might employ a tactic of referring to Defendant

3  Corizon's size or wealth to appeal to an anti-corporate bias.  To illustrate, Plaintiffs

4  declared in the opening sentence of their summary judgment opposition that Corizon

5  "enjoys a $250 million eight-year contract to provide medical services to Alameda

6  County." Pl.'s Opp. to MSJ, p. 1 (Doc. 150, p. 7.)  They did so even though this putative

7  fact is irrelevant to any issue raised by the motion.  See generally Def.s' Summ. Judg. Mot.

8  (Doc. 134.)

9      Because Dr. Orr's and Corizon's financial condition is irrelevant to liability issues it

10  should be excluded unless the case proceeds to a punitive damages phase.  Allowing

11  Plaintiffs to disclose or elicit such information would unnecessarily invade privacy rights,

12  waste time, and would pose an unnecessary risk of misleading or confusing jurors.

13                          III. **CONCLUSION**

14      For the foregoing reasons, the Court should enter an order in limine precluding

15  Plaintiffs and co-Defendants from making or eliciting any statement, testimony, reference

16  of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or

17  pertains to the financial condition, size, net worth or finances of Corizon Health, Inc., any

18  affiliated company, and Dr. Orr, including, without limitation to revenue, net worth, the

19  value of any contract with the County of Alameda, the County of Fresno, and any other

20  contract, unless the case proceeds to the punitive damages phase of trial.

21  **3.  DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 3 TO EXCLUDE
    EVIDENCE OF OTHER CLAIMS, LAWSUITS, VERDICTS, SETTLEMENTS, AND**
22  **CONTRACTS INVOLVING CORIZON OR ITS EMPLOYEES**

23                          I.  **INTRODUCTION**

24      Defendants Dr. Orr and Corizon request an order precluding any statement, testimony,

25  reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or

26

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

68

1804815.v1

pertains to other claims, lawsuits, verdicts, judgments, settlements, or contracts involving Defendants or Defendant Corizon's employees, and will refer to Corizon as a "foreign" corporation. Such evidence is irrelevant to any of Plaintiffs' claims and any purported probative value it has would be substantially outweighed by the danger of unfair prejudice, and misleading and confusing the jury, and should therefore be excluded. *See* Fed. R. Evid. 401, 402, 403, & 404. To the extent the evidence constitutes hearsay, it should also be excluded on this ground. *See FRE* 801, 802.

## II. <u>ARGUMENT</u>

### A. Evidence of Other Claims, Lawsuits, Verdicts, Judgments, or Settlements Involving Corizon Or Its Employees, including Dr. Orr, Should Be Excluded Because It Is Irrelevant, Unduly Prejudicial, And Would Waste Time

Evidence of other claims, lawsuits, verdicts, judgments, or settlements involving Defendant Corizon or its employees, including Defendant Dr. Orr are irrelevant to Plaintiffs' claims against Defendants. Whether Corizon or its employees were found liable or stipulated to settlement in other proceedings is not proof that they are liable in this case, and has absolutely no tendency to make any significant fact or opinion in this case more or less probable. The evidence should thus be precluded under Fed. R. Evid. 401 & 402.

Even assuming the evidence had any relevance, its probative value would be substantially outweighed by the danger of unfair prejudice against Defendants. The jury could improperly infer Defendants' fault in other claims or cases and presume a greater probability of liability in this case, which is based on facts and legal principles which are substantially, or wholly, unrelated to other claims against Defendants. Plaintiffs' interjection of such evidence would thereby unfairly prejudice Defendants, confuse the issues in this case, and mislead jurors. Admission of such evidence would also unnecessarily prolong trial for Defendants to rebut the evidence, which could result in a series of mini-trials concerning the relevancy and outcomes of each prior lawsuit, verdict, judgment, settlement or contract. *See Blancha v. Raymark Industries*, 972 F.2d 507, 516

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

69

1804815.v1

(3d Cir. 1992) ("Evidence may be more likely to confuse the issues or mislead the jury where its admission would lead to litigation of collateral issues and thereby create a side issue that might distract the jury from the main issues."). The evidence should therefore be excluded under Fed. R. Evid. 403 as well.

## B.  Such Evidence, If Offered To Show Propensity To Act, Is Impermissible

To the extent Plaintiffs attempt to offer the foregoing as propensity evidence, such would be inadmissible. *See* Fed. R. Evid. 404.   Rule 404(b) permits "other acts" evidence if: 1) there is sufficient proof for the jury to find that the defendant committed the other act; 2) the other act is not too remote; 3) the other act is introduced to prove a material issue in the case; and 4) (in some cases) the other act is similar to the offense charged. *Duran v. City of Maywood*, 221 F.3d 1127, 1132-33 (9th Cir. 2000).  However, even if all four conditions are met, the evidence may still be excluded if the danger of unfair prejudice substantially outweighs its probative value. *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007); Fed. R. Evid. 403.  Without a proper showing of the foregoing by Plaintiffs, and considering the unfair danger of prejudice to Defendants, the evidence must be excluded. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300 (11th Cir. 1999) (party offering the evidence has burden of laying the proper foundation for evidence, and admissibility must be shown by a preponderance of the evidence).

## C.  To The Extent Plaintiffs Seek To Introduce The Evidence For Purposes Of Assessing Punitive Damages, Such Would Be Impermissible

Defendants anticipate Plaintiffs will attempt to introduce such evidence for purposes of influencing punitive damages awarded by jurors.  Such result would be impermissible because punitive damages may not be awarded to punish and deter conduct that bears no relation to Plaintiffs' harm. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).  Furthermore:

> A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages.  A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business.  Due process does not permit courts, in the calculation of

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

70

1804815.v1

1    punitive damages, to adjudicate the merits of other parties' hypothetical claims
     against a defendant under the guise of the reprehensibility analysis.

2    *Id.* at 422-23.  The evidence should also be precluded on this ground.

3    **D. Evidence of Other Corizon Contracts And Reference To Corizon As "Foreign"
         Should Be Excluded Because They Are Irrelevant, Unduly Prejudicial, And
4        Would Waste Time**

5          Defendants also anticipate Plaintiffs will attempt to reference or introduce evidence of

6    Corizon's contracts with other governmental entities, including out-of-state contracts, and the

7    amounts of those contracts, and will allude to Corizon as a "foreign" corporation.  The only

8    Corizon contract at issue in this case is the one between Corizon and Alameda County.[6]  Evidence

9    of Corizon's other contracts would have no tendency to make any material fact in this case more or

10   less probable, and are thus irrelevant and should be excluded.  *See* Fed. R. Evid. 401, 402.

11         Furthermore, admission of such evidence, particularly the amounts of Corizon's other

12   contracts and reference to Corizon as a "foreign" corporation, would pose a danger of unfair

13   prejudice to Defendants by invoking jurors' anti-corporate sentiments, confusing the issues,

14   misleading the jury, and wasting time.  The danger of unfair prejudice would be especially

15   substantial should punitive damages come into question, in which event the amount of Corizon's

16   other contracts could improperly skew jurors' perception of Corizon's financial condition or degree

17   of reprehensibility.  Evidence of Corizon's other contracts should thus be precluded.  *See* Fed. R.

18   Evid. 403.

19         **E.  To The Extent The Evidence Constitutes Hearsay, It Should Be Excluded.**

20         To the extent that evidence of other claims, lawsuits, judgments, verdicts, settlements or

21   contracts involving Corizon or its employees constitutes inadmissible hearsay, particularly if it is

22   elicited from witnesses, parties, or attorneys who were not involved in or witness to the incident, it

23   should also be excluded.  *See* Fed. R. Evid. 801-803.

24

25   _____
     [6] Defendants do not object to admission of the Corizon-Alameda County contract into evidence, with exception of the
26   amount of the contract, which is only admissible in the event the bifurcated proceedings enter into the punitive
     damages phase.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

### III. <u>**CONCLUSION**</u>

Evidence of other lawsuits, verdicts, judgments, settlements, or contracts involving Corizon or its employees, including Dr. Orr, as well as references to Corizon as a "foreign" corporation, are not relevant to the case, would substantially prejudice Defendants, confuse and mislead the jury, waste time, unfairly influence a punitive damages award, constitutes inadmissible hearsay, and is inadmissible.   For the foregoing reasons, Defendants' Corizon and Dr. Orr request an order precluding Plaintiffs' attorneys from eliciting any testimony concerning such evidence from any witness, and to prevent such inadmissible evidence from being introduced or suggested to the jury by any means, such as making statements or offers of proof or asking questions within the hearing of the jury.

**4.   <u>DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 4 TO EXCLUDE REFERENCE TO DR. ORR'S SUPERVISION OF MS. SANCHO</u>**

### I.   <u>**INTRODUCTION**</u>

Defendants Dr. Orr and Corizon request an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to Dr. Orr's purported responsibility for hiring, training, supervising, and/or terminating Ms. Sancho.   As the Regional Medical Director for Corizon, Dr. Orr had no involvement in the employment of individual nurses.   This purported evidence lacks foundation, is irrelevant, unduly prejudicial, will confuse the issues, mislead the jury and waste time.   Fed. R. Evid. 104, 401, 402, 403,

### II.   <u>**ARGUMENT**</u>

During the relevant time period (August 2010), Dr. Orr served as Corizon's (then PHS) Regional Medical Director.   Depo. of Dr. Orr, PMK (Exh. 2 to Hudgins Decl.), 16:3-5.   Dr. Orr had no responsibility for the individual supervision, hiring or firing of nurses, which was the responsibility of the Director of Nursing, who reported to Corizon's Health Services Administrator.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

72

1804815.v1

*Id.*, 33:8-11; Depo. of Dr. Orr (Exh. 1 to Hudgins Decl.), 30:20-21; *see* Corizon Reporting Chart (Exh. 9 to Hudgins Decl.).  Thus, Dr. Orr had no direct supervisory responsibility over Ms. Sancho, an L.V.N.  In fact, he was not consulted or informed of Ms. Sancho's termination in the normal course of business.  Exh. 1, 12:7-22; 30:22-25; Exh. 2, 13:1-3.

Therefore, any evidence which would suggest that Dr. Orr was in anyway directly involved in or responsible for Ms. Sancho's supervision, training, hiring or firing would lack foundation and would be irrelevant, and should be excluded.  *See* FRE 104, 401, 402.

Even assuming the evidence had any probative value, admission of it would be unduly prejudicial to Dr. Orr by confusing the issues, misleading the jury, and wasting time to abate the confusion, and should therefore be excluded on these grounds as well.  *See* FRE 403.

## III. **CONCLUSION**

For the foregoing reasons, the court should enter an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to Dr. Orr having responsibility for hiring, supervising, training, and/or terminating Ms. Sancho.

**5. DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 5 TO EXCLUDE CORIZON EMPLOYMENT ARBITRATION BRIEF AND DECISION**

## I. **INTRODUCTION**

Defendants Dr. Orr and Corizon request an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to:

1.   The arbitrator's award or decision in *SEIU-United Healthcare Workers-West, Complainants, and Corizon (Prison Health Services), Respondent, Re Termination of Zelda Sancho*;

2.   Employer's Post Hearing Brief, dated September 26, 2011, in the arbitration in *SEIU-United Healthcare Workers-West, Complainants, and Corizon (Prison Health Services), Respondent, Re Termination of Zelda Sancho*

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

73

1804815.v1

3.     Both documents are hearsay as to Dr. Orr, who was not a party to the employment arbitration.

The information Defendants seek to exclude relates to employment litigation between employee Zelda Sancho, L.V.N., and her former employer, Prison Health Services (the predecessor of defendant Corizon Health, Inc.), following Nurse Sancho's termination. The termination post-dated the underlying incident in this lawsuit and was based on a number of grounds.

Presentation of, or reference to, Corizon's brief and the arbitrator's decision would not serve a legitimate purpose in this case.  Plaintiffs should be precluded from referring to it or attempting to elicit testimony regarding it.

## II.  <u>ARGUMENT</u>

Evidence is appropriately excluded when it is (1) irrelevant or (2) its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time . . . ."  Fed. R. Evid. 402-403.  The subject information is not relevant to the issue in this case.  Fed. R. Evid. 402-403.  Even if it were, its probative value is substantially outweighed by the various dangers that Rule 403 is intended to prevent.

Furthermore, statements by an arbitrator in another case are inadmissible hearsay.  Fed. R. Evid. 801-802.

### A.  The Arbitration Decision

The arbitration decision should not be communicated or referred to in any way to the jury.  First, the decision and statements therein are irrelevant to the issues in this case.  Fed. R. Evid. 401, 402.  The legal issue in the arbitration was different from the legal issue here. In the arbitration, the issue was whether Zelda Sancho, L.V.N., was properly terminated from her employment, not whether she or the other defendants acted under color of law or whether she deprived the decedent of constitutional rights.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

Second, the arbitration decision is hearsay.  Fed. R. Evid. 801-802; *U.S. v. Sine,* 493 F.3d 1021, 1024, 1035-1037 (9th Cir. 2007).  In *Sine, supra,* the Court of Appeals held that a judgment is hearsay to the extent it is offered to prove the truth of the matters asserted therein, and "even more plain that the introduction of discrete judicial factfindings and analysis underlying the judgment to prove the truth of those findings and that analysis constitutes the use of hearsay."  (*Ibid.*)  (This is not to say that the decision has the same force and effect as a judgment.  In fact, the decision was not converted to a judgment.)

