UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.H., et al.,<br><br>       Plaintiffs,<br><br>   v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>       Defendants. | Case No.  11-cv-02868-JST<br><br>**FURTHER ORDER ON MOTIONS IN LIMINE**<br><br>Re: ECF Nos. 305, 309, 389, 398, 400 |

This order resolves the parties' motions in limine that were not addressed by the Court's prior orders, see ECF Nos. 346, 383.

**A.      Plaintiffs' Motion In Limine Number Four**

In this motion, Plaintiffs seek an order precluding County Defendants' retained expert Ron Martinelli "from testifying about both: (1) the opinions and facts he omitted from his expert report; and (2) the opinions contained in his report that lack reliability: Opinions Nos. 1, 3, 5, and the opinions contained in paragraphs 2.2, 2.3, 2.4, 2.6, 3.6, 4.11, 5.0 and 5.1."[1]

**1.      Opinions Not Contained In Dr. Martinelli's Expert Report**

With regard to the first request, Plaintiffs claim that Dr. Martinelli did not opine on any of the following subjects in his report, and should be precluded at trial from doing so:

- "the jail's medical staff";

- "the manner by which Deputy Ahlf's chose to move Martin Harrison from one cell to another";

---

[1] Although Plaintiffs refer to these portions of Dr. Martinelli's report as "paragraphs," some of the portions contain more than one paragraph.  To avoid confusion, the Court therefore uses the word "section."

1        • "Deputy Ahlf's Taser use";

2        • "the Alameda County Sheriff's deputies' use of force";

3        • "whether Deputy Ahlf caused Martin Harrison's death";

4        • "the cause of Martin Harrison's death";

5        • the stress felt by anyone involved in the case; and

6        • "memory recall."

7    ECF No. 305 at 21-22.[2]  Plaintiffs also request that Martinelli not be permitted to rely on any of

8    the depositions he read, or investigation he conducted, after submitting his expert report.

9            Rule 26(a)(2)(b) of the Federal Rules of Civil Procedure requires a party to disclose the

10   identity of each expert witness "accompanied by a written report prepared and signed by the

11   witness."  The report must contain, among other things, "a complete statement of all opinions the

12   witness will express and the basis and reasons for them; the facts or data considered by the witness

13   in forming them; [and] any exhibits that will be used to summarize or support them."  Id., subparts

14   (i), (ii), (iii).  If a party fails to provide the information required by Rule 26(a)(2)(b), the party is

15   not allowed to use the testimony of that expert at trial "unless the failure was substantially justified

16   or is harmless."  Fed. R. Civ. P. 37(c)(1); see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,

17   259 F.3d 1101, 1106 (9th Cir. 2001).

18           Here, there is no dispute that Dr. Martinelli did not disclose in his expert report any of the

19   matters plaintiffs complain about, and that he read several depositions and conducted additional

20   investigation after producing his expert report.  Defendants nonetheless oppose the motion on two

21   grounds.  First, they say:

22           Plaintiffs request that Dr. Martinelli be precluded from testifying
23           regarding any facts he learned from depositions and Jack Ryan's
             report because he reviewed them after he wrote his report.  Plaintiffs
24           fail to specify which facts to which they are referring.  It is unclear
             what evidence is involved in this motion.  Thus, the request is vague
25           and should be denied.

26

27   ─────────────────────
28   [2] The County Defendants agree that Dr. Martinelli will not offer opinions regarding
     Mr. Harrison's cause of death, or specifically whether Deputy Ahlf caused his death.

United States District Court
Northern District of California

United States District Court
Northern District of California

This argument is unconvincing.  The burden is on *Defendants* to show that the failure was substantially justified or harmless.  Fed. R. Civ. P. 37(c)(1).  In any event, the relief Plaintiffs are requesting *is* clear – when asked for the basis of an opinion given at trial, Plaintiffs request that Dr. Martinelli not be permitted to rely on materials furnished to him after the preparation of his report.

Defendants next argue that Martinelli should be permitted to testify regarding these materials, because "[a]t the beginning of the deposition, plaintiffs' counsel was made aware of" the depositions Dr. Martinelli reviewed and certain facts about the post-report investigation he conducted.  The Court has already rejected this argument once, ECF No. 346 at 3, and does so again now.  Disclosure at a deposition is not an adequate substitute for timely disclosure in an expert report.[3]

This portion of Plaintiffs' motion is granted in its entirety.  Dr. Martinelli may not rely on any facts he learned after the transmission of his expert report in providing opinions in this case, or opine on the enumerated subjects as to which he provided no opinion in his report.

