MICHAEL J. HADDAD (State Bar No. 189114)
JULIA SHERWIN (State Bar No. 189268)
GENEVIEVE K. GUERTIN (State Bar No. 262479)
T. KENNEDY HELM (State Bar No. 282319)
HADDAD & SHERWIN LLP
505 Seventeenth Street
Oakland, CA 94612
Telephone: (510) 452-5500
Facsimile: (510) 452-5510

Richard H. Friedman (State Bar No. 221622)
rfriedman@friedmanrubin.com
FRIEDMAN | RUBIN
1126 Highland Avenue
Bremerton, WA 98337
Telephone: (360) 782-4300
Facsimile: (360) 782-4358

Attorneys for Plaintiffs

**FILED**

FEB 2 7 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.H., a minor, through his Guardian Ad Litem, Michelle Henshaw, JOSEPH HARRISON, KRYSTLE HARRISON, MARTIN HARRISON, JR., and TIFFANY HARRISON, all Individually and as Co-Successors in Interest of Decedent MARTIN HARRISON,<br><br>Plaintiffs,<br>vs.<br><br>COUNTY OF ALAMEDA, a municipal corporation; SHERIFF GREGORY J. AHERN, in his official capacity; DEPUTIES MATTHEW AHLF, ALEJANDRO VALVERDE, JOSHUA SWETNAM, ROBERTO MARTINEZ, ZACHARY LITVINCHUK, RYAN MADIGAN, MICHAEL BARENO, FERNANDO ROJAS-CASTANEDA, SHAWN SOBRERO, SOLOMON UNUBUN; MEGAN HAST, A.S.W.; CORIZON HEALTH, INC., a Delaware corporation; HAROLD ORR, M.D.; ZELDA SANCHO, L.V.N.; and DOES 5-20, individually, jointly and severally,<br><br>Defendants. | Case No. C11-2868 JST (LB)<br><br>STIPULATION AND ~~(PROPOSED)~~ ORDER OF SETTLEMENT<br><br>Trial Date: February 2, 2015<br><br>Hon.: Jon S. Tigar |

The parties, by and through their counsel of record, hereby stipulate and agree to a full and final settlement of all of Plaintiffs' claims against all Defendants for damages, injunctive relief, and attorneys' fees and costs as follows:

1) Within 45 days of approval of the settlement by the Alameda County Board of Supervisors, Alameda County and Corizon shall pay the sum $8,300,000, to Haddad & Sherwin LLP Client Trust Account for the benefit of Tiffany Harrison, Martin Harrison, Jr., Krystle Harrison, and Joseph Harrison, in full and final settlement of Plaintiffs' claims for damages, and all attorneys' fees and costs to date. Prior to the 45-day deadline for payment of the settlement money, the parties may execute a written settlement agreement(s), provided any such agreement does not alter or affect any party's right or obligation under this Stipulation and Order of Settlement. Any settlement payment received by Haddad & Sherwin LLP later than 45 days after approval of the settlement by the Alameda County Board of Supervisors shall include interest at the California judgment interest rate, California Code of Civil Procedure § 685.010.

2) The parties also stipulate and agree to the nonmonetary relief set forth below.

3) Licensed California Registered Nurses or a higher level care provider (physician, physician's assistant, or nurse practitioner) will conduct all Receiving Screenings and patient assessments on all inmates in Alameda County Jails, and in all facilities throughout the State of California where Corizon Health, Inc., or any of its related corporations (for example, Corizon, Inc. or Corizon, LLC), collectively called herein "Corizon," provide correctional health care services. Corizon will comply with all California statutes and regulations governing the practice of nursing and vocational nursing. Corizon shall provide the Registered Nurses described in this paragraph by December 31, 2015.

