UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.H., et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>　　　　Defendants. | Case No.  11-cv-02868-JST<br><br>**ORDER GRANTING KRISTY KITE'S MOTION TO INTERVENE**<br><br>Re: ECF No. 451 |

Before the Court is Kristy Kite's motion to intervene and be subject to the Court's protective order. ECF No. 451. The Court will grant the motion.

## I.  BACKGROUND

This M.H. v. County of Alameda case arose out of the death of Martin Harrison while he was in the custody of the Alameda County Sheriff's Office and receiving medical care from defendant Corizon Health, Inc. Corizon provides medical care to Alameda County inmates pursuant to contract. The case settled during trial.

As part of the case, Plaintiffs deposed Jeff Sholey, Corizon's Interim Chief Financial Officer. See ECF Nos. 355, 372. Plaintiffs questioned Mr. Sholey about Corizon's corporate structure and financial information relevant to Plaintiffs' claims for punitive damage.

Kristy Kite is the surviving daughter of Karen Garner and the personal representative of the estate of Karen Garner. Ms. Garner died while incarcerated in Mohave County Jail. In Garner v. Mohave County, et al., Case No. 3:15-cv-08137-PGR, a proceeding in the District of Arizona, plaintiffs allege that Corizon Health, Inc., Corizon, Inc., Corizon, LLC, and Valitas Health Services, Inc. were responsible for Ms. Garner's medical care. ECF No. 448 at 2. Plaintiffs in the Garner action allege that these entities "are and were alter egos, joint venturers, and engaged in the single 'Corizon' enterprise, using the same office locations, headquarters, officers, directors,

1   website, policies, training, Word Marked logo, marketing materials, funding, and using the
2   contracts of each of them to obtain further contracts for each of them.  The Corizon Defendants
3   hold themselves out to the public as one Corizon 'brand' and enterprise."  See id., Ex. 1 ¶ 35.  The
4   Garner plaintiffs allege that Corizon Health, Inc., Corizon, Inc., and Corizon, LLC are liable for
5   Ms. Garner's wrongful death because the entities breached their duties by denying inmates care,
6   failing to supervise employees and ensure adequate care, and placing profit maximization over the
7   provision of medical care.  Id. ¶ 131.  The allegations against Corizon in the Garner action are
8   similar to those against Corizon in this action.

9   Kristy Kite now moves to intervene in M.H. for the sole purpose of obtaining a
10  modification to the Protective Order that would permit her access to the Sholey deposition
11  transcript.  Plaintiffs in M.H. filed a statement of non-opposition.  ECF No. 450.  Defendants
12  Corizon Health, Inc. and Dr. Orr oppose the motion.  ECF No. 451.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 24(b)(2) states that "[o]n a timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Unlike intervention as of right, permissive intervention focuses on possible prejudice to the original parties to the litigation, not the intervenor.  Donnelly v. Glickman, 159 F.3d 405, 411 (9th Cir. 1998).  "[T]he court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  FED. R. CIV. P. 24(b)(3).

Nonparties may permissively intervene for the purpose of seeking modification of a protective order.  Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470 (9th Cir. 1992).  "[W]here an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification."  Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1132 (9th Cir. 2003).  In determining whether intervention is appropriate, the court considers "the relevance of the protected discovery to the collateral proceedings and its general discoverability therein."  Id.  The

protected discovery should be "sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order." Id. The court then weighs the "countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." Id. at 1133. To the extent the opposing party's reliance on the protective order is compromised, the party's legitimate interests in "secrecy as against the public at large can be accommodated by placing [the collateral litigants] under the same restrictions on use and disclosure contained in the original protective order." Id. (quoting United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1428 (10th Cir. 1990)).

## III.   DISCUSSION

Defendants do not dispute that Kite's motion is timely, or that the discovery she seeks is relevant. Instead, they oppose her motion on only one ground: that adding Kite as a party to the protective order would "enabl[e] her to evade judicial scrutiny of whether she is legally entitled to that confidential transcript." ECF No. 451 at 1.

This objection is without basis. Although this Court can modify the protective order, the Court cannot decide whether Ms. Kite ultimately obtains access to the Sholey deposition transcript. Instead, the Garner court will resolve disputes about the ultimate discoverability of the transcript. The Ninth Circuit made this process clear in Foltz: "the district court that issued the [protective order] makes only a rough estimate of relevance" and "the only issue it determines is whether the protective order will bar the collateral litigants from gaining access to discovery already conducted. Even if the issuing court modifies the protective order, it does not decide whether the collateral litigants will ultimately obtain the discovery materials." Foltz, 331 F.3d at 1132–33. The collateral court then resolves "[t]he disputes over the ultimate discoverability of specific materials covered by the protective order." Id. at 1133.

In fact, counsel for the Garner plaintiffs previously informed the collateral court and defendants that they intended to follow the procedure set forth in Foltz. See ECF No. 452, Ex. A Tr. 35:13–17 ("What we're going to do is we're going to follow the Ninth Circuit's procedures. We are going to intervene in the M.H. case. Ask to be subject to their Protective Order. The next step then requires us to come before this Court and show that there is a legitimate need for the

deposition."). In light of these representations, and the clarity of the procedure laid out in Foltz, Defendants' position before this Court is puzzling.

The Court grants Ms. Kite's motion to intervene and modifies the protective order. The collateral court in Garner will determine whether the Sholey testimony is discoverable.

## CONCLUSION

The Court grants Ms. Kite's motion to intervene and her request to modify the protective order. The Court modifies the Protective Order as follows:

1. Section 7.2(h) will be added, stating: "Unless otherwise ordered by the court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated CONFIDENTIAL only to: . . . (h) Kristy Kite, for the limited purpose of obtaining a copy of the deposition transcript(s) of Jeff Sholey, for use in Garner v. Mohave County, et al., District of Arizona Case No. 3:15-cv-08147-PGR."
2. Section 7.1 will be modified to read: "A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a non-party in connection with this case only for prosecuting, defending or attempting to settle this litigation provided that Kristy Kite may use the Protected Material in the action set forth in section 7.2(h)."
3. Section 14 will be modified to read: "Unless otherwise ordered or agreed in writing by the Producing Party, within 60 days after the final termination of this action, or in the case of Kristy Kite, of the action set forth in section 7.2(h), defined as the dismissal or entry of judgment by the District Court, or if an appeal is filed, the disposition of the appeal, each Receiving Party must return all Protected Material to the Producing Party."

IT IS SO ORDERED.

Dated: January 21, 2016

_____
JON S. TIGAR
United States District Judge