Third, reference to the decision would create an undue risk of prejudice.  Fed. R. Evid. 403; *U.S. v. Sine,* 493 F.3d 1021, 1024, 1033-1035 (9th Cir. 2007) (cross examination of defendant regarding factfinding and derogatory character assessments of District Court judge in earlier related proceeding "created a substantial risk that the jury would pay undue and unwarranted attention to the strongly adverse assessment of a figure, the Ohio judge, who never appeared in the courtroom but who the jury likely assumed had both authority and expertise with regard to determining the true course of events and to making credibility determinations"); *see also Faigin v. Kelly,* 184 F.3d 67, 80 (1st Cir. 1999); ("[C]ourts, recognizing the attendant danger of jury confusion and unfair prejudice, frequently have approved the exclusion of judicial findings, convictions, and similar evidence on Rule 403 grounds."); *id.* ("A lay jury is quite likely to give special weight to the judicial findings merely because they are judicial findings."); *Amantea-Cabrera v. Potter,* 279 F.3d 746, 749 (9th Cir. 2002) (in Title VII discrimination case, exclusion of EEOC order concluding that discrimination had occurred proper under FRE 403 because of possible prejudicial effect on jury); *Nipper v. Snipes,* 7 F.3d 415, 418 (4th Cir. 1983) ("judicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury" (internal quotation marks omitted).

Fourth, reference to the decision would result in a waste of time.  Fed. R. Evid. 403. It would require examination of the details of the underlying case in order for defendants to

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

explain the meaning of the statements made in the award, particularly if Plaintiffs were to refer only to select excerpts.

**B. The Employer's Arbitration Brief**

The employer's arbitration brief should be excluded because it is irrelevant. Fed. R. Evid. 401, 402. The issue in the arbitration is different from the issue here. In the arbitration, the issue was whether Zelda Sancho, L.V.N., was properly terminated from her employment, not whether she or the other defendants acted under color of law, whether she deprived the decedent of constitutional rights or breached the standard of care.

The brief should also be excluded because presenting it or referring to it before the jury would create undue risk of prejudice, which is to say that any probative value is substantially outweighed by the danger of its prejudicial effect. Fed. R. Evid. 403. Statements made in legal documents in other cases carry an undue weight. What is more, the danger of undue prejudice is also particularly great if the document is cited in excerpts.

Finally, the brief should be excluded because permitting the plaintiffs to present it or refer to it before the jury would require undue consumption of time to allow for Defendants to explain the significance and context of the document. Fed. R. Evid. 403. To allow a replay of the employment arbitration in this case would be a waste of time and judicial resources.

### III. **CONCLUSION**

For the foregoing reasons, the court should enter an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to:

1.  The arbitrator's decision or award in *SEIU-United Healthcare Workers-West, Complainants, and Corizon (Prison Health Services), Respondent, Re Termination of Zelda Sancho*;

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

2.  Employer's Post Hearing Brief, dated September 26, 2011, in the arbitration in *SEIU-United Healthcare Workers-West, Complainants, and Corizon (Prison Health Services), Respondent, Re Termination of Zelda Sancho*

Finally, both documents are hearsay as to Dr. Orr, who was not a party to the employment arbitration.

## 6.  DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 6 TO EXCLUDE MR. HARRISON'S HEARSAY STATEMENTS ABOUT HIS ALLEGED PLAN TO DETOX IN JAIL

## I.  INTRODUCTION

Defendants Dr. Orr and Corizon request an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to statement(s) by decedent Martin Harrison to his children, family or friends, in words or effect that when he was picked up by the police for failing to appear at his DUI trial, he planned to detox from drinking in jail.

This purported evidence is irrelevant and it is hearsay.  To the extent it has any probative value, it is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time . . . ."

## II.  ARGUMENT

The purported statements should be excluded because they are hearsay.  Hearsay is inadmissible pursuant to Rule 802 unless it is subject to an exception. Fed. R. Evid. 801-802.  Here, the statements by decedent, in words or effect, to plaintiffs or others that he intended or planned to go to jail to detox are hearsay.  They are out of court statements made for the purpose of establishing the truth of the statements – that decedent intended to go to jail to detox. Fed. R. Evid. 801.  There is no applicable exception.

Evidence is appropriately excluded when it is (1) irrelevant or (2) its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time . . . ."  Fed. R. Evid. 402-403.  The subject information is not relevant to the issue in this case. Fed. R. Evid. 402-403.  Even if

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

it were, its probative value is substantially outweighed by the various dangers that Rule 403 is intended to prevent.  Fed. R. Evid. 403.

Plaintiffs might seek to introduce or refer to the purported statement(s) by way of a retained expert, Dr. Mooney.  That is, they may assert the expert relied on such statement(s).  But, that effort to circumvent the hearsay rule is unavailing.  Rule 703 permits admission by a plaintiff of such otherwise inadmissible hearsay statement(s) only if (1) experts in the particular field would reasonably rely on such kinds of statements in forming an opinion on the subject; and (2) only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury ***only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect***.

Fed. R. Evid. 703 (emphasis added).

Thus, the burden is the inverse of that established by Rule 403.  Here, the burden is on the proponent of the evidence to demonstrate that the probative value *substantially* outweighs its prejudicial effect.

Plaintiffs cannot meet this burden.  Here, the prejudicial effect would be significant – it is the statement of a decedent regarding his purported effort to "detox," which is prone to be emotionally prejudicial.  The probative effect is minimal.  The purported statement(s) are recounts of decedent by family members and plaintiffs in the action, and were recounted only after the underlying incident occurred.   What is more, although Dr. Mooney may testify that *she* reasonably would rely on the hearsay statements relayed to her by the decedent's children is irrelevant.  There is no evidence that such statements of limited probative value are reasonably relied on by experts in the field in forming such opinions.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

### III. **CONCLUSION**

For the foregoing reasons, the court should enter an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to statement(s) by Martin Harrison to his children, family, friends or others, in words or effect that he planned to detox in jail.

## 7. **MOTION IN LIMINE NO. 7 TO EXCLUDE HEARSAY BY DECEDENT THAT HIS SON WAS HIS "BEST FRIEND"**

### I. **INTRODUCTION**

Defendants Dr. Orr and Corizon request an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to:

1.  Alleged statement(s) by Martin Harrison that Martin Harrison, Jr. (plaintiff) was his best friend.

2.  An assertion that Martin Harrison, Jr., was the decedent's best friend.

This purported evidence is irrelevant. (Fed. R. Evid. 401-402.) It is also hearsay. Fed. R. Evid. 801-802.

### II. **ARGUMENT**

The purported statements should be excluded because they are irrelevant. Whether decedent Martin Harrison's best friend was Martin Jr. has no probative value on any issue. Who decedent considered to be his best friend does not matter.

The purported statements should also be excluded because they are hearsay. Hearsay is inadmissible pursuant to Rule 802 unless it is subject to an exception. Fed. R. Evid. 801-802.

Here, the statements by decedent, in words or effect, that his best friend was Martin Harrison, Jr. are hearsay. They are out of court statements made for the purpose of

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

79

1804815.v1

establishing the truth of the statements – that decedent's best friend was Martin, Jr.  Fed. R. Evid. 801.  Even if there were statements by decedent, in words or effect that he was Martin Jr.'s best friend, the statements are still hearsay.  There is no applicable exception.

In any event, even if the statement(s) were not hearsay, its probative value is substantially outweighed by the various dangers that Rule 403 is intended to prevent.  Fed. R. Evid. 403.

### III. <u>CONCLUSION</u>

For the foregoing reasons, the court should enter an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to statement(s) by Martin Harrison that Martin Harrison, Jr. was his best friend, or any assertion that the decedent considered his son his best friend.

**8. <u>DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 8 TO EXCLUDE EVIDENCE OF CORIZON'S ALLEGED FAILURE TO PRODUCE MENTAL HEALTH RECORDS</u>**

### I.   <u>INTRODUCTION</u>

Defendants Dr. Orr and Corizon request an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to Corizon's purported "failure" to produce a Criminal Justice Mental Health (CJMH) chart note authored by Defendant Megan Hast, M.S.W., a CJMH employee, to Plaintiff's counsel. Dr. Orr and Corizon further ask that Plaintiffs be prohibited from cross-examining Lenore Gilbert (a Corizon records custodian) regarding her or any other Corizon employee's purported "failure" to provide this CJMH chart note (which Plaintiffs ultimately obtained from the County). Plaintiffs' notion of a Corizon "failure" to produce the note in response to an alleged request for mental health records is baseless because the note is owned and the original is maintained by CJMH – a County entity over which Corizon lacks control.  References to any purported failure by

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

80

1804815.v1

a Corizon employee would be irrelevant, lack foundation and pose a substantial danger of prejudice and wasted time.  Fed. R. Evid. 104, 401, 402, 403.

## II. **FACTS**

On October 4, 2010, Gina Altomare, a former lawyer at Haddad and Sherwin (Plaintiffs' counsel), requested Mr. Harrison's medical, psychotherapy and billing records from Santa Rita Jail Health Information.  Altomare Decl. in Support of MSJ (Doc. 151) (Exh. 3 to Hudgins Decl.), ¶4 & Exh. A thereto (Doc. 151-1, p 2).  Pursuant to standard practice, Corizon Records Custodian, Ms. Gilbert, contacted Ms. Altomare and instructed her to send two separate requests:  one for medical records to Ms. Gilbert's attention at PHS Correctional Healthcare (Corizon's former business name), and a request for psychotherapy records to Sue McCarthy at Criminal Justice Mental Health, a division of Alameda County Behavioral Health Care Services.  *Id.*, ¶5.

On October 12, Ms. Altomare submitted a request for medical and billing records –not mental health records—to Ms. Gilbert.  *Id.*, ¶6 & Exh. B thereto (Doc. 151-2, p. 2).  Ms. Altomare presumably submitted a separate request to CJMH as well, because she received a notice from CJMH dated October 14 stating it had no record of treatment for Mr. Harrison.  Depo. of Lenore Gilbert (Exh. 6 to Hudgins Decl.), Exh. 2 thereto.  On October 15, a Corizon employee copied Mr. Harrison's medical chart and enclosed an accompanying memo which stated, "*If there are mental health records that you are requesting, please request them from Criminal Justice Mental Health. They are responsible for all mental health services.*"   The Corizon employee also inscribed CJMH's phone number on the memo for reference.  *Id.*, 46:12-15 & Exh. 4 thereto.

CJMH is responsible for all mental health services for inmates in County custody.  *See* County policy re access to mental health (Exh. 4 to Hudgins Decl.).  Although CJMH manages its own mental health files, copies of certain records are placed in a separate section of an inmate's complete medical record which are not considered to be part of the medical chart.  *See* PHS/Corizon policy re medical records (Exh. 5 to Hudgins. Decl., ¶6) ("*Mental health records are maintained within the complete medical record but separate and distinct from medical, dental, and*

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

81

1804815.v1

*NTP records.*").   Corizon does not own or control County inmate mental health records, and therefore lacks the authority to produce such records, which Ms. Gilbert has conveyed to Plaintiffs' counsel.  Exh. 6, 36:12-37:2, 39:12-13, 43:9-14, 45:21-46-2, 51:3-10, 57:5-13.

Accordingly, Corizon did not copy Ms. Hast's note, a CJMH record, for Plaintiffs' counsel in October 2010.  *Id.*, 36:12-37:2.  Further, Corizon has no control over CJMH's handling of mental health records requests but would have expected CJMH to provide its own records.  *Id.*, 43:9-13, 51:8-10.  Plaintiffs' counsel is upset that CJMH did not produce the original.  This is a CJMH issue, not a Corizon issue.  Nonetheless, the County subsequently produced Mr. Harrison's medical record in its initial disclosures on November 21, 2011, which included Ms. Hast's note, which Plaintiffs had not previously received from CJMH.  Hudgins Decl., ¶18.  Ms. Hast's deposition was taken 8 months later and Ms. Hast was asked about the note.  *See generally*, Depo. of Megan Hast, (Doc. 153-31).  Thus, there has been no prejudice to Plaintiffs.  Plaintiffs take issue with Corizon's non-production of that CJMH record, despite its lack of authority to do so.

## III. **ARGUMENT**

### A. **Such Evidence Lacks Foundation And Is Irrelevant Because Corizon Does Not Own Or Control Inmate Mental Health Records And Had No Authority to Disclose Such Records**

Plaintiffs allege Corizon "failed" to produce Mr. Harrison's mental health records in October 2010.  Corizon's policy dictates mental health records, even if maintained in a patient's complete medical chart, are "separate and distinct" from medical records.  *See* Exh. 5.  Ms. Gilbert unequivocally conveyed this to Plaintiffs' counsel during her deposition.  *See* Exh. 6, 36:12-37:2, 39:12-13, 43:9-13 ("*I am not, and Corizon is not, the custodian of a mental health record. We do not produce [CJMH] records. They have their own business practice to produce their own records.*"), 45:21-46-2 ("*The records for Alameda County Behavioral Health Care Services, CJMH records, those records are produced by another provider at the facility. Corizon and I are not the*

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

*custodian of their record. Therefore, I don't, we don't, provide copies, upon request, of those records specifically.*"), 51:3-10, 57:10-13 ("*I am the custodian, of the medical record, not the mental health record. So we do not release this paper, or papers, from Criminal Justice Mental Health.*").  Given Corizon's lack of ownership and authority to produce, any reference by Plaintiffs to Corizon's "failure" to produce mental health records would lack foundation.  *See* Fed. R. Evid. 104(a) and (b).  Such evidence would also have no tendency to make any material fact in the case more or less probable.  *See* Fed. R. Evid. 401.