## 2.    Plaintiff's Motion to Exclude Testimony Regarding Certain Opinions

Plaintiffs also move to preclude Dr. Martinelli from testifying regarding certain opinions listed in his report.  The Court addresses them in the order they appear in Plaintiffs' motion.

### a.    Sections 2.3, 2.4, 2.6 and 3.6

In sections 2.3, 2.4, 2.6[4] and 3.6 of Dr. Martinelli's report, he expresses the view that Martin Harrison did not demonstrate symptoms of delirium tremens, and goes on to express opinions about how jail intake staff would have responded if Mr. Harrison had demonstrated such symptoms.  Plaintiffs move to exclude Dr. Martinelli's opinions on these topics because he lacks

---

[3] Defendants also contend that "plaintiffs' own experts are 'guilty' of the same 'offense' of which counsel complains—various experts reviewed materials after they wrote their reports, but before their depositions."  In the law as in life, two wrongs rarely make a right.  In any event, if Defendants felt aggrieved by Plaintiffs' conduct, they should have filed a motion.

[4] Dr. Martinelli's opinion 2.6 is mis-numbered "2.4" in his report, ECF 189-2 at 16, but it is clear from the context which opinion the Plaintiffs are referring to.

1   medical training and "he is not qualified as an expert either on alcohol withdrawal or Delirium

2   Tremens." ECF No. 305 at 24. They also move to exclude opinion 2.6 on the grounds that Dr.

3   Martinelli is speculating.

4          Plaintiffs' objection to Dr. Martinelli's qualifications is well-taken. He is not a medical

5   doctor. Although he describes his undergraduate major as "pre-med," he received a bachelor's

6   degree exercise physiology. He has no degrees in medicine, he holds no medical licenses, he is

7   not a psychologist, and he has no expertise in nursing.

8          Plaintiffs are also correct that Dr. Martinelli's testimony is speculative. Even if he had

9   sufficient medical training or experience to render opinions about chronic alcoholics, which he

10  does not, his opinion about what Nurse Sancho or other Corizon or Alameda County employees

11  would have done faced with the symptoms of alcoholism is just a guess. Expert testimony based

12  on mere "subjective belief or unsupported speculation" is inadmissible. Daubert v. Merrell Dow

13  Pharm., Inc., 509 U.S. 579, 590 (1993).

14         Plaintiffs' motion to exclude the opinions given in sections 2.3, 2.4, 2.6 and 3.6 of Dr.

15  Martinelli's report is granted.

16                 **b.      Opinion Nos. 1 and 5, and Sections 2.4, 2.6, 4.11, and 5.1**

17         Plaintiffs move to exclude Dr. Martinelli's opinions number 1.0 and 5, and the opinions

18  expressed in sections 2.4, 2.6, 4.11, and 5.1 of his report, on the grounds that he bases his opinions

19  on insufficient facts or has failed to explain the basis for them.[5] Defendants oppose the motion.

20                        **1.      Opinion No. 1**

21         Dr. Martinelli's Opinion No. 1 is that "[t]he initial processing, classification and housing

22  of decedent Harrison by the Alameda County Sheriff's Department was conducted in an

23  appropriate and objectively reasonable manner." Plaintiffs complain that the subsidiary facts or

24  opinions Dr. Martinelli gives in his expert report are inadequate to support this conclusion.

25         Defendants do not seriously contend otherwise. Instead, they argue that "through [Dr.

26

27  ─────────────────
    [5] The Court has already excluded the opinions in sections 2.4 and 2.6, supra, and does not address

28  those opinions again here.

4

Martinelli's] education, training, and experience he is knowledgeable regarding Title 15 of the California Code of Regulations which sets forth the policies for correctional facilities in California.  His opinion is that the protocols used by the sheriff's office and medical/mental health staff conducting the triage process was consistent with Title 15 and other state and nationally recognized and accepted professional corrections practices."  ECF No. 319 at 13.