4) The County will provide health training for Alameda County Sheriff's Office ("ACSO") sworn staff who work with inmates in accordance and compliance with National Commission on

Correctional Health Care ("NCCHC") Essential Standard J-C-04, attached hereto and incorporated herein, and also provides training, to ACSO sworn staff who work with inmates, on alcohol and other drug problems, including intoxication and withdrawal, mental health and medical emergencies, and the appropriate communications to medical and mental health staff, regardless of whether a particular facility is NCCHC accredited. Alameda County represents that it is already providing this training. This training includes an outline and course content and length kept on file, and a certificate or other evidence of attendance for each employee. This training shall occur not less than every two years in accordance with the provisions of this paragraph. New hires will be timely trained.

5) The Honorable Jon S. Tigar will maintain jurisdiction over this settlement and the injunctive relief in this matter, with court supervised monitoring, to resolve any disputes, to facilitate the meet and confer process, and to issue all appropriate orders concerning the settlement agreement and the interpretation, implementation, and enforcement thereof, for four years. Any party may request a status conference with the Court concerning these matters at any time, or move for any appropriate relief under the terms of this Order. If there is a material breach of the terms of the agreement within that four year time period, any party may move the court to extend the Court's supervision and monitoring against the breaching party for up to an additional three years. Before moving for relief from the District Court, the parties will meet and confer to attempt to resolve any differences. Should the parties' meet and confer efforts be unsuccessful, any party may request a settlement conference with Magistrate Judge Beeler.

6) Alameda County will provide the law offices of Haddad & Sherwin LLP documentation every six months beginning on June 1, 2015, and ending on February 1, 2019, concerning their compliance with this agreement, and will provide all further information reasonably requested by Haddad & Sherwin LLP within thirty days of receipt of the request. That documentation shall

consist of the following: Course outlines, content, training materials including policies referenced, and updates as generated, and sworn declaration(s) from the training and litigation coordinators confirming the dates of training and number of officers trained during the relevant time period. Any confidential material shall be produced pursuant to the protective order in this case, if appropriate. In no event shall a reporting delay of ten (10) business days or less be deemed a material breach of this agreement. Corizon will provide the law offices of Haddad & Sherwin LLP documentation every six months beginning on June 1, 2015, and ending on February 1, 2019, concerning their compliance with this agreement, and will provide all further information reasonably requested by Haddad & Sherwin LLP within thirty days of receipt of the request. Corizon's June 1, 2015 report will be a letter from Nancy Hudgins detailing Corizon's progress to date. All subsequent reports will be a declaration under oath by the Responsible Health Authority at each Corizon facility in California. Haddad & Sherwin LLP will participate in the monitoring and any necessary enforcement of the injunctive relief on a pro bono (free of charge) basis up to 25 hours of attorney time for Alameda County, and 25 hours of attorney time for Corizon. If the attorney time required to monitor and, if necessary, to enforce the agreement exceeds 25 hours as to either Alameda County or Corizon, that defendant party shall pay Plaintiffs' counsel's reasonable attorneys' fees and costs reasonably incurred. If and when Haddad & Sherwin LPP have less than 5 hours of pro bono time remaining to any Defendant it will provide that Defendant with written notice of the same, with an accounting of time spent, and it will also provide that Defendant with an anticipated budget to cover the period of time remaining on this injunctive relief. Where appropriate, Haddad & Sherwin LLP shall bill attorneys' fees separately to Corizon and Alameda County, with inseparable time apportioned evenly between the Defendants.

7) Alameda County and Corizon Health, Inc., will enter into an amendment to their current contract for medical services within the Alameda County jails, that includes all nonmonetary relief set forth herein.

8) It is expressly understood and agreed among the parties that this agreement is made in compromise of disputed and controverted claims, and that nothing contained herein shall constitute or be deemed to be an admission by any party of any fault, liability, or wrongdoing of any kind, or of the validity or invalidity of other parties' allegations, claims, defenses, or contentions.