**B. Such Evidence Also Lacks Foundation And Is Irrelevant Because Plaintiffs' Attorney Concedes She Was Instructed to Request Mental Health Records From CJMH**

Ms. Altomare acknowledged receiving a call from Ms. Gilbert following her October 4 request whereby she was instructed to send a separate request for mental health records to CJMH. Furthermore, a memorandum accompanying the medical records Corizon produced on October 15 included instructions to request mental health records from CJMH.  Given Corizon's specific verbal and written instructions to request mental health records from CJMH on at least two separate occasions, any reference by Plaintiffs to Corizon's "failure" to produce mental health records also lacks foundation and is irrelevant on these grounds.  *See* Fed. R. Evid. 104(a) and (b), 401.

**C. That CJMH Did Not Produce The Original Hast Note To Plaintiffs Is A Circumstance Outside Corizon's Control And Thus Irrelevant**

Plaintiffs frivolously claim Corizon was trying to cover up its liability by removing the CJMH record.  There is no evidence of such impropriety.  To the contrary, the evidence shows Corizon employees followed procedure in handling Plaintiffs' records request and even took the initiative to specifically instruct Ms. Altomare on how to obtain mental health records.  Corizon would have expected that CJMH would produce mental health records pursuant to a proper request.  *See* Exh. 6, 51:7-10.  Nonetheless, the CJMH record was

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

1   subsequently produced by the County in its initial disclosures along with the rest of the

2   medical chart on November 21, 2011, which further undermines Plaintiffs' counsel's claim

3   that Corizon removed the record to conceal its purported liability.  *See* Sherwin Decl. (Doc

4   153), ¶23.

5          Plaintiffs' counsel also had an opportunity to examine the original complete medical

6   chart personally produced by Ms. Gilbert on September 12, 2013 for forensic examination

7   by Patricia Fisher, who was retained by Plaintiffs to investigate their suspicions of

8   Corizon's tampering with the medical records.  Unsurprisingly, the forensic examiner did

9   not opine about the CJMH record.  *See generally*, Fisher Report (Exh. 7 to Hudgins Decl.).

10         Given the stark absence of evidence to support that any Corizon employee did anything

11  other than comply with appropriate procedures in responding to the request for records, any

12  reference to attempted concealment on Corizon's behalf would lack foundation, have no probative

13  value, and be unduly prejudicial.  *See* Fed. R. Evid. 104(a) and (b), 401, 403.

14     **D.  The Notion Of A Failure To Produce Is Irrelevant, Prejudicial, Confusing, And
           Would Waste Time If Plaintiffs Were Allowed To Inject It Into The
15         Proceedings**

16         Even if any evidence supported Plaintiffs' argument that a Corizon employee "failed" to

17  produce records, references to such a purported failure would be inappropriate because the danger

18  of unfair prejudice to Defendants would substantially outweigh any purported probative value, and

19  the evidence would improperly mislead and confuse jurors, and waste time associated with

20  presenting and rebutting the irrelevant evidence as well as abating the resulting jury confusion.  *See*

21  Fed. R. Evid. 401, 403.

22     IV.**CONCLUSION**

23         Defendants Dr. Orr and Corizon request an order in limine precluding any statement,

24  testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that

25  relates, refers, or pertains to or suggest to the jury in any way, a Corizon employee was

26

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

84

1804815.v1

remiss by not producing Ms. Hast's note.

**9. DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 9 TO PRECLUDE PLAINTIFFS FROM REFERRING TO CORIZON'S ALLEGED LIES OR MISREPRESENTATIONS TO THE NCCHC**

## I. INTRODUCTION

These defendants anticipate that Plaintiffs will refer to Corizon and/or its employees as liars: lying to the National Commission on Correctional Health Care (NCCHC) about health training of deputies and using registered nurses in intake and booking.  Further, we anticipate Plaintiffs will state that Dr. Orr permitted misrepresentations to the NCCHC. These references lack foundation, are unproven, and if used in opening statement or in questions to witnesses, are obviously argumentative under FRE 104, 403.

## II. ARGUMENT

**A.  Health Training Of Deputies**

The NCCHC standard is that someone train deputies on health issues.  Corizon's policy, which restates the NCCHC standard, provides:

> "A training program, established or approved by the responsible health authority in cooperation with the facility administrator, guides the health-related training of correctional officers who work with inmates."

Corizon Policy and Procedure on Health Training for Correctional Officers (Exh. 13 to Hudgins Decl.), p. 1; Depo. of  K. Burns (Exh. 14 to Hudgins Decl.), 40:7-14.  The policy does <u>not</u> say that Corizon, or that medical contractors to jails, are required to do the training.  *See generally*, Exh. 13.  Plaintiffs' own expert on the NCCHC standards, Psychiatrist Kathryn Burns, agreed with this in her deposition.  Exh. 14 at 85:14-18; 86:9-11; 87:23-88:3.  Nor does the NCCHC standard require that Dr. Orr do the training, or even have responsibility for the training.  In fact, it states that the "responsible health authority"

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

establishes or approves the training.  The "responsible health authority" is defined in Corizon's Policy J-A-02 as the Health Services Administrator, not the Medical Director.  Exh. 15 to Hudgins Decl.  Dr. Orr was the Medical Director.

The NCCHC Accreditation Report in 2008 stated that the jail properly trained correctional deputies in health-related issues.  2008 NCCHC Accreditation Report (Exh. 16 to Hudgins Decl.), p. 7 (COR 4330).  Plaintiffs' argument is that the deputies were not trained, ergo, someone from Corizon must have lied to the NCCHC.  Even if the first part of their argument that the deputies were not trained were true, Plaintiffs should not be allowed to state as fact that Corizon or Dr. Orr lied or permitted employees to lie to the NCCHC on this issue.

**B.  Registered Nurses In Intake And Booking**

The NCCHC report stated that registered nurses were used in intake and booking.  Exh. 16, p. 10 (COR 4333).  This is a true statement.  Registered nurses were used at the Alameda County Jails in intake and booking.  L.V.N.'s were also used in intake and booking at the Alameda County Jails.  The report does not say that L.V.N.'s are used.  There is no evidence as to why the report is silent on that fact.  There is absolutely no evidence that Corizon influenced the writing of the survey in any way.  It is a conclusion drawn by Plaintiffs' counsel.  They may argue to the jury that they should draw that conclusion, but they should not be permitted to state that conclusion as a fact.

### III.  **DR. ORR'S PERMISSION FOR CORIZON TO LIE**

Plaintiffs argue in their trial brief (Doc. 284) at page 15:20-22 that Dr. Orr "permitted" Corizon to make misrepresentations to the NCCHC.  No facts support that Corizon made any misrepresentations and no facts support that Dr. Orr knew of or permitted any purported misrepresentations.  Again, plaintiffs' counsel may argue to the jury that they should draw that conclusion, but they should not be permitted to state that

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

conclusion as a fact.

## IV.  **CONCLUSION**

In closing argument, Plaintiffs' counsel can draw these conclusions if they so choose, but they cannot draw the conclusions in opening statement or in questions to the witnesses.

## 10. **DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 10 TO EXCLUDE NURSE SANCHO'S FAILURE TO PASS THE REGISTERED NURSE EXAM**

## I.  **INTRODUCTION**

Defendants Dr. Orr and Corizon request an order precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to Nurse Sancho's failure to pass the R.N. exam.  Such evidence would be irrelevant, unduly prejudicial, cause jury confusion, mislead jurors, and waste time.  Fed. R. Evid. 401,402, 403.

## II. **ARGUMENT**

Plaintiffs' operative second amended complaint alleges Nurse Sancho ". . . was at all times herein mentioned employed by Defendant CORIZON as a licensed vocational nurse in Defendant COUNTY OF ALAMEDA's jails, and was acting within the course and scope of that employment."  Doc. 46, ¶17.  Defendant Corizon does not dispute the allegation and offers to stipulate to the fact that Nurse Sancho was a licensed L.V.N. at all times relevant.  Thus, attempts by Plaintiffs' counsel to introduce evidence of Nurse Sancho having taken and failed the California R.N. licensing exam three times would have no tendency to make any material fact in this case more or less probable, and should therefore be precluded.  *See* Fed. R. Evid. 401, 402.

Even if such evidence arguably had any probative value, it would be substantially

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

1   outweighed by the danger of unfair prejudice against Defendants, would confuse and

2   mislead the jury, and would waste time required for defense counsel to abate resulting

3   prejudice.  *See* Fed. R. Evid. 403.

4          Furthermore, to the extent Plaintiffs seek to introduce the evidence to prove

5   character or for another purpose under Fed. R. Evid. 404, it would also be inadmissible

6   because Nurse Sancho's failure to pass the R.N. exam bears no relevance to her

7   competency as an L.V.N., and such evidence would be unduly prejudicial.  *See* Fed. R.

8   Evid. 401, 402, 403.

9                              III. **CONCLUSION**

10          For the foregoing reasons, the court should enter an order in limine precluding any

11   statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness

12   that relates, refers, or pertains to Nurse Sancho having taken and/or failed the California R.N.

13   licensing examination.

14  **11. DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 11 TO EXCLUDE
    ONE OF DEFENDANTS COUNTY OF ALAMEDA'S AND HAST'S TWO EXPERT
15  FORENSIC PATHOLOGISTS**

16                          I.   **INTRODUCTION**

17

18          Defendants Dr. Orr and Corizon Health, Inc. anticipate Defendants Alameda County

19   and Megan Hast ("County Defendants") will elicit cumulative and duplicative testimony

20   favorable to them from two expert witnesses, Vincent J.M. Di Maio, M.D. and Charles V.

21   Wetli, M.D.   Allowing cumulative testimony from two putative experts would be

22   duplicative, argumentative, a waste of time and judicial economy, and prejudicial.

23   Consequently, Defendants respectfully request an order limiting County Defendants to one

24   expert pathologist.

25                           II.  **ARGUMENT**

26          County Defendants' expert witness disclosure includes two retained experts in

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

forensic pathology, Vincent J.M. Di Maio, M.D. and Charles V. Wetli, M.D., and County Defendants have indicated both are expected to give the same testimony. Indeed, during deposition, they both gave essentially the same opinions. The Court has discretion to exclude expert evidence that is cumulative. *See U.S. v. Alisal Water Corp.*, 431 F.3d 643, 660 (2005) (district court did not abuse its discretion by excluding cumulative expert evidence where appellants' expert witness report was neither new or different from evidence appellants had introduced at trial). Further, Fed. R. Evid. 403 excludes relevant evidence if its probative value is substantially outweighed by the risk of unfair prejudice, wasting time, or needless presentation of cumulative evidence.

Here, Drs. Di Maio and Wetli are both board-certified pathologists. They reviewed and based their opinions on the same evidence, offering identical opinions concerning Mr. Harrison's cause of death and County defendants' liability. Presentation of testimony by both experts would not only be cumulative and a waste of time, it would also be prejudicial because County Defendants may gain an advantage with the jury by offering the same testimony by two experts where the other parties will only provide testimony from one expert witness on the matter. Thus, if jurors found each side's experts equally credible, they could decide in County's favor simply because they had two experts testify in their favor. The probative value of presenting the same opinions twice is minimal, while the danger of unfair prejudice, wasted time, and presentation of cumulative evidence is high. The Court should therefore limit Defendant to one expert on the issue of Mr. Harrison's cause of death.

Earlier this year, the County Defendants responded by asking the court to wait to decide this motion until after the first expert had testified. The Corizon Defendants agree to reserve filing a more detailed motion until such time as the County indicates that it will be calling the second causation expert. However, the Corizon Defendants ask the Court to order that the County Defendants give the Corizon Defendants at least 48 hour's notice of

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

89

1804815.v1

the second causation expert's trial appearance, so that a written motion may be made.

### III. CONCLUSION

For the foregoing reasons, the Corizon Defendants respectfully request that this Court order the County Defendants to give the Corizon Defendants at least 48 hours' notice before the trial appearance of their second causation expert, and that the Court allow the Corizon Defendants to bring a motion in limine on the morning of the County Defendants' second causation expert's testimony.

**12. DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 12 TO EXCLUDE OPINION TESTIMONY OF PLAINTIFFS' FORENSIC DOCUMENT EXAMINER, OR IN THE ALTERNATIVE, TO LIMIT HER TESTIMONY TO OPINIONS WITHIN HER AREA OF EXPERTISE ONLY**

### I. INTRODUCTION

Patricia Fisher is a forensic document examiner. Plaintiffs' counsel asked her to examine Corizon's medical chart on Mr. Harrison. Originally Ms. Fisher stated 3 opinions which concerned the following issues:

1. The Sancho screening document
2. "Missing" "Documents"
3. Staple holes (sic)

During the February 2014 exchange of motions *in limine* and oppositions thereto, Plaintiffs withdrew the Fisher opinion about staple holes. Relying on Plaintiffs' withdrawal, this motion will only address the Sancho document and the "missing" "documents."