Dr. Martinelli's expert report does not support allowing him to reach the challenged opinions based on his experience.  While "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience," the advisory committee notes emphasize that "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  Fed. R. Evid. 702 advisory committee's note.  Dr. Martinelli's expert report does not attempt to satisfy this standard.

Plaintiffs' motion regarding Opinion No. 1 is granted.

### 2.        Opinion No. 5

Dr. Martinelli's Opinion No. 5 is that there is "no evidence of any deliberate indifference to decedent Harrison's civil rights on the parts of Deputies Valverde, Swetnam, Martinez, Unubun, Sobrero, Bareno, Litvinchuk, Madigan and Rojas."  There are two problems with this testimony.

The first is that Dr. Martinelli did not read the deposition testimony of any of these deputies before writing his report.  So he did not review the existing evidence before concluding that there was "no evidence."  The second is that whether there is "evidence of something" is a decision that juries can make on their own.  Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ., 927 F. Supp. 2d 1069, 1077-78 (D. Or. 2013) ("permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury").

Plaintiffs' motion regarding Opinion No. 5 is granted.

### 3.        Sections 4.11 and 5.1

Plaintiffs also move to preclude Dr. Martinelli's testimony regarding the subsidiary

United States District Court
Northern District of California

conclusions expressed in sections 4.11 and 5.1 of his report.

The Court has reviewed the parties' various citations to Dr. Martinelli's deposition in support of and in opposition to the motion.  Each of the opinions about which Plaintiffs' complain is speculative, sometimes wildly so.  For example, in section 4.11, Dr. Martinelli opines that he found "no evidence based upon how peace officers are trained in liability class as to the standard of 'deliberate indifference,'" that Deputy Ahlf's "actions constituted any deliberate indifference of Harrison's civil rights."  ECF No. 189-2 at 19.  But Dr. Martinelli made clear in his deposition that he knows nothing about how Deputy Ahlf was actually trained, and he cannot even identify the specifics about how California law enforcement officers are trained generally.  See ECF No. 189-1 at 189-190.

Plaintiffs' motion to exclude sections 4.11 and 5.1 of Dr. Martinelli's report is granted.

### c.  Opinion No. 3 and Section 2.2

Plaintiffs move to exclude Dr. Martinelli's Opinion No. 3 and the opinion expressed in section 2.2 of his report, on the grounds that he fails to explain the bases for these opinions and because his opinions depend on a determination of Martin Harrison's credibility.

Dr. Martinelli's Opinion No. 3 is: "Decedent Harrison's failure to notice housing corrections staff that he was experiencing or suffering from any medical or mental health problem(s) contributed to the worsening of his overall condition and may have affected his ultimate injuries and death."  ECF No. 189-2 at 16.  It is hotly disputed in this case whether Mr. Harrison notified jail staff that he was an alcoholic or that he regularly drank alcohol.

The opinion expressed in section 2.2 of his report is:

> As discussed, during the medical/mental health triage process, although provided with amble opportunity to do so, Harrison repeatedly responded to medical/mental health current and past history questions posed by the medical staff, stating that he had no current or past medical/mental health problems. He had advised the triage staff that he was not seeing any medical or mental health professionals and was not taking any prescription medications. In fact, Harrison signed at the bottom of the triage instrument form attesting to his responses on the morning of his acceptance for booking. Harrison's only response on the forms was that he had

6

consumed alcohol sometime on the date of his arrest. A statement inscribed by LVN Sancho that Harrison was "CIWA"[6] or had a history of alcohol withdrawal is inconsistent with his other responses on the triage form.

There is no evidence anywhere to be reviewed that Harrison ever advised the corrections staffs at either jail facility he visited that he suffered from chronic alcoholism. There is no evidence in any of the booking and medical/mental health indicia that indicates that at the time of booking and classification, where Harrison ever presented with any communication, physical, behavioral or psychological cues of any medical or mental health problems.

It is the policy and protocol of the Alameda Co. Sheriff 's Department not to accept pre-trial  detainees that present at time of booking with cues of severe intoxication, coupled with acute, chronic alcoholism, or mental health problems that would indicate that the subject  was gravely disabled, or a danger to self and others. Under such circumstances, it is the policy of the sheriff's department not to accept such persons for booking. These types of persons are remanded to a hospital for emergency medical care; or to a mental health facility  for psychiatric observation and evaluation.