9) This Stipulation and Proposed Order of Settlement was negotiated and agreed under the auspices of settlement conferences with the Honorable Laurel Beeler, Magistrate Judge, after four days of trial before the Honorable Jon S. Tigar, District Judge.

Dated: February 26, 2015        HADDAD & SHERWIN LLP

/s/ *Julia Sherwin*
Julia Sherwin
Attorneys for Plaintiffs

Dated: February 26, 2015        LAW OFFICES OF NANCY E. HUDGINS

/s/ *Nancy E. Hudgins**
Nancy E. Hudgins
Attorneys for Defendants
CORIZON HEALTH, INC. and
HAROLD ORR, M.D.

Dated February 26, 2015

ANDRADA AND ASSOCIATES


     /s/ *Randall Andrada**
J. RANDALL ANDRADA
Attorneys for Defendants
COUNTY OF ALAMEDA, GREGORY G. AHERN, MATTHEW ALHF, ALEJANDRO VALVERDE, JOSHUA SWETNAM, ROBERTO MARTINEZ, ZACHARY LITVINCHUK, RYAN MADIGAN, MICHAEL BARENO, FERNANDO ROJAS-CASTANEDA, SHAWN SOBRERO, SOLOMON UNUBUN, and MEGAN HAST

\* Defense counsel provided their consent that this document be electronically filed.

## ~~(PROPOSED)~~ ORDER

Pursuant to the stipulation of the parties and good cause appearing therefore, IT IS SO ORDERED.

Dated: 2/27/15

HONORABLE JON S. TIGAR
United States District Judge

# STANDARDS FOR HEALTH SERVICES IN JAILS

## 2014

These standards represent the official position of the National Commission on Correctional Health Care with respect to requirements for health services in jails. They do not necessarily represent the official position of supporting organizations or individuals represented on the National Commission on Correctional Health Care Board of Directors.

National Commission on Correctional Health Care

National Commission on Correctional Health Care

**J-C-04**
*essential*

**HEALTH TRAINING FOR CORRECTIONAL OFFICERS**

**Standard**

A training program, established or approved by the responsible health authority in cooperation with the facility administrator, guides the health-related training of all correctional officers who work with inmates.

**Compliance Indicators**

1. Correctional officers who work with inmates receive health-related training at least every 2 years. This training includes, at a minimum:
   a. Administration of first aid
   b. Recognizing the need for emergency care and intervention in life-threatening situations (e.g., heart attack)
   c. Recognizing acute manifestations of certain chronic illnesses (e.g., asthma, seizures), <u>intoxication and withdrawal,</u> and adverse reactions to medications
   d. Recognizing signs and symptoms of mental illness
   e. Procedures for suicide prevention
   f. Procedures for appropriate referral of inmates with health complaints to health staff
   g. Precautions and procedures with respect to infectious and communicable diseases
   h. Cardiopulmonary resuscitation
2. An outline of the training including course content and length is kept on file.
3. A certificate or other evidence of attendance is kept on site for each employee.
4. While it is expected that 100% of the correctional staff who work with inmates are trained in all of these areas, compliance with the standard requires that at least 75% of the staff present on each shift are current in their health-related training.
5. All aspects of the standard are addressed by written policy and defined procedures.

**Discussion**

This standard intends to promote the training of correctional officers to recognize the need to refer an inmate to a qualified health care professional and to provide emergency care until he or she arrives.

Because correctional personnel are often the first to respond to problems, they must be aware of the potential for emergencies that may arise, know the proper response to life-threatening situations, and understand their part in the early detection of illness and injury.

There are special training requirements for correctional officers regarding alcohol and other drugs in G-06 Patients With Alcohol and Other Drug Problems.

It is recommended that correctional staff receive training on the special health needs of adolescents if the facility houses adolescents.

It also is recommended that mental health staff review the training curriculum to advise on its content regarding suicide prevention procedures, the signs and symptoms of mental illness and substance abuse, psychological first aid, and communication skills for managing inmates with mental illness.