### II. MS. FISHER'S OPINIONS REGARDING MS. SANCHO'S SCREENING DOCUMENT SHOULD BE EXCLUDED.

**A. Factual Background**

Nurse Zelda Sancho filled out a receiving screening document ("the screener") when she saw Mr. Harrison during the booking process at Glen Dyer Detention Facility (GDDF) in Oakland, California. During this interaction, which she estimates took 3-10 minutes, she

LAW OFFICES RENAUD COOK DRURY MESAROS ONE NORTH CENTRAL SUITE 900 PHOENIX, AZ 85004 TELEPHONE (602) 307-9900 FACSIMILE (602) 307-5853

1804815.v1

took a medical history, weighed him, took his vital signs, and gave him information about asking for medical care while he was in the jail.  Depo. of Ms. Sancho (Exh. B to Grigg Decl.), 58:20-59:3; 59:12-14; 66:7-11; Medical Intake Screening Forms (Exh. 12 to Hudgins Decl.), COR 12.  Nurse Sancho testified that as she asked Mr. Harrison questions, she assumed he was going to tell her he had a history of alcohol withdrawal, for which she was going to put him on CIWA.  Exh. B, 80:1-20.  (CIWA is a monitoring protocol for people who might develop signs and symptoms of alcohol withdrawal).  In other words, Nurse Sancho anticipated Mr. Harrison's response to a question she intended to ask.  Nurse Sancho wrote on the screener "c hx ETOH w/drawal" (which translates to "with history of alcohol withdrawal") and "CIWA" (which is an acronym for a tool for monitoring potential signs and symptoms of alcohol withdrawal).  Nurse Sancho testified she crossed out the words "with history of alcohol withdrawal" and wrote the word "error" over the acronym "CIWA" upon further questioning of Mr. Harrison.  Exh. B, 80:1-8; 125:1-8; 126:11-14. She asked Mr. Harrison several times if he had a prior history of adverse effects from withdrawal from alcohol and he denied it several times.  *Id*. 126:1-21.  In essence, he convinced her that he had had no prior problems with abstinence.

## B. Plaintiffs' argument

Plaintiffs' counsel now want to argue that Nurse Sancho's screener was nefariously tampered with, after the fact, either by Nurse Sancho, or by some other unknown, but crooked, Corizon employee, to "cover up" the alleged mistake that Nurse Sancho made by not following Corizon's policy and putting Mr. Harrison on the CIWA monitoring protocol. Their hope is that this will suggest to the jury that Corizon is a bad company with bad people which justifies a large punitive damage award.

## C. **Ms. Fisher's Testimony On The Issue of the Line Out and "Error" Written on the Sancho Screener is Unnecessary**.

Ms. Fisher's methodology for ascertaining that the line out and "error" notation were

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

not written at precisely the same time is based on technology she employs to examine documents.  Defendants, for purposes of this motion, do not argue against her methodology here.  Rather, we argue that her opinion is unnecessary and will not assist the jury.

The methodology is essentially this.  When a document lies on top of another document, writing on the top document makes an imprint on the document underneath it. (This phenomenon is routinely captured in movies in which the detective runs the side of a lead pencil over a note pad on a desk next to a telephone in order for the graphite to fill in the imprint left by the top sheet of the note pad which has been torn off.  Voila, the imprint from the top piece of paper, whether it be a phone number or an address, sets the detective off on a new tangent.)  Ms. Fisher merely uses a machine which creates the same effect.

From Ms. Fisher's examination, it appears that at least some of the time that Nurse Sancho was writing on her screener while interviewing and examining Mr. Harrison, her screener apparently was on top of the Deputy's initial screener.  Exh. 12, COR 11-12; Fisher Depo. (Ex. 11 to Hudgins Dec.), 54:1-24.  Ms. Fisher reaches this conclusion because some of Nurse Sancho's notations, including circles, numbers and letters, written on her screener appear as imprints on the Deputy's screener.  So far so good.  If this expert testimony actually went somewhere and assisted the jury on a *disputed* issue in this case, it would be the type of testimony an expert could give.

Based upon her examination of the imprints on the Deputy's screening form, Ms. Fisher opines that Nurse Sancho's line out of "with history of alcohol withdrawal" and her "error" notation above the "CIWA," were written at a different "time" than the "hx ETOH," and the "CIWA" notes.  Fisher Rept., (Exh. 7 to Hudgins Dec.) p. 2, and Exh. D-1a, D-1b thereto ("the written word 'error' does not line up with the 'CIWA' indicating that the cross-out was written at a later time and the word "error" was not written simultaneously with the paper in the same position as the "CIWA" letters).

Ms. Fisher's proffered testimony goes to an *undisputed* fact, not a disputed fact.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

There is no undisputed fact that Ms. Fisher's testimony would assist the jury in deciding, because:

    1.  Nurse Sancho admits she lined out "with history of alcohol withdrawal."

    2.  Nurse Sancho admits that she wrote in "error."

    3.  Nurse Sancho admits that she did not put Mr. Harrison on the CIWA monitoring protocol.

    4.  Corizon will stipulate that the CIWA monitoring protocol was never instituted.

Ms. Fisher's opinion, that Nurse Sancho's inter-delineation was "sequential, during the same interaction," is consistent with Nurse Sancho's testimony that she wrote "with history of alcohol withdrawal" and "CIWA," then crossed them out and wrote in "error." Exh. 11, 56:11-57:2; 118:25-119:10; Ex. B, 80:1-9; 82:20-23. This fact is not in dispute. It is also undisputed that CIWA was not initiated for Mr. Harrison. Moreover, the Pretrial Conference Statement (Doc. 188) lists 29 disputed facts and an additional 32 additional disputed facts that defendants dispute. Whether Nurse Sancho lined out "with history of alcohol withdrawal" or wrote "error" over CIWA or did not put Mr. Harrison on a CIWA monitoring protocol are not among them. They likewise are not included in Plaintiffs' Claims. Defendants' Claims include "[Nurse Sancho] did not institute withdrawal monitoring. Doc 188, p. 12, line 14. Ms. Fisher's opinion testimony is thus irrelevant and will mislead the jury. *See* Fed. R. Evid. 104, 401, 403, 702.

Assuming, arguendo, Plaintiffs could make a showing of relevancy, this topic still must be excluded from trial. Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Allowing Plaintiffs to put on expert testimony about an *undisputed* fact will confuse and mislead the jury. *See* Fed. R. Evid. 104, 401, 402, 403. This will create the appearance of a disputed issue where none exists and will prejudice Corizon.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

93

1804815.v1

III. **MS. FISHER'S TESTIMONY REGARDING "MISSING" "DOCUMENTS" IS BARRED BY RULES 104, 401, 402, 403, 702, 703 AND *DAUBERT*.**

Ms. Fisher's testimony as to "missing" "documents" is not admissible, because it does not meet the requirements of Rules 104, 401, 402, 403, 702, 703, and *Daubert*.  An expert's opinion must be excluded when it is based on assumptions which are speculative and not supported by the record. Fed. R. Evid. 702(b); *Tyger Constr. Co. v. Pensacola Constr. Co.*, 29 F. 3d 137, 143 (4th Cir. 1994), citing *Eastern Auto Distribs. Inc., v. Peugeot Motors of Am.*, 795 F. 2d at 329, 331 (4th Cir. 1986).  *See also*, *Daubert,* 509 U.S. at 589; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999).

Ms. Fisher's opinion lacks the appropriate foundational basis, which is required to permit her to testify as an expert at trial.  Fed. R. Evid. 104, 401, 402, 403, 702; *Daubert*, *supra.*  Ms. Fisher scanned and magnified medical records associated with Mr. Harrison's detention at the Alameda County Jails, searching for "imprints" of other writings.  Based upon the imprints, and snatches of legible writing, Ms. Fisher opines that five "documents" were not produced for examination.  Exh. 7, pp. 3-4; Exh. 11, 57:14-18 (corrects her report by testifying that 5 rather than 6 "documents" were not produced).  Ms. Fisher, by her own admission, "made no assumption other than I cannot find a corresponding document."  Exh 11, 74:15-18.  Even this testimony is misleading, as it elevates to "document" a writing that could be extraneous.

Ms. Fisher does not have the education, training or experience to opine that a medical record is missing from a medical chart.  During her deposition, Ms. Fisher admitted she:

- has no knowledge about how Mr. Harrison's medical chart was gathered or maintained, or about how medical documents are gathered, maintained and preserved by Corizon  (Exh. 11, 34:5-36:1, 38:23-39:9, 40:8-41:7, 43:1-10);

- has no opinion about whether Mr. Harrison's medical records were complete or not (*Id*., 12:21-24);

- does not know if the "missing" writings were medical records or not (*Id.*, 74:15-18, 76:20-77:8, 80:6-18, 81:12-16, 88:5-9);

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

- • does not know if the "missing" writings were required by law or Corizon policy to be preserved (*Id.*, 58:20-23, 74:8-14, 77:12-14, 80:19-21, 88:10-12);

- • does not know if the "missing" writings related to Mr. Harrison or not (*Id.*, 68:15-69:2, 87:20-88:4);

- • does not know the type/content of alleged "missing" writings, including whether they have any relevance to the case, were sticky notes, or even employee notes not part of the chart, or whether they were ever part of the chart (*Id.*, 57:19-58:7, 60:2-61:1, 82:5-7, 88:13-15).

Plaintiffs do have a medical expert in this case, the Psychiatrist, Dr. Burns, who arguably could have the expertise to testify about whether a medical chart is missing medical records. Tellingly, Dr. Burns' Rule 26 report is silent as to whether the Corizon chart is missing medical records. Nor is there anything in Dr. Burns' declaration filed after her Rule 26 report. Nor is there anything in Dr. Burns' deposition about this issue. Hudgins Decl., ¶19.

Indeed, no medical expert witness has testified that Mr. Harrison's medical chart is missing any medical records. *Id.*

Further, Plaintiffs deposed Lenore Gilbert, Custodian of Records for Corizon, *twice*, for a total of 9 hours, yet did not examine her regarding "missing" medical records from the Corizon medical chart. *Id.*, ¶20. Ms. Fisher's testimony here is pure speculation. She has no expert background to make the assertion that medical records from the chart are missing. It does nothing to assist the jury, but instead misleads and possibly inflames the jury into possibly believing that Corizon has withheld a relevant document. Ms. Fisher's testimony, and counsel's reference to same, must be excluded under Rules 104, 401, 402, 403, and 702.

Allowing Ms. Fisher to testify that "documents were not provided for examination," without the expertise to testify that the documents were actually medical records will leave the jury with an unsupported impression that Defendants withheld medical documents relating to Mr. Harrison. This is prejudice. There is no probative value arising out of Ms. Fisher's testimony. This is exactly the type of testimony Rule 403 is intended to prevent.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." Weinstein, *Rule 702 of the FRE is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991). This testimony of limited to no relevance has the potential to completely and prejudicially mislead the jury into believing that there is some key medical evidence relating to Mr. Harrison that exists but that they do not have, and worse, that Corizon intentionally or negligently withheld it.

Ms. Fisher's opinion is not sufficiently reliable under *Daubert* or Rule 702. The court is the "gatekeeper" for the admissibility of expert testimony, and must assess whether Ms. Fisher's testimony meets the requirements of Federal Rule of Evidence 702. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

"[T]he reliability analysis [required by *Daubert* ] applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion." *Heller v. Shaw Indus., Inc.*, 167 F.3d at 155.

Federal Rule of Evidence 702, as amended in 2000 to incorporate the standards set forth in *Daubert*, requires the court to ensure that expert testimony is not only relevant, but reliable. *Daubert*, *supra*, at 592, 595; Fed. R. Evid. 702, *In re Paoli Railroad Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir.1994), *cert*. denied, 513 U.S. 1190 (1995) (*Paoli II*). A court may exclude expert testimony that does not meet the twin goals of helpfulness and reliability. *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1192 (9th Cir. 2007). When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict. *Brooke Group, Ltd. v.*

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

*Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 242 (1993); *Turpin v. Merrell Dow Pharmaceuticals, Inc.,* 959 F. 2d 1349 (6th Cir. 1991), *cert*. denied, 506 U.S. 826 (1992).

While the focus of the court's analysis must be on principles and methodology, 'not on the conclusions that they generate,' a district court must examine the expert's conclusions in order to determine whether they could reliably flow from the facts known to the expert and the methodology used." *Daubert*, 509 U.S. at 595. *See also*, *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999).   Here, Ms. Fisher's conclusions do not reliably flow from the facts known to her because she has, admittedly, expertise to testify medical records existed that were not produced (other than counsel's fervent wish and her own speculation).   For all of the above reasons, Ms. Fisher's testimony fails the reliability test under both Rule 702 and *Daubert*, and her testimony at trial must be barred.

## IV. **CONCLUSION**

Plaintiffs cannot meet their burden to show that Ms. Fisher's testimony should be admitted. Ms. Fisher's testimony regarding Nurse Sancho's screener is irrelevant because it "explains" an undisputed fact and it will prejudice Corizon and Dr. Orr if admitted.   Testimony relating to this, and any references by counsel to same, should be excluded pursuant to Rules 104, 401, 402, 403, 702, and *Daubert*.

Ms. Fisher's testimony regarding "missing" "documents" from the Corizon medical chart is unreliable, and its prejudicial effect is outweighed by any possible probity.   Testimony relating to "writings not provided," "missing" or "withheld" documents and any references by counsel to same or to Corizon's alleged failure to produce same, should be excluded pursuant to Rules 104, 401, 402, 403, 702 and *Daubert*.