ECF No. 189-2 at 14-15.

Plaintiffs' motion is denied as to the last paragraph of section 2.2.  This opinion does not depend on a credibility determination about Martin Harrison or the statements of any of the witnesses.

Both the remaining portions of section 2.2 as well as Opinion 3, however, consist of a credibility determination about what actually happened during Alameda County's intake of Martin Harrison.  This determination does not require expert training, background, or experience.  It also invades the fact-finding province of the jury.  See Siring v. Oregon State Bd. of Higher Educ. ex rel. E. Oregon Univ., 927 F. Supp. 2d 1069, 1077-78 (D. Or. 2013) ("permitting expert testimony on this subject would be merely substituting the expert's judgment for the jury's and would not be helpful to the jury").

Plaintiffs' motion is denied as to the last paragraph of section 2.2, but granted as to the remainder of that section and Opinion No. 3.

---

[6] The acronym refers to the Clinical Institute Withdrawal Assessment protocols for persons withdrawing from alcohol addiction.

United States District Court
Northern District of California

### 3.      Opinions That Martin Harrison "Lied" to Jail Staff or Withheld Information About His Alcohol Consumption

Plaintiffs move to exclude any testimony by Dr. Martinelli that Martin Harrison either lied about, or did not disclose, his alcohol consumption to jail staff.  As previously noted, testimony regarding the credibility of any witness or about what did or did not happen is not an appropriate subject of expert testimony.  This portion of Plaintiff's motion is granted.

### B.      County Defendants' Motion In Limine Number One

This motion seeks an order "prohibit[ing] reference to any code of silence, a conspiracy with regard to report writing and other such nefarious matters."  ECF No. 309 at 7.  The motion is directed primarily at Plaintiffs' police practices expert, John "Jack" Ryan, who has opined that "the Code of Silence is exhibited by the reluctance for persons to come forward with negative information about another person," "[t]he Code of Silence has been memorialized and documented in law enforcement historically," and "the deposition testimony of the involved officers [in this case] provides evidence of the Code of Silence among the involved deputies in this case."  ECF No. 274-29 (Preliminary Expert Report of John J. Ryan) at 44-45.  The County Defendants argue that the unfairly prejudicial effect of this evidence outweighs its probative value.

"Code of Silence" evidence is essentially propensity evidence, i.e., that because police officers have lied about misconduct in the past, they are likely to have done so in this case.  Propensity evidence is disfavored in the law.  As the Advisory Committee on Evidence Rules has recognized, "Character evidence is of slight probative value and may be very prejudicial.  It tends to distract the trier of fact from the main question of what actually happened on the particular occasion."  Fed. R. Evid. 404 advisory committee's note (quoting Tentative Recommendation and a Study Relating to the Uniform Rules of Evidence (Art. VI. Extrinsic Policies Affecting Admissibility), Cal.Law Revision Comm'n, Rep., Rec. & Studies, 615 (1964)).  "The rule against using character evidence to show behavior in conformance therewith, or propensity, is one such historically grounded rule of evidence.  It has persisted since at least 1684 to the present[.]" McKinney v. Rees, 993 F.2d 1378, 1381 (9th Cir. 1993); see also Fed. R. Evid. 404 ("Evidence of

8

United States District Court
Northern District of California

a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."); 1A J. Wigmore, Evidence In Trials At Common Law § 192 (Tillers rev., 1983) ("That the doing of one act is in itself no evidence that the same or like act was again done by the same person has been so often judicially repeated that it is commonplace.").

These concerns are compounded here by the fact that Plaintiffs are not trying to suggest that Defendant officers are lying or covering up now because they have done so in the past. Rather, Plaintiffs suggest that Defendants are lying or covering up here because *other* officers have done so in the past.

Defendants cite several district courts that have found that the "code of silence" evidence constitutes impermissible propensity evidence, or that the prejudicial effect of such evidence outweighs its probative value.  Buckley v. Evans, No. 2:02-CV-01451-JKS, 2007 WL 2900173, at *5 (E.D. Cal. Sept. 28, 2007); Gonzalez v. City of Garden Grove, No. CV 05-1506 CAS JTLX, 2006 WL 5112757, at *4 (C.D. Cal. Dec. 4, 2006); Bruce v. City of Chicago, No. 09 C 4837, 2011 WL 3471074, at *4 (N.D. Ill. July 29, 2011).  The Court agrees with the reasoning of these cases.