These defendants believe the Court can make a determination on the facts presented. Should Plaintiffs refute this position, these defendants request an evidentiary hearing outside the presence of the jury so that Ms. Fisher's lack of expertise to give missing medical records testimony can be made a part of the record.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

Finally, if Ms. Fisher is allowed to testify, it will impede judicial economy. Corizon will be required to call eight to twelve witnesses from its trial witness list, as well as additional witnesses in rebuttal. This court should not be required to expend trial time and court resources on an undisputed issue where expert testimony provides no benefit. Corizon made its estimate of trial time needed to try the case based on the fact that Ms. Fisher would be excluded as a witness. Should the court deny this motion, Corizon respectfully requests that 4.5 hours be added to Corizon's allotted time at trial.

**13. DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 13 TO EXCLUDE REFERENCE TO FACTS, ISSUES, OUTCOMES, ETC., IN DEFENSE EXPERTS' PRIOR CASES**

## I.   INTRODUCTION

Defendants Dr. Orr and Corizon request an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to:

1.   *Feliciano v. Serra* (U.S.D.C. P.R. 2004) in which the instant Defendants' expert Robert D. Jones, M.D., testified; including, without limitation, that a judge in the *Feliciano* case criticized certain of Dr. Jones's opinions;

2.   that any defense expert provided expert testimony in cases in which the party for whom he was testifying ultimately paid a settlement or had a judgment entered against them;

3.   that any defense expert provided expert testimony for parties who allegedly engaged in bad acts;

4.   the results of any case in which any defense expert provided expert testimony;

5.   any findings of fact or outcomes in any case in which any defense expert provided expert testimony;

6.   any statements by any defendant in any case in which any defense expert provided expert testimony; and,

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

98

1804815.v1

7.      the facts of any case in which the expert testified, to the extent that those facts are irrelevant to the facts in the case at bar.

None of this information would serve a legitimate purpose in this case. Plaintiffs should be precluded from referring to it or attempting to elicit testimony regarding it.

This does not exclude Plaintiffs from addressing in cross-examination inconsistent testimony on the same point in the instant case and in a prior case.

## II. <u>ARGUMENT</u>

Evidence is appropriately excluded when it is (1) irrelevant or (2) its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time . . . ." Fed. R. Evid. 402-403. The subject information is not relevant to the issue in this case. Fed. R. Evid. 402-403. Even if it were, its probative value is substantially outweighed by the various dangers that Rule 403 is intended to prevent.

Furthermore, statements by a judge in another case are inadmissible hearsay. Fed. R. Evid. 801-802.

### A. The *Feliciano* Case and Judge's Criticism

Dr. Jones once testified in a trial involving Puerto Rico's Administration of Corrections. See *Feliciano v. Serra*, 300 F.Supp.2d 321 (D.C. Pr. 2004). His testimony in *Feliciano* was unrelated to the issues in this case, and instead concerned compliance with a 1997 consent decree in Puerto Rico's correctional institutions. *See id.*; Jones Depo., 86:25-87:2; 93:6-20 (Exh. 8 to Hudgins Decl.). As noted by Plaintiffs' counsel during Dr. Jones' deposition, the judge in that case criticized certain of Dr. Jones's opinions, writing as follows:

> Although Dr. Jones testified that he understood that the required, close follow-up was being provided, he could not offer a satisfactory explanation of why the most current data at the CHP concerning the HCV [Hepatitis C] epidemic was more than six-months-old (sic), dating back to April of 2003.
>        . . .

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

> After his cross-examination plaintiffs moved to strike Dr. Jones' opinion testimony.  The court declines to do so.  Dr. Jones formally meets the criteria for delivering expert testimony.  After his cross examination, however, the court gives very little credence to those opinions.
> *Feliciano, supra,* at 323, 345, fn. 2.

The *Feliciano* judge's criticisms of Dr. Jones should not be communicated or referred to in any way to the jury.  First, the decision, the criticisms and the fact that they were made are irrelevant to the issues in this case.  Fed. R. Evid. 401, 402.  The facts of the case and the subjects of testimony in *Feliciano* are unrelated to those in the present case.

Second, the criticisms and the decision are hearsay.  Fed. R. Evid. 801-802; *U.S. v. Sine,* 493 F.3d 1021, 1024, 1035-1037 (9th Cir. 2007) (judgment is hearsay to the extent it is offered to prove the truth of the matters asserted therein, and "even more plain that the introduction of discrete judicial fact findings and analysis underlying the judgment to prove the truth of those findings and that analysis constitutes the use of hearsay.")

Third, reference to the criticisms or the decision would create an undue risk of prejudice, which is to say that any probative value is substantially outweighed by the danger of its prejudicial effect.  Fed. R. Evid. 403; *U.S. v. Sine,* 493 F.3d 1021, 1024, 1033-1035 (9th Cir. 2007) (cross examination of defendant regarding fact finding and derogatory character assessments of District Court judge in earlier related proceeding "created a substantial risk that the jury would pay undue and unwarranted attention to the strongly adverse assessment of a figure, the Ohio judge, who never appeared in the courtroom but who the jury likely assumed had both authority and expertise with regard to determining the true course of events and to making credibility determinations"); *see also Faigin v. Kelly,* 184 F.3d 67, 80 (1st Cir. 1999); ("[C]ourts, recognizing the attendant danger of jury confusion and unfair prejudice, frequently have approved the exclusion of judicial findings, convictions, and similar evidence on Rule 403 grounds."); *id.* ("A lay jury is quite likely to give special weight to the judicial findings merely because they are judicial findings."); *Amantea-Cabrera v. Potter,* 279 F.3d 746, 749 (9th Cir. 2002) (in Title VII discrimination

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

100

1804815.v1

case, exclusion of EEOC order concluding that discrimination had occurred proper under FRE 403 because of possible prejudicial effect on jury); *Nipper v. Snipes,* 7 F.3d 415, 418 (4th Cir. 1983) ("judicial findings of fact present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury" (internal quotation marks omitted).

Fourth, reference to the criticism would result in a waste of time. Fed. R. Evid. 403. It would require examination of the details of the underlying case in order for defendants to rehabilitate the witness from the purported impeachment. This would result in a sideshow, or trial within a trial, in order to explain the propriety and reasonableness of Dr. Jones's opinion, to attempt to minimize the prejudice.

**B. The Role Of Defendants' Experts Who Previously Served As Experts For Parties Who Allegedly Engaged in Bad Acts Or Paid Verdicts Or Settlements**

Plaintiffs' attorneys questioning during deposition suggested they will attempt to convey to the jury that Dr. Jones is a bad actor because he has provided expert testimony on behalf of those who allegedly were or were found to have been bad actors, or those who paid verdicts or settlements. This information should excluded for the reasons addressed above. Such a guilt-by-association tactic would serve no legitimate purpose, because the evidence is irrelevant, and it would create an unnecessary risk of prejudice, waste of time, and entail presentation of inadmissible hearsay.

**C. Other References To Prior Cases In Which Defendants' Experts Testified**

For the same reasons addressed above, the Court should exclude testimony and other references to the results, outcomes, findings and statements of defendants in the other cases in which Defendants' experts have testified.

### III. **CONCLUSION**

For the foregoing reasons, the court should enter an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

101

1804815.v1

witness that relates, refers, or pertains to:

       1.    *Feliciano v. Serra* (U.S.D.C. P.R. 2004) in which the instant Defendants' expert Robert D. Jones testified; including, without limitation, that a judge in the *Feliciano* case criticized certain of Dr. Jones's opinions;

       2.    that any defense expert, provided expert testimony in cases in which the party for whom he was testifying ultimately paid a settlement or had a judgment entered against them;

       3.    that any defense expert, provided expert testimony for parties who allegedly engaged in bad acts;

       4.    the results of any case in which any defense expert provided expert testimony;

       5.    any findings of fact or outcomes in any case in which any defense expert provided expert testimony;

       6.    any statements by any defendant in any case in which any defense expert provided expert testimony; and,

       7.    the facts of any case in which the expert testified, to the extent that those facts are irrelevant to the facts in the case at bar.

## 14. DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 14 TO EXCLUDE EVIDENCE OF DR. SCHOENFELD'S EXPERIMENTS INVOLVING ANIMALS

## I.   INTRODUCTION

Defendants Dr. Orr and Corizon request an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to Dr. Schoenfeld's participation in clinical studies involving animals.   Such evidence has no probative value, and its potential prejudicial effect far outweighs any purported relevance to the claims at issue.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

## II. **ARGUMENT**

In 1967, the Journal of Psychoactive Drugs published "Comparative Effects of Mescaline and Amphetamines in Laboratory Animals," authored by Dr. Schoenfeld and colleagues.  The study involved animal experiments conducted at the University of San Francisco.  Depo. of Dr. Schoenfeld (Exh. A to Grigg Decl.), 53:25-54-1.  The specifics of the study are not relevant to any of the claims in this case.  Furthermore, any allusion to Dr. Schoenfeld's involvement with lab testing involving animals would unduly prejudice jurors, particularly those who are proponents of animal rights.  *See Pauley v. Bayer Corp.*, 989 A.2d 918 (Pa. 2010) (denied review of trial court's exclusion of toxicological animal studies in part because "data from the animal studies were highly prejudicial in light of the strong tendency to evoke the jury's natural sympathy for animals" and due to the absence of an offer of proof "as to the probative value of the data from the animal studies")   As such, introduction of such evidence would be improper.  *See* Fed. R. Evid. 401, 402, 403.

## III. **CONCLUSION**

For the foregoing reasons, the court should enter an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to Dr. Schoenfeld's involvement with animal testing for medical research.

### 15. DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 15 TO EXCLUDE REFERENCES TO THE "GOLDEN RULE" AND THE LIKE

## I. **INTRODUCTION**

Defendants Corizon and Dr. Orr request an order in limine precluding any statement, testimony, reference of any sort, by counsel, any party or witness, including exhibit(s), that relates, refers, or pertains to:

> 1.      Any request, implication, or argument that the jury put itself, or should put itself, in the plaintiffs' or decedent's position;

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

2.      any request, implication, or argument that the jury's role is to establish rules or standards of care;

3.      any request, implication, or argument that the jury "send a message" by its verdict; or

4.      any request, implication, or argument that the jury by its verdict can "make a difference" to the quality of care rendered to inmates.

## II.  **ARGUMENT**

The "golden rule" argument, asking the jury to put itself in the position of the party, is improper.  "There can be little doubt that suggesting to the jury that it put itself in the shoes of a plaintiff to determine damages is improper argument. This so-called Golden Rule argument has been universally condemned 'because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *Forrestal v. Magendantz,* 848 F.2d 303, 309 (1st Cir. 1988), citation omitted.

Similarly, to suggest the jury's role is to establish rules or standards of care (*i.e.,* what ought to be), and to suggest the jury "send a message" by its verdict also encourages the jury to depart from neutrality and from their function as fact finders.  Any arguments along these lines are improper.

## III. **CONCLUSION**

For the foregoing reasons, the court should enter an order *in limine* precluding Plaintiffs and co-Defendants from making or eliciting any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to

1.      Any request, implication, or argument that the jury put itself, or should put itself, in the plaintiffs' or decedent's position;

2.      any request, implication, or argument that the jury's role is to establish rules or standards of care;

3.      any request, implication, or argument that the jury "send a message"

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

by its verdict;

4.      any request, implication, or argument that the jury by its verdict can "make a difference" to the quality of care rendered to inmates.

**16. DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 16 TO USE ALTERNATE CASE CAPTION AT TRIAL**

## I.   **INTRODUCTION**

Defendants Dr. Orr and Corizon request an order:  (1) to exclude reference to Plaintiff M.H. in any verbal or written communications, correspondence, bulletins, or announcements directed to, or in the presence of, jurors; and (2) to preclude reference by any party or their attorney to M.H. having been a plaintiff in the presence of jurors to avoid undue prejudice to Defendants.

## II.  **ARGUMENT**

The lead plaintiff's name in the case caption is "*M.H., a minor, through his guardian ad litem, Michelle Henshaw.*"  M.H. reached a settlement with all defendants prior to trial. *See* Doc. 100.  Jurors should not hear (especially repeatedly) "M.H." and he should not be referenced as part of the case caption or as a plaintiff because any such reference unnecessarily would create a substantial risk of prejudice for two reasons:

1.      Jurors likely would conclude (correctly) from M.H.'s absence that defendants paid to settle his claims.  This knowledge would create an unnecessary risk of jurors (incorrectly) interpreting the settlement as an admission of liability.

2.      That the caption identifies M.H. as "a minor" likely would conjure the image in jurors' minds of a child who has lost his father.  This could provoke significant sympathy for M.H. and thus bias against those the minor alleged were responsible for his dad's death.

Instead, Defendants request the case be referenced to the jury in short form as:

*Harrison, et al.  v. Alameda County, et al.*

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

Or in full form as:

> JOSEPH HARRISON, KRYSTLE HARRISON, MARTIN HARRISON JR., and TIFFANY HARRISON, all Individually and as Co-Successors in Interest for Decedent MARTIN HARRISON,

> Plaintiffs,

> vs.

> COUNTY OF ALAMEDA, a municipal corporation; GREGORY J. AHERN, in his capacity as Sheriff for the COUNTY OF ALAMEDA; DEPUTIES MATTHEW AHLF, ALEJANDRO VALVERDE, JOSHUA SWETNAM, ROBERTO MARTINEZ, ZACHARY LITVINCHUK, RYAN MADIGAN, MICHAEL BARENO, FERNANDO ROJASCASTANEDA, SHAWN SOBRERO, SOLOMON UNUBUN, all individually and in their official capacities as Deputy Sheriffs for County of Alameda, and MEGAN HAST, A.S.W., CORIZON HEALTH, INC., a Delaware Corporation, HAROLD ORR, M.D., and ZELDA SANCHO, L.V.N.