Against the weight of this authority, Plaintiffs provide very little legal support for their position, and the cases they do cite are distinguishable.  Two of them deal with "codes of silence" in contexts other than law enforcement agencies.  United States v. Hankey, 203 F.3d 1160 (9th Cir. 2000); United States v. Montes-Diaz, 208 F. App'x 565 (9th Cir. 2006).  In Plaintiffs' remaining case, although the court relied on "code of silence" evidence, the admissibility of that evidence was not challenged by any party.  Cunningham v. Gates, 989 F. Supp. 1262, 1266 (C.D. Cal. 1997) aff'd in part, rev'd in part,as amended (Oct. 31, 2000) 229 F.3d 1271 (9th Cir. 2000).  Moreover, the evidence there concerned an established historical code of silence within the Los Angeles Police Department – the very agency that was a defendant in the case.  The Plaintiffs here have no such evidence regarding the Alameda County Sheriffs' Department.  In fact, Plaintiffs here "do *not* contend that the Defendant deputies had a habit of engaging in the code of silence." ECF No. 317 at 6 (emphasis added).

1  Plaintiffs also urge the Court to admit this evidence on the grounds that "prosecutors

2  generally should be permitted to prove their claims by 'a colorful story with descriptive richness'

3  and not be limited to sterilized language or abstract stipulations just because the story is

4  powerful." ECF No. 317 at 6 (citing <u>Old Chief v. United States</u>, 519 U.S. 172, 186-88 (1997));

5  <u>see</u> <u>also</u> <u>id.</u> at 7 ("Plaintiffs must be permitted to tell a 'colorful story with descriptive richness' to

6  persuade the jury on these important claims[.]").  This argument merely underscores the degree to

7  which the atmospheric appeal of this evidence outweighs its probative value.

8  County Defendants' Motion in Limine Number One is granted.  Plaintiffs may present

9  evidence that Defendant Officers are attempting to cover up the allegedly wrongful conduct

10  arising from the incidents in this case, but Plaintiffs may not use the term "code of silence," and

11  Plaintiffs may not introduce evidence that law enforcement officers typically adhere to a "code of

12  silence" or similar practice to cover up misconduct in order to protect fellow officers.

**C.    County Defendants' Motion In Limine Number Three**

14  The County has withdrawn this motion.  ECF No. 358.

**D.    County Defendants' Number Nine**

16  In this motion, the County Defendants seek an order to preclude any cross-examination of

17  retained expert Dr. Wetli regarding a series of autopsies he conducted in Dade County, Florida.

18  Plaintiffs state that Dr. Wetli "misclassified 19 homicides by asphyxiation as death by 'excited

19  delirium' while he was an assistant medical examiner in Dade County, Florida, in the early

20  1980's." ECF No. 317 at 23.

21  Plaintiffs' main argument in favor of admitting this evidence is that it will assist them to

22  cross-examine Dr. Wetli regarding the reliability of "excited delirium" evidence.  ECF No. 317 at

23  25.  The Court has already excluded the County's evidence regarding "excited delirium," however,

24  so this argument has no force.  ECF No. ECF No. 346 at 4.

25  Plaintiffs' other asserted reason for the admission of this evidence is to show that Dr. Wetli

26  is not competent to review the facts of this case because – according to Plaintiffs – he performed

27  the Dade County autopsies incompetently.  The connection between the two events is weak.

United States District Court
Northern District of California

Moreover, permitting that line of cross-examination would involve a lengthy discussion of "excited delirium" evidence, which is precisely the sideshow that Plaintiffs have already convinced the Court to prevent.  Accordingly, the evidence must be excluded.  Fed. R. Evid. 403.

County Defendants' Motion in Limine Number Nine is granted.

**E.     County Defendants' Motion in Limine Number 11, Subpart 6**

The County Defendants' Motion In Limine Number 11 is divided into subparts.  One of the subparts seeks an order excluding Plaintiffs' expert John J. Ryan's description of a kick delivered by Deputy Swetnam to decedent Martin Harrison as a "stomp," "shard foot," or "driving his foot down into [Harrison's] abdomen with his heel."  ECF No. 309 at 33.