> Defendants.

This exclusion would apply only during trial proceedings-- to communications, notices, jury instructions, special verdict form, pleadings, correspondence, or other materials to which jurors might be exposed.  It would not affect the case caption for purposes of legal filings or citations to this case.

## III. **CONCLUSION**

Defendants Dr. Orr and Corizon request that for the purposes of trial, the Court order:  (1) M.H. omitted from the case name, and (2) preclusion of reference by any party or their counsel to M.H. having been a plaintiff to avoid prejudice to Defendants.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

**17. DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. 17 TO EXCLUDE REFERENCE TO CORIZON'S POLICIES RE HOSPITALIZATOIN FOR ALCOHOL WITHDRAWAL**

## I. **INTRODUCTION**

Defendants Dr. Orr and Corizon request an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to Corizon's policies and procedures concerning hospitalization for alcohol withdrawal. Neither Dr. Orr nor any Corizon employee had knowledge that Mr. Harrison was detoxing or experiencing withdrawal from alcohol. Defendants thus request an order prohibiting such evidence because Defendants cannot be found deliberately indifferent for something they did not know about. Reference to the policy regarding hospitalization is irrelevant, prejudicial and lacks foundation; it would cause jury confusion and waste time. Fed. R. Evid. 104, 401, 402, 403. This includes testimony by Plaintiffs' expert, Dr. Burns, as well as any other expert.

## II. **ARGUMENT**

At issue in this case is whether Nurse Sancho is deliberately indifferent for failing to place Mr. Harrison on CIWA withdrawal monitoring for potential signs and symptoms of alcohol withdrawal. Not at issue in this case is whether or not Corizon's policy or implementation of its policy for hospitalization of inmates in severe alcohol withdrawal was deliberately indifferent. This is because at no time was it brought to Corizon's or Dr. Orr's attention that Mr. Harrison was experiencing severe alcohol withdrawal. Had Corizon been made aware of Mr. Harrison's condition when Deputy Ahlf moved him to the isolation cell at 3 a.m., it could have had the opportunity to treat his condition by ordering the appropriate detoxification treatment, including hospitalization. However, no such opportunity presented itself here, so any reference to policies or procedures concerning hospitalization for alcohol withdrawal lacks foundation, is irrelevant, and would cause jury confusion and waste time. *See* Fed. R. Evid. 104, 401, 402, 403.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

## A. Neither Corizon Nor Dr. Orr Were Alerted to Mr. Harrison's Condition at 3 a.m. and Therefore The Policy Regarding Potential Hospitalization Was Not Triggered

No one has opined that at the time of Mr. Harrison's August 13 booking and intake screening by Nurse Sancho that he was displaying signs and symptoms of severe alcohol withdrawal.  During the early morning hours of August 16, Mr. Harrison began behaving oddly and Deputy Ahlf placed him in an isolation cell.  No one alerted any Corizon employee that Mr. Harrison was exhibiting bizarre behavior that would suggest he was experiencing severe alcohol withdrawal or that he had been placed in an isolation cell.  Burns Depo. (Exh. 14 to Hudgins Decl.), 50:18-51:2.

In fact, no evidence indicates that any Corizon employee was ever aware that Mr. Harrison was experiencing any adverse effect of alcohol withdrawal at any time during his incarceration.

## B. Evidence of Policies Concerning Hospitalization for Alcohol Withdrawal Is Irrelevant Because Neither Corizon Nor Dr. Orr Had Knowledge That Hospitalization Might Be Indicated

Because Corizon was never aware of Mr. Harrison's condition, it had no opportunity to assess the need for hospitalization.  Along with its policies to guide medical staff in assessing and monitoring a patient's risk for alcohol withdrawal, Corizon's policies set forth specific guidelines for the treatment and observation of a patient manifesting symptoms of alcohol withdrawal.  Only when certain symptoms manifest themselves would hospitalization be ordered.  Corizon's Policy on Intoxication and Withdrawal (Exh. 10 to Hudgins Decl.)  Plaintiffs' expert, Dr. Burns, opined Mr. Harrison was experiencing "some signs of severe alcohol withdrawal" at the time he was placed in the isolation cell.  This is the first evidence she could find that Mr. Harrison was exhibiting severe alcohol withdrawal.  Exh. 14, 48:6-16, 49:1-6, 50:18-51:2.  No evidence suggests Corizon had an opportunity to diagnose Mr. Harrison at that time, therefore any reference to Corizon's policies concerning hospitalization for withdrawal would be irrelevant.  *See* Fed. R. Evid. 401, 402.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

## C. Reference to Hospitalization for Alcohol Withdrawal Would Be Prejudicial, Confusing, And Would Waste Time If Plaintiffs Were Allowed To Inject It Into The Proceedings

Reference to detoxification policies and procedures would be suggestive of what Corizon should have or would have done in the hypothetical event that it or its employees were actually aware of Mr. Harrison's withdrawal symptoms.  This would serve no purpose other than to unduly prejudice the jury against Corizon and Dr. Orr by suggesting that Corizon employees somehow had a duty to intervene and hospitalize Mr. Harrison when they had no knowledge or opportunity to determine that hospitalization was indicated.  Introduction of such evidence would also mislead and confuse the jury as to the issues, and waste time required to mitigate any such confusion.  The evidence should thus be precluded. *See* Fed. R. Evid. 403.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the court should enter an order in limine precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to Corizon's policies concerning hospitalization for alcohol withdrawal.

**18.** <u>**DEFENDANTS DR. ORR AND CORIZON'S MOTION IN LIMINE NO. #18 TO EXCLUDE PORTIONS OF DR. MOONEY'S TESTIMONY**</u>

### I. Introduction

Plaintiffs would like to argue through Dr. Mooney (their addiction expert) that, if Martin Harrison had not died, and instead had detoxed from alcohol in jail, then he would have stopped drinking and had a long and rosy future with Plaintiffs.

Plaintiffs should be precluded from offering any opinion by Dr. Mooney to the effect that the decedent would have discontinued heavy drinking had he not died because such an opinion is speculative, and thus inadmissible.

If Plaintiffs nonetheless were allowed to offer such an opinion, then they should be

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

precluded from offering any opinion to the effect that hypothetical post-treatment discontinuation of heavy drinking would have lasted more than one year.  This is because Dr. Mooney disclosed no opinion that discontinuation would have lasted more than one year, and she admitted during deposition that she had no opinion regarding the likelihood the decedent would have remained abstinent two years following hypothetical completion of a treatment program.

## II.  The Opinion That The Decedent Would Have Discontinued Heavy Drinking Is Speculative And Thus Unreliable And Inadmissible

Federal law requires "that the judge apply his gatekeeping role…to all forms of expert testimony."  *White v. Ford Motor Co*., 312 F.3d 998, 1007 (9th Cir. 2002).  Judges thus must decide if an expert's proposed testimony rests on a reliable foundation or instead simply reflects subjective belief or unsupported speculation.  *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993); *see also* Fed. R. Evid. 702.  "[S]peculative testimony is inherently unreliable."  *Ollier v. Sweetwater Union High Sch. Dist*., 12-56348, at p. 26 (9th Cir. 9/19/14); *see also Diviero v. Uniroyal Goodrich Tire Co*., 114 F.3d 851, 853 (9th Cir. 1997); *Daubert*, 509 U.S. at 590 (noting expert testimony based on mere "subjective belief or unsupported speculation" is inadmissible).

Governing law thus precludes Plaintiffs from offering an opinion by Dr. Mooney to the effect that the decedent would have discontinued heavy drinking for up to one year post-treatment had he not died because such an opinion is based on speculation.

Dr. Mooney's opinion to that effect relies, first, on the assumption that the decedent actually would have entered treatment.  Mooney Depo., 33:25-34:4 (Grigg Decl. Exh. C).  This assumption relies on speculation.  Specifically, Dr. Mooney proposes that the decedent would have entered treatment had he not died because, in the years preceding his death, he reportedly mentioned to Plaintiffs the possibility of discontinuing drinking.  *See id*., 28:19-30:8.  However, she can only speculate as to whether the decedent alluded to the possibility of stopping drinking simply to placate them.  *Id*., 33:25-34:4; *see also id*. at 30:10-12 (admitting some people say,

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

"'Yeah, I'm going to get treatment at some point," and then "just never follow through."); *id*. at 29:16-18 (admitting she has no understanding as to why the decedent never sought treatment).

Dr. Mooney's opinion also relies on the assumption that the decedent actually would have completed a hypothetical treatment program. *See id*. at 33:225-34:4. However, Dr. Mooney can only speculate as to whether the decedent would have completed a hypothetical treatment program. *See*, *e.g*., *id*. at 30:1 ("I can't get inside of his head."); *id.* at 30:10-12.

Because Dr. Mooney's opinion is premised on two layers of speculation, it is "inherently unreliable" and thus inadmissible. *See*, *e.g.*, *Ollier v. Sweetwater Union High Sch. Dist*., *supra*, at 26; see also *Daubert*, 509 U.S. at 590.

Allowing Plaintiffs to use Dr. Mooney as a conduit for their speculative argument also would create a risk of undue prejudice because jurors would be more likely to afford the argument weight if it were cloaked in the guise of "expert" opinion. It thus also should be excluded under Rule 403.

**III.  Dr. Mooney Also Should Be Precluded From Opining Any Discontinuation Of Heavy Drinking Would Have Lasted More Than One Year Because No Such Opinion Was Disclosed Previously And Dr. Mooney Denied Having Such An Opinion**

An expert report must include a complete statement of all opinions an expert will express at trial and the bases and reasons for those opinions. Fed. R. Civ. P. 26(a)(2)(B)(i). Noncompliance with those requirements warrants exclusion of opinions not disclosed. *Yeti by Molly LTD v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001).

In her expert report, Dr. Mooney opined that, with treatment, the decedent "would have had a reasonable probability of initiating and maintaining abstinence…." Mooney Report, p. 3 (last paragraph) (Grigg Decl. Exh. D). The stated basis for her conclusion was research concerning subjects assessed "a year after completing treatment programs." *Id*. (second paragraph). Though Dr. Mooney indicated the risk of relapse is considerably reduced for those able to maintain abstinence greater than five years (*id*.), she offered no opinion to the effect that the decedent would

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

have remained abstinent more than one year.  *See generally* Mooney Report.

Further, during deposition Dr. Mooney admitted that, although the percentage of people remaining abstinent two years post-treatment would be less than one year post-treatment, she lacked data concerning the percentage of people who remained abstinent more than two years post-treatment.  Mooney Depo., 35:5-13.  She thus indicated she did <u>not</u> have an opinion regarding the likelihood the decedent would have remained abstinent two years following his hypothesized completion of a treatment program.  *Id*. at 37:7-12.

Because Plaintiffs disclosed no opinion by Dr. Mooney to the effect that any hypothetical abstinence by the decedent would have lasted more than one year post-treatment, Plaintiffs should not be allowed to offer any such opinion by her at trial.  *Yeti by Molly LTD*, 259 F.3d at 1106.

### IV.  Conclusion

For the foregoing reasons, the court should enter an order *in limine* precluding any statement, testimony, reference of any sort, including exhibit(s), by counsel, any party or witness that relates, refers, or pertains to 1) opinion by Dr. Mooney to the effect that the decedent would have discontinued heavy drinking had he not died, or alternatively 2) any opinion by Dr. Mooney to the effect that hypothetical post-treatment discontinuation of heavy drinking would have lasted more than one year.

## C.    Defendant Zelda Sancho, LVN

**Motion *in Limine* No. 1:**        **Motion In Limine No. 1: Exclude Any Reference To Possible Judgment Source Or Insurance Policies**

**Defendant Corizon joins in Defendant Sancho's Motion in Limine No. 1**

Sancho seeks an order precluding Plaintiffs and their counsel from mentioning, asking a question about or conveying to the jury any information about the source of payment of any verdict for compensatory damages or whether any such verdict would be paid by insurance or any other source.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

112

1804815.v1

Information regarding how any defendant would pay a verdict award is not relevant to Plaintiffs claims. Fed. R. Evid. 401. Even if such information were relevant, it should be excluded because its probative value is substantially outweighed by both a danger of unfair prejudice and a danger of confusing the issues. Fed. R. Evid. 403. Further, such evidence is tantamount to evidence of insurance which is improper and inadmissible. Federal Rule of Evidence 411.

Based upon the foregoing, defendants respectfully request that this Court preclude Plaintiffs from referencing, alluding to or otherwise mentioning to the jury through testimony or other means, how defendants would satisfy any judgment for damages that Plaintiffs may be awarded.

**Motion *in Limine* No. 2:**      **Motion In Limine No. 2 : Exclude Any Reference To Prior Settlement With Minor**

**Defendant Corizon joins in Defendant Sancho's Motion in Limine No. 2**

Sancho seeks an order precluding Plaintiffs and their counsel from mentioning, asking a question about or conveying to the jury any information about the prior settlement with former plaintiff, M.H., a minor child of the decedent.