The motion is denied.  If Defendants think the description is inaccurate, they can make that point on cross-examination or through the testimony of other witnesses.

**F.     County Defendants' Motion In Limine Number 11, Subpart 10**

County Defendants' Motion in Limine Number 11, subpart 10 seeks the same relief as County Defendants' Motion In Limine Number One.  The Court's order regarding this motion is the same as for that one.

**G.     Corizon Defendants' Motion in Limine Number Two**

This motion seeks an order precluding any evidence of the financial condition, size, net worth, market share, or finances of Corizon Health, Inc., any affiliated company, or Dr. Orr, unless the case proceeds to the punitive damages phase of trial.   The Court previously ruled on this motion as follows:

> The motion is GRANTED, PROVIDED THAT the Corizon Defendants stipulate in writing that they will not introduce evidence or make argument of any kind that a reason they took any action or failed to take any action was the cost of that action or their lack of resources. Such a stipulation must be the subject of a meet-and-confer among counsel and must be filed by January 12, 2015.

ECF No. 346 at 15.

The Corizon Defendants never filed the stipulation required by the Court's order. Accordingly, the Court's order conditionally granting the motion is withdrawn.  The motion is

denied.

**H.     Corizon Defendants' Motion In Limine Number Six**

This motion seeks an order precluding any evidence of "statement(s) by decedent Martin Harrison to his children, family or friends, in words or effect that when he was picked up by the police for failing to appear at his DUI trial, he planned to detox from drinking in jail."  ECF No. 309 at 77.  The testimony from decedent's children is that he told them on more than one occasion that he knew he had a drinking problem; that he knew he would be taken into custody on his outstanding warrant for a DUI arrest; and that he would use his time in custody to sober up or "detox off alcohol."  ECF 317 at 70.  Defendants object to this evidence on hearsay grounds and under Rule 403 of the Federal Rules of Evidence.

Statements of future intent, such as the decedent's statements to his children, are not hearsay.  "[A] statement of the declarant's intent to do something is competent 'not as (a) narrative( ) of facts communicated to the (declarant) by others, nor yet as proof that he actually (did as he intended,) but as evidence that . . . he had the intention of (so doing).'"  United States v. Astorga-Torres, 682 F.2d 1331, 1335-36 (9th Cir. 1982) (quoting Mut. Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 295-96 (1892)).  In Astorga-Torres, an undercover agent testified that a participant in a drug distribution conspiracy stated that he would bring someone to guard him during a drug transaction.  The court admitted the statement over a hearsay objection because it was a statement of future intention.  Similarly here, Martin Harrison's statement that he intended to detox while in jail was a statement of future intention, not a statement of anything Harrison actually did or perceived.  The hearsay objection is overruled.

The Court also overrules the Rule 403 objection.  It is true, as the Court stated at the January 5 pre-trial conference, that a reasonable person might whether Mr. Harrison's statement that he intended to give up alcohol was credible, given that he consumed alcohol every day.  ECF No. 351 (Rep. Tr., Jan. 5, 2015) at 37-39.  But the implications of this are (1) that the Defendants can easily address the testimony on cross-examination, and (2) that the prejudicial effect, if any, is likely to be low.

1    The motion is denied.

## I.    Plaintiffs' Motion to Exclude Late-Designated Witnesses

Plaintiffs have moved to exclude certain late-disclosed witnesses for both the County Defendants and the County Defendants.[7]  ECF No. 355.  A party that does not timely identify a witness under Rule 26 "may not use that witness to supply evidence at trial 'unless the failure was substantially justified or harmless.'"  Ollier v. Sweetwater Union High Sch. Dist., 768 F.3d 843, 861 (9th Cir. 2014) (quoting Fed. R. Civ. P. 37(c)(1)).

The Corizon Defendants concede that proposed witnesses Maria Jeanette Armas, Lorraine English, Angelica Nuno Sheridan, Denise Garcia, Karin Graham, Carol Waechtler, Emith Gober, Angelica Sheridan (who may or may not be the same person as Angelica Nuno Sheridan), Kimberly Turner, Cecilia Sandoval, and Christina Rogge were not disclosed during discovery. Defendants' preferred justification for this failure is not convincing, and the Court cannot conclude – with jury selection scheduled to occur tomorrow – that the failure was harmless. Plaintiffs' motion as to these witnesses is granted.