Former plaintiff M.H., the minor half-brother of the current Plaintiffs, filed a wrongful death suit on June 10, 2011 against Defendants, Alameda County, Sheriff Ahern, several sheriff's deputies on Santa Rita's staff, and Does 1-100. Three months later, on September 20, 2011, Martin Harrison's four adult children joined M.H. in filing an amended complaint, adding nine new individuals as Defendants. The FAC charges Defendants with assault and battery, negligence, violations of California Civil Code section 52.1, and various violations of the decedent's federal constitutional rights under 42 U.S.C. § 1983. After moving for and being granted leave to amend their complaint, Plaintiffs filed

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

113

1804815.v1

the Second Amended Complaint on November 19, 2012.

M.H. was represented by separate counsel and has settled his claims in this matter. The request for dismissal was filed August 30, 2013. (Docket No. 100). Any testimony, documents, or other evidence related to that settlement or the minor M.H. should not be admitted into evidence as they are irrelevant, confusing, and, under Fed. Rule Evid. 403, unduly prejudicial. Decedent's minor child, M.H., is no longer a party to this action, and Plaintiffs are likely to reference M.H. in an effort to garner sympathy for his half siblings.

Under Federal Rule of Evidence 408, settlement agreements are not admissible to prove liability. Fed. R. Evid. 408. Moreover, even if such evidence were otherwise admissible, the settlements and related negotiations are excludable under Federal Rules of Evidence 401, 402, and 403, because they lack probative value with respect to the issues in this case and any possible probative value is substantially outweighed by the damage of undue prejudice, confusion of the issues, and undue delay.

Federal Rule of Evidence 408 precludes evidence of compromise or settlement and/or conduct or statements made in settlment negotiations. Rule 408 provides: (a) Prohibited uses.--Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction: (1) furnishing or offering or promising to furnish or accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise the claim; and (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority. Fed. R. Evid. 408(a).

Evidence of settlement is considered inadmissible for two reasons. First, evidence of settlement is "irrelevant, since the offer may be motivated by a desire for peace rather than

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

from any concession of weakness of position." Fed. R. Evid. 408, Advisory Committee's Notes.  Since M.H. is not now a party, a juror could (correctly) assume that he had settled, thereby leading to an incorrect assumption that the defendants had, at least

impliedly, admitted liability. Second, Rule 408's bar to evidence of settlement embodies Congress's desire to facilitate the non-litigious settlement of disputes, which concomitantly lessens the overall burdens placed on the judicial system and allows litigants to reach mutually beneficial results. Id.

Under Federal Rule of Evidence 403, the court should bar evidence of settlement in the instant action because any probative value that it may have is substantially outweighed by the damage of unfair prejudice to defendants. Settlement agreements and negotiations with nonparties would inject an undue amount of confusion and waste of time, such that any probative information gained from its introduction will be substantially and unfairly outweighed by the ill effects of introducing the information. If the Court were to allow an inquiry into the issue of settlement with M.H. at trial, Sancho will have to present additional evidence to put the settlement agreements and negotiations in context, thereby wasting time on ancillary issues.

For the reasons set forth above and consistent with the law cited herein, Sancho requests that the Court bar the Plaintiffs from introducing any evidence or argument whatsoever regarding the settlement with former plaintiff M.H.

**Motion *in Limine* No. 3:        Require Parties To Provide 48-Hour Notice Of
                                   The Need For Opposing Party Witnesses**

                                   **Defendant Corizon joins in Defendant Sancho's Motion in
                                   Limine No. 3**

Sancho moves this Court for an order requiring the parties to this lawsuit to provide at least 48-hour notice of the intent to call opposing party witnesses. This motion will be

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

made on the grounds of convenience for the witnesses and the practical considerations involved in a lengthy trial involving many witnesses.

Trial in this matter is scheduled to begin on January 20, 2015 and continue for seven weeks. Because of the length of the trial, it is also anticipated that many of the defendants and defense witnesses will not be able to be in court and available to testify every day. The same may well be true for the Plaintiffs and some of their witnesses. For example, Sancho is currently employed and will not be able to attend trial every day. On days that Sancho will be attending trial, she must provide her employer with advance notice that she will not be at work on those days.

It is also expected that at least 15 employees of Alameda County will be witnesses. Each of them must also provide advance notice to their employer that they will be absent from work on the days they testify. A number of witnesses, including at least one who resides in Los Angeles, will also have to travel some distance to attend trial. Arrangements will have to be made for travel and possibly the booking of airline tickets, hotel rooms, or rental cars.

Therefore, for the reasons stated above, defendants respectfully request that this Court order that the parties to this lawsuit provide at least 48-hour notice of the intent to call an opposing party witness.[7]

| Motion *in Limine* No. 4: | **Motion In Limine #4: Exclude Non-Party Witnesses From The Courtroom When Not Testifying** |
| --- | --- |
| | **Defendant Corizon joins in Defendant Sancho's Motion in Limine No. 4** |

Sancho moves this Court for an order to exclude from the courtroom any nonparty witnesses, except for such time that the witness is actually testifying. It is requested that

---

[7] The parties have stipulated that they will do their best to adhere to the 48 hour limitation.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

this order apply to all witnesses (except for the parties and their employees), including potential lay or expert witnesses, and all rebuttal witnesses. This motion will be made on the grounds that there are disputed factual issues in this case, and it is in the best interest of justice that witnesses not hear the testimony of other witnesses.

Fed.R.Evid. 615 provides, in relevant part, that, "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." FRE 615. This process serves both to reduce the danger that a witness' testimony will be influenced by hearing the testimony of other witnesses, and to increase the likelihood that the witness' testimony will be based on his/her own recollections. See e.g., *United States v. Hobbs*, 31 F.3d 918, 921 (9th Cir. 1994).

Rule 615 contains certain specific exceptions to the general rule of exclusion of witnesses, including parties to the action, officers or employees of a party, and persons whose presence a party shows to be essential to presenting the party's claim or defense. See FRE 615 (a)-(c).

In this instant action, there will be a number of lay and expert witnesses who will be called to testify at trial regarding certain factual issues in this case. It is imperative that the testimony of each lay and expert witness be based solely on his or her own experience and knowledge, and that his or her testimony not be influenced in any way by the testimony of earlier witnesses.

For the reasons stated above, Sancho respectfully requests that this Court order all persons who are to be, or may be, called as witnesses and those persons who are potential and expert witnesses or rebuttal witnesses, be excluded from the courtroom except for such time as they are testifying.

**Motion *in Limine* No. 5:     Exclude Any Reference To Arbitration Decision And Transcripts And Admission Of Arbitration Transcripts**

**Defendant Corizon joins in Defendant Sancho's Motion in Limine No. 5**

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

In the Second Amended Complaint, the Plaintiffs set out Sancho's alleged liability, asserting that she had failed to follow appropriate internal procedures when performing Mr. Harrison's medical assessment on intake at the Glenn Dyer jail before his transfer to Santa Rita and so had not put Mr. Harrison on a protocol used for those at risk of withdrawal. After the incident with Mr. Harrison and two other subsequent incidents, defendant Sancho's employment was terminated by Corizon. Sancho filed a grievance with her union and, pursuant to the bargaining agreement between her union and Corizon, the grievance was addressed through an arbitration process. The arbitration evidentiary hearing was held in July 2011 and the arbitrator submitted his decision in November 2011 denying the grievance. It is anticipated that Plaintiffs will attempt to enter into evidence the arbitrator's decision and the transcripts of the evidentiary hearing.

The arbitrator's decision and any evidence related thereto should be excluded on the grounds that they are (1) inadmissible hearsay and therefore should be excluded under Federal Rules of Evidence 801 and 802; (2) irrelevant and therefore should be excluded under Federal Rules of Evidence 401 and 402; and (3) that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and waste of time, and therefore it should be excluded under Federal Rule of Evidence 403. They are also unauthenticated.

It is irrelevant that Zelda Sancho's employment was terminated. Corizon was well within its rights to do so when its policies had not been followed. Sancho was not terminated for the Harrison intake screening, but was only counseled. She was terminated because she failed to follow policies on two subsequent occasions. Sancho was terminated only after the third incident, which was completely unrelated to alcohol withdrawal issues. Indeed, according to the arbitrator's decision, the stated reason for termination was three repeated incidents of failure to provide appropriate nursing care. Arbitrator's decision, pg. 19,  attached to the declaration of Martha Stringer as Exhibit "A"; Deposition of Lenore

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

Gilbert, pp. 97:24-100:19, attached to the declaration of Martha Stringer as Exhibit "B".

The review of Sancho's conduct was a cumulative one, and the Harrison intake was the first. The arbitrator's decision expressly stated that Sancho was not charged with improperly assessing the inmate and no evidence was submitted during the evidentiary hearing that her assessment of Mr. Harrison resulted in his death. Those are, however, the issues at hand in the present litigation with regard to Sancho. The arbitrator also found that, based on Sancho's *repeated* failure to follow assessment protocol, the decision by Corizon to terminate her employment was not arbitrary, capricious or unreasonable. The fact that Sancho was found by the arbitrator to have failed to follow assessment protocol in two subsequent incidents does not tend to make it more probable that she improperly assessed Mr. Harrison. Fed. R. Evid. 401. This is not a "fact . . . of consequence in determining [this] action." *Id*. Therefore, the findings by the arbitrator are irrelevant as they offer no probative value as to the actual claims made by Plaintiffs against Sancho in this action.

The plaintiffs have dismissed the negligence claim against Ms. Sancho and the two remaining claims concern federal constitutional rights violations. Failures to follow internal procedures of an employer do not implicate the Constitution or raise issues of liability under §1983. *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1052. The basis for the upholding of Sancho's termination is therefore irrelevant.

Even if there were some minimal probative value in the arbitration decision, there remains significant "danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, waste of time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. First, the jury may give special weight to the quasi-judicial conclusions of the arbitrator. "[C]ourts, recognizing the attendant danger of jury confusion and unfair prejudice, frequently have approved the exclusion of judicial findings, convictions, and similar evidence on Rule 403 grounds*." Faigin v. Kelly*, 184 F.3d 67, 80 (1st Cir. 1999) "A lay jury is quite likely to give special weight to judicial findings merely because they are

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

119

1804815.v1

judicial findings." *United States v. Sine,* 493 F.3d 1021, 1035 (9th Cir. 2007).

The jury will hear testimony from the several of the same witnesses who appeared before the arbitrator and must make its own decisions about their credibility. Allowing the arbitration decision to be entered into evidence would threaten the jury's independence of judgment on credibility. See *Jackson v. Bunge Corp.*,40 F.3d 239, 246
 (7th Cir. 1994). (no error in district court's decision to exclude arbitration decision under Rule 403 in part because "its admission into evidence would have . . . creat[ed] the risk that the arbitrator's decision and rationale would be substituted for the jury's decision".)

Similarly, allowing the transcripts of the evidentiary hearing to be admitted as evidence is problematic as arbitral procedures do not afford the same rights and protections as do judicial proceedings (e.g., the rules of evidence do not apply in arbitration hearings). *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 56-58 (1974). In the instant matter, the arbitrator frequently asked questions of witnesses, in addition to those asked by counsel for the parties. The arbitrator's comments and findings regarding the credibility of witnesses who are also likely to testify at trial would either usurp the jury's role in assessing credibility or would be unfairly prejudicial. Some of the same evidence presented at the arbitration regarding the assessment of the decedent by Ms. Sancho will be presented at trial, which could lead the jury to improperly assign increased credibility to such evidence in assessing liability on the part of Ms. Sancho.

These two concerns would be compounded by the confusion and waste of time that admitting evidence regarding the arbitration would entail. Because the probative value of the arbitration decision, if it exists, is not particularly high, any value would be "substantially outweighed" by these dangers. Fed. R. Evid. 403. Likewise, the prejudice of admitting the transcripts of the evidentiary hearing, particularly as such testimony was not governed by the same evidentiary rules, clearly outweighs any probative value.

In addition, much of the arbitrator's decision constitutes inadmissible hearsay. The

LAW OFFICES
RENAUD COOK
DRURY MESAROS
One North Central
Suite 900
Phoenix, AZ  85004
Telephone (602) 307-9900
Facsimile (602) 307-5853

120

1804815.v1

arbitration decision was not made "at or near the time" of the events it documents, cf. Fed. R. Evid. 803(6), and an opinion reached by a private arbitrator should not be considered a "public record." Cf. Fed. R. Evid. 803(8). Furthermore, the structure of the Federal Rules of Evidence assumes that most judicial determinations are inadmissible hearsay, and arbitrators' findings cannot be given higher evidentiary status than those of judges. See *United States v. Sine* 493 F.3d 1021, 1034-1035 (9th Cir. 2007); *Peralta v. Dillard* 744 F.3d 1076, 1088 (9th Cir. 2014).

For these reasons, defendant Sancho requests that the arbitration decision and the transcripts of the evidentiary hearing be excluded.

**Motion *in Limine* No. 6:**     **Exclude Any Reference To Arbitration Brief Filed By Corizon**

**Defendant Corizon joins in Defendant Sancho's Motion in Limine No. 6**

As with the arbitration decision, any arbitration briefs submitted by the parties to that arbitration must also be excluded. Based on their opposition to the defense dispositive motions in this matter, it is anticipated that Plaintiffs' intend to use the arbitration brief submitted by Corizon as evidence at trial.