Similarly, although the Corizon Defendants claim to have timely disclosed witnesses Tom Resburg and Rebecca Craig, it is clear that they were first disclosed on the defendants' initial witness list – *after* the close of discovery.  The late disclosure of these witnesses was neither substantially justified nor harmless.  Plaintiffs' motion is granted as to these witnesses also.

Plaintiffs object to Corizon witness Michael Harris, L.V.N., giving any expert testimony regarding "nursing duties at Corizon, including scheduling patients for sick call."  The Court agrees that he may not give expert testimony on that subject, i.e, testimony regarding the standard of care related to those issues or whether Corizon's practices were reasonable.  To the extent that he has percipient witness testimony regarding Corizon's actual policies or practices, however, he may provide it.

Plaintiffs have also moved to preclude the testimony of nurses Linda Henson, Tom Bacon,

---

[7] Plaintiffs also moved for an order permitting the deposition of late-disclosed Corizon witness Jeff Sholey, but this matter has been resolved between the parties.

13

Joel Smith, and Michael Forbes, as well as the testimony of Hayward Police Officer Colton.  The Corizon Defendants state that they "agree not to call" these witnesses, but state that "[t]his agreement is subject to the understanding that unanticipated evidence or argument during trial potentially could make testimony by one or more of these people necessary, substantially justified or harmless and/or appropriately offered solely for impeachment," and that "Dr. Orr and Corizon would reserve the right to revisit the issue of the propriety of testimony, in the unlikely event such an eventuality arose."

If the Corizon Defendants had a valid reason to oppose the motion, this was the time to assert it.  The Plaintiffs' motion is granted as to these witnesses.[8]

## J.  County Defendants' Motion In Limine To Prevent The Use of Certain Terms

On January 28, 2015, the County Defendants filed another motion in limine.  ECF No. 389.  In it, the County Defendants request that the Court enter an order preventing the Plaintiffs from using the term "PMK," "PMQ," "Person Most Qualified," or "Person Most Knowledgeable."

The motion was filed well past the November 21, 2014 deadline for such motions, see ECF No. 294 at 2, and the County Defendants provide no reason for its late filing.  The motion is denied on that ground alone.

The motion is also denied on its merits.  It is unsupported by citation to any relevant authority, and the Court's search of federal and state authority has located none.  If the Plaintiffs use terminology to describe a witness produced pursuant to Rule 30(b)(6) that the Defendants think is inaccurate, they can make that point in cross-examination.

## K.  The Corizon Defendants' Eleventh Hour Motions In Limine

On Friday, January 30, 2015, at 4:23 p.m., the the Corizon Defendants filed a motion in

---

[8] Plaintiffs first brought their concerns about these witnesses to the Court's attention at the hearing held on January 5, 2015, well after the November 14, 2014 deadline for the filing of in limine motions.  See ECF No. 294 at 2.  Some of the challenged witnesses appeared on witness lists exchanged before the deadline for the filing of motions in limine.  At the January 5 hearing, however, the Court did not recall these facts, and set a briefing schedule on Plaintiffs' motion.  No defendant has objected that the motion is untimely.  The Court concludes that it would unjust to invite briefing on an oral motion and then deny it as untimely.

United States District Court
Northern District of California

14

limine "re preclusion of discovery responses uncited in joint final pretrial conference statement."

ECF No. 398.  Later that night, at 9:07 p.m., they filed a motion "re preclusion of use of "Corizon

Health" website."  ECF No. 400.

The motions are not timely.  The deadline for the filing of motions in limine passed on

November 14, 2014.  Jury selection in the case is scheduled to begin tomorrow, Monday, February

2, 2015, at 8:30 a.m.  As the Court sits in chambers typing this order, it is Sunday, February 1,

2015, at approximately 1:45 p.m.  "Litigation must end some time," United States v. Barela, 571

F.2d 1108, 1114 n.12 (9th Cir. 1978), and so must motions in limine.

The motions in limine at ECF Nos. 398 and 400 are denied.

**IT IS SO ORDERED.**

Dated:  February 1, 2015



_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

15