An arbitration brief is the equivalent of legal memorandum as it is one party's written summary of its arguments and authorities composed in a manner to persuade the arbitrator in his or her decision. Such papers are irrelevant to the trial, and legal memoranda and oral argument are not evidence. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981(1979); *Cuc Dang v. Sutter's Place, Inc.,* 2012 U.S. Dist. LEXIS 177013 *8-10 (N.D. Cal. 2012). The introduction of the arbitration briefs would also be highly prejudicial to Ms. Sancho and the facts behind the attorneys' arguments can be presented in a sanctioned and non-prejudicial manner by asking the trial witnesses the questions that led to the arguments in the briefs. *United States v. Sine, supra,*

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

493 F.3d at 1035.

The briefs are also pure hearsay because they are 1) not based on personal knowledge, 2) not subject to cross-examination and 3) recapitulations of others' testimony. As a common sense matter, if lawyers' briefs could be introduced as evidence against their clients, representations would not only be chilled, but frozen and trials would take much more time to complete.  As the arbitration briefs are not evidence, Sancho requests that Plaintiffs and their counsel be precluded from presenting them at trial.

**Motion *in Limine* No. 7:        Exclude Any Reference To Other Incidents Involving Sancho's Termination**

Defendant Sancho interviewed and assessed decedent Martin Harrison on August 13, 2010.  It is this assessment that is the basis of Plaintiffs' claims against Sancho. On August 21, 2010, Corizon alleged that Sancho did not indicate the amount of alcohol consumed by a different inmate during her assessment. There was also an allegation that Sancho did not follow a directive by a physician on August 24, 2010 regarding a medical encounter with a different inmate involving the treatment of his eye.

Sancho was not terminated for the Harrison intake screening, but was only counseled. She was terminated because she failed to follow internal policies on two subsequent occasions. Sancho was terminated only after the third incident, which was completely unrelated to alcohol withdrawal issues. Indeed, according to the arbitrator's decision and the Gilbert deposition, the reason for termination was repeated incidents of failure to provide appropriate nursing care. The subsequent two incidents that led to Sancho's termination are irrelevant to claims made against her in this litigation and the presentation of evidence regarding those incidents would be highly prejudicial to Sancho as well as lead to confusion of the jury. Evidence regarding those subsequent incidents must be excluded.

In addition to being irrelevant and highly prejudicial, the introduction of other

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

incidents involving Ms. Sancho and her treatment of other inmates would be improper character evidence. Rule 404(a) provides that "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." Fed.R.Evid. 404(a). This rule is necessary because of the high degree of prejudice that inheres in character evidence. Moreover, rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b). To admit other acts under rule 404(b), the proponent must provide a clear and logical connection between the alleged <u>earlier</u> offense or misconduct, and the case being tried. A party introducing 404(b) evidence must show that: (i) the evidence is introduced for a proper purpose; (ii) the evidence is relevant; (iii) the evidence has probative value that is not substantially outweighed by the potential for unfair prejudice; and (iv) the party introducing the evidence must precisely articulate the purpose for which the evidence is offered. See *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988). The other <u>subsequent</u> incidents involved in Sancho's termination of employment from Corizon do not and cannot meet these criteria and must be excluded.

**Motion *in Limine* No. 8:**     **Exclude Any Reference Opinion/Speculation Regarding Defendant Sancho Supposedly Wanting A Job Change And Exclude Portions Of Memo Regarding Same**

**Defendant Corizon joins in Defendant Sancho's Motion in Limine No. 8**

After the three alleged incidents that eventually led to Sancho's termination from Corizon, there were meetings held by Corizon employees regarding Sancho's job performance. Corizon employee Lenore Gilbert prepared memoranda following these meetings. One such meeting was held on August 31, 2010 with Sancho in order to interview her and investigate her performance regarding the three incidents. In a post-

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

meeting memorandum, Ms. Gilbert discussed Ms. Sancho's performance but also included pure musings and speculation as to why Ms. Sancho may have performed as she did. One example of Ms. Gilbert's musings is her questioning whether Ms. Sancho was deliberately doing an inadequate job in order to get a change in job assignment. This opinion is completely speculative and unsupported. Indeed, Ms. Gilbert presented this opinion in her memorandum as a question rather than a statement of fact. (Gilbert Memorandum, attached to the declaration of Martha M. Stringer as Exhibit "C".)  Ms. Gilbert's speculations and opinions from the August 31, 2010 memorandum as well as any oral testimony regarding the same must be excluded as they are pure speculation, are completely unsupported and would be highly prejudicial to Ms. Sancho.

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.  Fed. R. Evid. 403. The risk of unfair prejudice and confusing the issues by introducing speculative evidence regarding Sancho's job satisfaction outweighs any potential relevance to the issues proceeding in this action. Ms. Gilbert's speculative conclusions lack probative value because they are irrelevant and without foundation. Inclusion of this testimony and evidence would provide no benefit and will waste time and confuse the issues in this case. See Fed. R. Evid. 403. Moreover, any possible probative value of Ms. Gilbert's opinions is substantially outweighed by unfair prejudice. The statements have nothing to do with the facts of the case and are needlessly inflammatory. The inference is that Ms. Sancho purposefully did not perform her job duties in an adequate manner because she wanted a different job assignment. The purpose of this reference is to instill "purely emotional bias" against Ms. Sancho. See Fed.R.Evid. 403 Advisory Committee's note. Thus, Ms. Gilbert's memorandum, her opinion, and any testimony regarding her speculations about Ms. Sancho's job satisfaction are inadmissible under Fed.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

124

1804815.v1

1    R. Evid. 403.

2

3    **Motion *in Limine* No. 9:**        **Motion In Limine #9 To Exclude Evidence Regarding
                                        Defendant Zelda Sancho Taking And/Or Failing The
4                                        Registered Nursing Licensing Test**

5                                        **Defendant Corizon joins in Defendant Sancho's Motion in
                                        Limine No. 9**

6         Defendants move this Court for an order precluding Plaintiffs from referencing,

7    alluding to, or otherwise mentioning to the jury through testimony or other means that

8    Sancho took and/or failed the California Registered Nursing licensing test.

9         The claims alleged against Sancho are based on the actions performed within the

10   course and scope of her employment as a Licensed Vocational Nurse (LVN).  Any mention

11   of whether or not Sancho took and failed the Registered Nursing test is irrelevant, and any

12   probative value the evidence may have is substantially outweighed by its prejudicial effect

13   and likelihood of confusing the jury as to the issues in this case.

14        Only relevant evidence is admissible. Fed. R. Evid. §402. Evidence is relevant if it

15   has any tendency to make a fact of consequence to the determination of the action more or

16   less probable than it would be without that evidence. Fed. R. Evid. §401. Evidence that is

17   otherwise relevant may be excluded if its probative value is substantially outweighed by the

18   danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting

19   time, or needlessly presenting cumulative evidence. Fed. R. Evid. §403.

20        The fact that SANCHO failed the California nursing licensing test has no bearing on

21   the claims alleged against her. In the Second Amended Complaint, Plaintiffs allege that

22   "Defendant Zelda Sancho, L.V.N., ('Sancho') was at all times mentioned herein employed

23   by Defendant Corizon as a licensed vocational nurse in Defendant County of Alameda's

24   jails, and was acting within the course and scope of that employment."[8] Because this action

25   _____

26   [8] Second Amended Complaint, ¶17.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

is only being tried against Sancho for the acts she allegedly committed while working as a LVN, any mention or evidence that Sancho took and/or failed the Registered Nurse licensing test is irrelevant.

Even *if* there were some minute probative value in introducing such evidence, it is substantially outweighed by the prejudice to Sancho that would result. Any mention that Sancho failed a nursing test for a position she did not hold would be inherently prejudicial. Additionally, such information would cause the jury to decide the case based on Sancho's lack of ability to become a Registered Nurse, or make determinations regarding her fitness to perform the duties of a Registered Nurse rather than those of a LVN.

Further, mention that Sancho took and failed the Registered Nursing test would confuse the jurors as to the actual issues in this case. Whether Sancho took and/or failed the RN test has no bearing on Plaintiffs' deliberate indifference claim against her, and the information has great potential to confuse the jurors.

Because any mention that Sancho took and/or failed California's Registered Nursing test is irrelevant to this case, and any probative value the evidence may have is substantially outweighed by the risk of confusing the issues and its prejudicial effect, Plaintiffs should be precluded from arguing or mentioning this issue in any way.

**Motion *in Limine* No. 10:**  **Motion In Limine #10 To Exclude Any Reference To The Order Denying The Defendants' Motions For Summary Judgment**

**Defendant Corizon joins in Defendant Sancho's Motion in Limine No. 10**

A Court order is hearsay because it is a statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted and is not admissible without an applicable exception. Fed. R. Evid. 801, 802; *United States v. Sine* 493 F.3d 1021, 1035 (9th Cir. 2007). The introduction of judicial fact findings and analysis underlying an order to prove the truth of those findings and

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

analysis constitutes the use of hearsay. The concern about a judicial order that is neither based on personal knowledge nor subject to cross-examination is even more pronounced when dealing with statements that detail others' testimony and declarations. *Ibid*. The Sine Court agreed with other circuits that judicial findings of facts are hearsay without a specific exception. *Ibid*. There are no hearsay exceptions in the Federal Rules of Evidence that would allow for the admission of an order denying a motion for summary judgment.

The Court's order denying the defendants' motions for summary judgment should also be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading of the jury. Factual testimony from a judge can unduly affect jurors who are likely to defer to findings and determinations made by an authoritive professional fact finder rather than determine the issues for themselves. *Ibid*.

A denial of a summary judgment motion is never law of the case and such a pretrial ruling does not bind a judge for the remainder of the action because the ruling rested on what the judge thought could be introduced at trial. *Peralta v. Dillard,* 744 F.3d 1076, 1088 (9th Cir. 2014). Any mention of or from the ruling is thus irrelevant and would exceptionally prejudicial to the defendants.

For these reasons, the plaintiffs should be prohibited from introducing the order denying the defendants' motions for summary judgment or questioning witnesses in any manner which indicates that the judge has made a determination on the issue.[9]

| Motion *in Limine* No. 11: | Motion In Limine #11 To Exclude Testimony From Witnesses Characterizing Ms. Sancho's Subjective Knowledge In Terms Of Legal Conclusions Or Speculative Factual Conclusions |
| --- | --- |
| | Defendant Corizon joins in Defendant Sancho's Motion in |

---

[9] A line of questioning that repeatedly incorporates inadmissible evidence is just as improper as the direct admission of that evidence. *United States v. Sine, supra*, at 1031

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

**Limine No. 11**

Ms. Sancho (and indeed, all defendants) anticipate that the plaintiffs will attempt to elicit expert testimony that Ms. Sancho and other defendants were "deliberately indifferent" to Martin Harrison's serious medical needs. Expert testimony is, however, inappropriate to establish a defendant's subjective knowledge. Whether any defendant had the requisite knowledge of a substantial risk is a question of fact for the jury. *Farmer v. Brennan* (1994), 511 U.S. 825, 837. Expert testimony is therefore inappropriate to establish any defendant's subjective awareness of Mr. Harrison's serious medical needs. *Cotton v. City of Eureka*, 2011 U.S. Dist. LEXIS 101657 *6 (N.D. Cal. 2011), citing *Gobert v. Caldwell*, 463 F.3d 339, 348 n.29 (5th Cir. 2006).

Expert witnesses may also not offer legal conclusions or speculative factual conclusions based on purported subjective knowledge, including that a defendant's conduct was intentional, reckless, dangerous or deliberately indifferent, that a defendant's actions reflected a callous disregard for the life and safety of Mr. Harrison or that he or she disregarded his serious medical condition. Fed. R. Evid. 704(a); *Cotton v. City of Eureka*, supra, at 6-7, citing *Farmer v. Brennan, supra*, at 837; *United States v. Duncan* 42 F.3d 97, 101-102 (2nd Cir. 1994) (an expert witness' use of judicially defined terms or terms that derive their definitions from judicial interpretations constitutes expressions of opinion as to the ultimate legal conclusion. "Deliberate indifference" is such a term).

For these reasons, plaintiffs should be prohibited from eliciting from expert witnesses any opinion testimony characterizing Sancho's subjective knowledge or her state of mind.

RESPECTFULLY SUBMITTED this 21st day of November, 2014.

RENAUD COOK DRURY MESAROS, PA

By /Jeffrey S. Hunter
   William W. Drury
   Jeffrey S. Hunter

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1

1
One North Central, Suite 900
Phoenix, Arizona 85004-4417
*Attorneys for Defendants County of Alameda,*
2
*Ahern, Ahlf, Verde, Swetnam, Martinez,*
*Litvinchuk, Madigan, Bareno, Rojas-*
3
*Castaneda, Sobero, Unubun, Hast, A.S.W.*

4

5
**LAW OFFICES OF NANCY E. HUDGINS**

6

7
By /*Nancy E. Hudgins*
Nancy E. Hudgins
Matthew M. Grigg
8
Carol B. Ho
711 Van Ness Ave., #450
9
San Francisco, ca  94102
*Attorneys for Defendants Harold Orr, Jr.,*
10
*M.D. and Corizon Health, Inc.*

11

12

13

14
**WILLIAMS & ASSOCIATES**

15

16
By /Martha M. Stringer
Kathleen J. Williams
Martha M. Stringer
17
1250 Sutterville Road, Ste. 290
Sacramento, CA  5822
18
*Attorneys for Defendant Zelda Sancho, LVN*

19

20

21

22

23

24

25

26

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

1804815.v1